FORM 104 (10/06)

| ADVERSARY PROCEEDING COVER SHEET (Instructions on Reverse) | ADVERSARY PROCEEDING NUMBER (Court Use Only) |
|---|---|
| **PLAINTIFFS** <br> DHC Realty, LLC, Spira Sportswear, LLC & Basic | **DEFENDANTS** <br> GECU, Armando C. Moreno & Grupo Arte Capital |
| ATTORNEYS (Firm Name, Address, and Telephone No.) <br> James & Haugland, P.C. <br> 609 Montana, El Paso, Texas 79902 (915) 532-3911 | ATTORNEYS (If Known) |
| PARTY (Check One Box Only) <br> ☒ Debtor ☐ U.S. Trustee/Bankruptcy Admin <br> ☐ Creditor ☐ Other <br> ☐ Trustee | PARTY (Check One Box Only) <br> ☐ Debtor ☐ U.S. Trustee/Bankruptcy Admin <br> ☒ Creditor ☐ Other <br> ☐ Trustee |
| CAUSE OF ACTION (WRITE A BRIEF STATEMENT OF CAUSE OF ACTION, INCLUDING ALL U.S. STATUTES INVOLVED) <br> Injunctive Relief, Breach of Fiduciary Duty, Declaratory Judgment (28 U.S.C. 2201 et seq.), Usury, Conspiracy, Violation of Texas Administrative Code (7 TAC 91.716) and Code of Federal Regulations (12 CFR 741.203). ||

**NATURE OF SUIT**
(Number up to five (5) boxes starting with lead cause of action as 1, first alternative cause as 2, second alternative cause as 3, etc.)

**FRBP 7001(1) – Recovery of Money/Property**
☐ 11-Recovery of money/property - §542 turnover of property
☐ 12-Recovery of money/property - §547 preference
☐ 13-Recovery of money/property - §548 fraudulent transfer
☐ 14-Recovery of money/property - other

**FRBP 7001(2) – Validity, Priority or Extent of Lien**
☒ 21-Validity, priority or extent of lien or other interest in property [2]

**FRBP 7001(3) – Approval of Sale of Property**
☐ 31-Approval of sale of property of estate and of a co-owner - §363(h)

**FRBP 7001(4) – Objection/Revocation of Discharge**
☐ 41-Objection / revocation of discharge - §727(c),(d),(e)

**FRBP 7001(5) – Revocation of Confirmation**
☐ 51-Revocation of confirmation

**FRBP 7001(6) – Dischargeability**
☐ 66-Dischargeability - §523(a)(1),(14),(14A) priority tax claims
☐ 62-Dischargeability - §523(a)(2), false pretenses, false representation, actual fraud
☐ 67-Dischargeability - §523(a)(4), fraud as fiduciary, embezzlement, larceny

(continued next column)

**FRBP 7001(6) – Dischargeability (continued)**
☐ 61-Dischargeability - §523(a)(5), domestic support
☐ 68-Dischargeability - §523(a)(6), willful and malicious injury
☐ 63-Dischargeability - §523(a)(8), student loan
☐ 64-Dischargeability - §523(a)(15), divorce or separation obligation (other than domestic support)
☐ 65-Dischargeability - other

**FRBP 7001(7) – Injunctive Relief**
☐ 71-Injunctive relief – reinstatement of stay
☒ 72-Injunctive relief – other [1]

**FRBP 7001(8) Subordination of Claim or Interest**
☐ 81-Subordination of claim or interest

**FRBP 7001(9) Declaratory Judgment**
☒ 91-Declaratory judgment [3]

**FRBP 7001(10) Determination of Removed Action**
☐ 01-Determination of removed claim or cause

**Other**
☐ SS-SIPA Case – 15 U.S.C. §§78aaa et.seq.
☒ 02-Other (e.g. other actions that would have been brought in state court if unrelated to bankruptcy case) [4]

| ☒ Check if this case involves a substantive issue of state law | ☐ Check if this is asserted to be a class action under FRCP 23 |
|---|---|
| ☐ Check if a jury trial is demanded in complaint | Demand $ |
| Other Relief Sought ||

FORM 104 (10/06), Page 2

| BANKRUPTCY CASE IN WHICH THIS ADVERSARY PROCEEDING ARISES ||||
|---|---|---|---|
| NAME OF DEBTOR<br>DHC Realty, LLC || BANKRUPTCY CASE NO.<br>11-30977 ||
| DISTRICT IN WHICH CASE IS PENDING<br>Western District of Texas || DIVISIONAL OFFICE<br>El Paso Division | NAME OF JUDGE<br>H. Christopher Mott |
| RELATED ADVERSARY PROCEEDING (IF ANY) ||||
| PLAINTIFF | DEFENDANT || ADVERSARY PROCEEDING NO. |
| DISTRICT IN WHICH ADVERSARY IS PENDING || DIVISIONAL OFFICE | NAME OF JUDGE |
| SIGNATURE OF ATTORNEY (OR PLAINTIFF)<br>[signature] with permission ||||
| DATE<br>5-24-2011 | PRINT NAME OF ATTORNEY (OR PLAINTIFF)<br>Corey W. Haugland |||

## INSTRUCTIONS

The filing of a bankruptcy case creates an "estate" under the jurisdiction of the bankruptcy court which consists of all of the property of the debtor, wherever that property is located. Because the bankruptcy estate is so extensive and the jurisdiction of the court so broad, there may be lawsuits over the property or property rights of the estate. There also may be lawsuits concerning the debtor's discharge. If such a lawsuit is filed in a bankruptcy court, it is called an adversary proceeding.

A party filing an adversary proceeding must also must complete and file Form 104, the Adversary Proceeding Cover Sheet, if it is required by the court. In some courts, the cover sheet is not required when the adversary proceeding is filed electronically through the court's Case Management/Electronic Case Files (CM/ECF) system. (CM/ECF captures the information on Form 104 as part of the filing process.) When completed, the cover sheet summarizes basic information on the adversary proceeding. The clerk of court needs the information to process the adversary proceeding and prepare required statistical reports on court activity.

The cover sheet and the information contained on it do not replace or supplement the filing and service of pleadings or other papers as required by law, the Bankruptcy Rules, or the local rules of court. The cover sheet, which is largely self-explanatory, must be completed by the plaintiff's attorney (or by the plaintiff if the plaintiff is not represented by an attorney). A separate cover sheet must be submitted to the clerk for each complaint filed.

**Plaintiffs** and **Defendants.** Give the names of the plaintiffs and the defendants exactly as they appear on the complaint.

**Attorneys.** Give the names and addresses of the attorneys, if known.

**Party.** Check the most appropriate box in the first column for the plaintiffs and in the second column for the defendants.

**Demand.** Enter the dollar amount being demanded in the complaint.

**Signature.** This cover sheet must be signed by the attorney of record in the box on the second page of the form. If the plaintiff is represented by a law firm, a member of the firm must sign. If the plaintiff is pro se, that is, not represented by an attorney, the plaintiff must sign.

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| DHC REALTY, LLC. | § | Case No. 11-30977-hcm |
| | § | |
| Debtor. | § | |
| | § | |
| | § | |
| DHC REALTY, LLC, SPIRA | § | |
| SPORTSWEAR, LLC, and BASIC | § | |
| SPORTS APPAREL, INC., | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | Adversary No. _____ |
| | § | |
| GECU, ARMANDO C. MORENO and | § | |
| GRUPO ARTE CAPITAL CORP., | § | |
| | § | |
| Defendants. | § | |

## PLAINTIFF'S ORIGINAL COMPLAINT AND REQUEST FOR INJUNCTIVE RELIEF

TO THE HONORABLE H. CHRISTOPHER MOTT, UNITED STATES BANKRUPTCY JUDGE:

COMES NOW, DHC REALTY, LLC, Debtor in this bankruptcy matter, SPIRA SPORTSWEAR, LLC, and BASIC SPORTS APPAREL, INC., by and through their counsel of record, Corey W. Haugland, and file this, their Original Complaint against GECU, ARMANDO C. MORENO and GRUPO ARTE CAPITAL CORP., Defendants herein, and in support thereof would respectfully show the Court as follows:

### I. PARTIES

1. Plaintiff DHC REALTY, LLC (hereinafter "DHC" or "Plaintiff") is a limited liability

company that is organized and existing under the laws of the State of Texas.

2. Plaintiff SPIRA SPORTSWEAR, LLC (hereinafter "Spira") is a limited liability company that is organized and existing under the laws of the State of Texas.

3. Plaintiff BASIC SPORTS APPAREL, INC. (hereinafter "BSA" and together with Debtor and Spira collectively referred to as the "Plaintiffs") is a corporation that is organized and existing under the laws of the State of Texas.

4. Defendant GECU, is a Texas State Financial Institution with a principal place of business at 1225 Airway Blvd., El Paso, El Paso County, Texas. GECU may be served by serving its registered agent for service of process Crystal Long at 1225 Airway Blvd., El Paso, Texas 79925.

5. Defendant ARMANDO C. MORENO (hereinafter "Armando") is an individual who resides in El Paso County, Texas and may be served with process at his usual place of business, 510 E. University Ave., El Paso, Texas 79902.

6. Defendant GRUPO ARTE CAPITAL CORP. (hereinafter "Grupo Arte") is a corporation organized and existing under the laws of the State of Texas. Grupo Arte maintains a principal office at 510 E. University Avenue, El Paso, El Paso County, Texas and may be served by serving its registered agent for service of process, Armando C. Moreno at 510 E. University Ave., El Paso, Texas 79902.

## II. JURISDICTION & VENUE

7. This Court has jurisdiction over this proceeding pursuant to 28 U.S.C. § 1334, 28 U.S.C. § 157(b) and 11 U.S.C. §105. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (B),(K) and (0).

8. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391 and 1409. Additionally, venue is mandatory in El Paso County, Texas under Texas Finance Code §305.006, because this suit involves a claim for usury and this is the County where the transactions were entered into, the usurious interest was charged and received, where the usury Defendants reside, and where the usury Defendants maintain their principal offices.

### III. FACTS

9. Plaintiffs are related companies through direct shareholder ownership.

10. At all times relevant hereto, Debtor has been obligated on six loans to GECU. (hereinafter the "DHC Loans"). Upon information and belief, GECU is a federally insured state credit union. These loans were secured by liens on real property and equipment owned by Debtor currently being utilized for the operation of Fuddrucker's® franchises. Specifically, three of these loans were secured by first liens on three parcels of real property located at: (1) 1887 N. Zaragosa, El Paso County, Texas; (2) 7942 Gateway East, El Paso County, Texas; and (3) 5030 N. Desert, El Paso County, Texas (hereinafter the "Real Property"). The interest rates on these loans was 6.25% per annum. The remaining three loans were secured by liens on the equipment located at the above described Real Properties. The interest rates on these loans was 6.5%. These loans were guaranteed by other related entities, El Paso DHC Enterprises Far East, LLC, El Paso DHC Enterprises, LLC, and El Paso DHC Enterprises West, LLC.

11. On or about August 7, 2008, BSA acquired a revolving line of credit though GECU in the amount of $1,300,000.00, with an interest rate of 6.25% per annum (hereinafter the "BSA Loan"). The interest rate subsequently went down to 5.25% per annum. This line of credit

was guaranteed by Debtor and secured by a second lien on the above described Real Property owned by Debtor.

12. Thereafter, CIT called a separate loan that BSA had been obligated on and BSA was forced to liquidate certain assets in order to pay the amounts owed to CIT. However, BSA needed a bridge loan to pay for certain operating costs. To that end, on or about November 5, 2009, BSA approached GECU about obtaining the necessary bridge loan and held a meeting with Arturo Moreno, GECU's Vice President in charge of business services, and Martin Sena at GECU headquarters. The Debtor and BSA were current on all loans and all property taxes had been paid current. Upon information and belief, Arturo Moreno had the ability to make a bridge loan to BSA of up to $500,000 without going to the loan committee. BSA sought to utilize GECU as its takeout lender for CIT, which did not interest Arturo Moreno; he personally did not take the loan to GECU's loan committee. Rather than authorize the requested bridge loan to BSA, Arturo Moreno referred BSA to his son, Armando Moreno, who was at the time starting a private factoring and lending company, Grupo Arte. Upon information and belief, Arturo Moreno has had an ownership interest in Grupo Arte at all times relevant hereto. Before the principals of BSA had returned from the meeting with Arturo Moreno and Martin Sena in which their request for a bridge loan had been discussed, Armando Moreno had called the cell phone of Hilel Chowaiki (one of BSA's principals) to discuss the terms of a $100,000.00 loan to BSA.

13. Thereafter over the course of the next year, BSA obtained the following loans from Armando Moreno and/or Grupo Arte:

    a. On or about November 6, 2009, BSA executed a Promissory Note in favor of

Armando Moreno, individually, in the principal amount of $100,000.00. The November 6, 2009 Promissory Note was payable in 30 days and charged a "fee" of 2.5% of the principal amount ($2,500.00). Additionally, the November 6, 2009 Promissory Note specified a "late charge" of 2.5% of the unpaid portion of the note every 15 days. The November 6, 2009 Promissory Note was paid in full on January 15, 2010 and Armando Moreno charged and received the amount of $106,499.98 consisting of the $100,000.00 principal amount and $6,499.98 in "fees" and "late charges."

b. On or about January 16, 2010, BSA executed a Promissory Note in favor of Grupo Arte in the principal amount of $79,000.00 The January 16, 2010 Promissory Note matured on April 15, 2010 and charged a "fee rate" of .1400% **per day**. Additionally, the January 16, 2010 Promissory Note specified a "Post Maturity Rate" of .1600% per day. The January 16, 2010 Promissory Note was paid in full on April 20, 2010; and, Grupo Arte charged and received the amount of $110,396.40 consisting of the $79,000.00 principal amount and $10,396.40 in "fees."

c. On or about April 20, 2010, BSA executed a Promissory Note in favor of Grupo Arte in the principal amount of $100,000.00. The April 20, 2010 Promissory Note matured on December 31, 2010 and charged a "fee rate" of .1400% **per day**. Additionally, the April 20, 2010 Promissory Note specified a "Post Maturity Rate" of .1600% per day. The April 20, 2010 Promissory Note was paid in full on June 29, 2010; and, Grupo Arte charged and received the amount of $109,640.00 consisting of the $100,000.00 principal amount and $9,640.00 in "fees."

    d.    On or about June 29, 2010, BSA executed a Promissory Note in favor of Grupo Arte in the principal amount of $150,000.00. The June 29, 2010 Promissory Note matured on December 31, 2010 and charged a "fee rate" of .1000% **per day**. Additionally, the June 29, 2010 Promissory Note specified a "Post Maturity Rate" of .1300% per day. The June 29, 2010 Promissory Note was paid in full on January 6, 2011; and, Grupo Arte charged and received the amount of $177,750.00 consisting of the $150,000.00 principal amount and $27,750.00 in "fees."

14.    Additionally, on or about January 1, 2011, Spira executed a Promissory Note in favor of Grupo Arte in the principal amount of $150,000.00. The January 1, 2011 Promissory Notewas guaranteed by BSA. The January 1, 2011 Promissory Note would mature on December 31, 2011 and it charged a "fee rate" of .0730% per day. Additionally, the January 1, 2011 Promissory Note specified a "Post Maturity Rate" of .1000% per day. Partial payments have been made on the January 1, 2011Promissory Note, but it remains outstanding. To date, Grupo Arte has charged Spira the amount of $163,140.00, consisting of the $150,000.00 principal amount and $13,140.00 in "fees."

15.    In January of 2011, the Debtor was in arrears for the 2009 and 2010 property taxes on the Real Properties. Additionally, payments on the DHC Loans were delinquent. However, by written agreement, GECU had allowed Debtor to remain delinquent since June, 2009 on the monthly payments so long as they were no more than 60 days past due, and late charges were paid on the monthly payments.

16.    BSA approached GECU about restructuring the BSA Loan so that it would be a direct obligation of Debtor. As the BSA Loan was secured by the Real Property and Equipment of

Debtor, this restructuring would not impair GECU's interest in any of the collateral. Additionally, BSA offered to guarantee the loan after it was transferred to the Debtor. The purpose of this restructuring was to allow BSA to obtain a $2 million loan from Compass Bank, who BSA had been working with during this time. The proposed Compass Bank loan would allow BSA to pay all tax arrearages on the Real Properties (in which GECU had a security interest) as well as bring all of the DHC Loans current.

17. Although GECU would not have any of its interests impaired by the restructuring and in fact would benefit by having all of the obligations of DHC brought current, GECU denied the request on or about January 21, 2011. Upon information and belief, the purpose of GECU's denial was to ensure that the Plaintiffs would have to keep obtaining funding from either GECU or Grupo Arte. As a result of GECU's denial, the Compass Bank loan was never obtained and Debtor was unable to pay its delinquent obligations.

18. On or about March 8, 2011, BSA obtained a formula based $2 million line of credit from First Community Financial out of Arizona. On April 18, 2011, BSA advised Armando Moreno about the line of credit in response to an inquiry. On April 25, 2011, Arturo Moreno and Martin Sena appeared at BSA's office to advise that GECU wanted DHC to bring all loans current (payments of approximately $80,000.00 and taxes of approximately $260,000.00) by the end of April 2011 "Since BSA had a $2 million line of credit with First Community." BSA advised GECU that the First Community transaction was a formula based line.

19. On or about May 2, 2011 in retaliation for BSA obtaining the First Community line of Credit, GECU sent BSA and Debtor a notice of default, demand for payment, and notice of

intent to accelerate for the DHC Loans and the BSA Loan (hereinafter the "Default Letter"). The Default Letter demanded that all past due amounts be cured by August 7, 2011 and that all real property taxes be paid by May 31, 2011. The Default Letter further specified that failure to comply would result in the application of the default interest rate of 18% to the DHC Loans and BSA Loan. Also in May of 2011, GECU unilaterally increased the interest rates on the BSA Loan and DHC Loans from 5.25% and 6.25-6.5% to 9% per annum for all loans.

20. On or about May 23, 2011, Debtor filed its voluntary petition for relief under Chapter 11 of the Bankruptcy Code.

## IV. COUNT 1 - Request for Injunctive Relief
*(Against GECU)*

21. Plaintiffs incorporate the foregoing paragraphs as if set forth herein verbatim.

22. Pursuant to 11 U.S.C. §105, Plaintiffs request that GECU be enjoined from accelerating, charging default interest, or foreclosing upon the BSA Loan during the pendency of this matter. A bankruptcy court may stay proceedings against non-debtors under 11 U.S.C. §105 in "unusual circumstances." *See, e.g. In re Eagle-Picher Indus., Inc.*, 963 F.2d 855, 860 (6th Cir. 1992), *A.H. Robins, Inc. v. Piccinin*, 788 F.2d 994, 999 (4th Cir.), *cert. denied*, 479 U.S. 876, 107 S.Ct. 251, 93 L.Ed.2d 177 (1986); *Arnold v. Garlock Inc.*, 278 F.3d 426, 436 (5thCir. 2001). "A sufficiently 'unusual circumstance' arises where ... there is such identity between the debtor and the third-party defendant that the debtor may be said to be the real party defendant and that a judgment against the third-party defendant will in effect be a judgment or finding against the debtor ... To refuse application of the statutory stay in that

case would defeat the very purpose and intent of the statute. *Eagle-Picher*, 963 F.2d at 861; see also *A.H. Robins*, 788 F.2d at 999; *Arnold*, 278 F.3d at 436. In this case, because the BSA loan is guaranteed by the Debtor and secured by the Debtor's Real Properties and equipment, any action taken against the BSA loan is, in effect, an action taken against the Debtor. Injunctive relief against GECU is therefore proper.

23. The Plaintiffs will suffer irreparable harm if GECU is not enjoined during the pendency of this lawsuit from accelerating, charging default interest, or foreclosing the BSA Loan. The Plaintiffs' injury is actual and imminent as GECU has stated in its Default Letter that it willbegin charging 18% interest per annum on the BSA Loan on August 7, 2011, or sooner. Plaintiff's injury will be irreparable because BSA will likely not be able to make monthly payments on the BSA Loan, whose principal balance is approximately $1.3 million, if the interest rate more than triples from 5.25% to 18% per annum. As Debtor has guaranteed the BSA Loan and the same is secured by Debtor's property, the injury to Debtor will similarly be irreparable.

24. The Plaintiffs allege that there is a substantial likelihood of success on the merits. Plaintiffs maintain that GECU's failure to act in good faith has resulted in the current default of the loans. GECU willfully and intentionally denied Plaintiff's efforts to restructure the BSA Loan in order to ensure that BSA is forced to keep or to obtain funding from either GECUor Grupo Arte. Additionally, there is a substantial likelihood of success because Debtor intends to promptly file a plan of reorganization which will pay the obligations to GECU andthe property taxes in full.

25. The harm faced by the Debtor and BSA outweighs the harm that would be sustained by

GECU the preliminary injunction were granted. The injunction seeks to maintain the status quo and GECU will not be harmed by continued payments under the terms of the Promissory Notes. However, should the injunction not be granted, BSA will likely default under BSA Loan which is guaranteed and secured by the Debtor.

26. Issuance of a preliminary injunction would not adversely affect the public interest.

27. Plaintiffs are willing to post a bond in an amount the Court deems appropriate.

28. Plaintiffs ask the Court to set their application for preliminary injunction for hearing at the earliest possible time and, after hearing the evidence, issue a preliminary injunction against GECU.

### V. COUNT 2 — Violation of Texas Administrative Code and Code of Federal Regulations
*(Against GECU)*

29. Plaintiffs incorporate the foregoing paragraphs as if set forth herein verbatim.

30. Pursuant to Title 7 of the Texas Administrative Code, Section 91.716, entitled "Prohibited Fees":

> A credit union shall not make any loan or extend any credit if, either directly or indirectly, any commission, fee, or other compensation from any person or entity other than the credit union is to be received by the credit union's directors, committee members, senior management employees, loan officers, or any immediate family members of such individuals, in connection with underwriting, insuring, servicing, or collecting the loan or extension of credit.

7 T.A.C. §91.716.

31. Similarly, pursuant to Title 12 of the Code of Federal Regulations:

> [N]o official or employee of a Federal credit union, or immediate family member of an official or employee of a Federal credit union, may receive, directly or indirectly, any commission, fee, or other

      compensation in connection with any loan made by the credit union.

      12 C.F.R. § 701.21. This provision is made applicable to any credit union that is federally insured by 12 C.F.R. §741.203.

32.   Plaintiffs allege that GECU violated these provisions because the extensions of credit to BSA and Debtor were intended to be used to indirectly obtain compensation for Arturo Moreno and Armando Moreno. Specifically, with regard to the servicing, collection or extension of credit, Arturo Moreno directed Plaintiffs to obtain additional funding at usurious rates from Armando Moreno and Grupo Arte, a corporation in which Arturo Moreno has an ownership interest. Upon information and belief, Arturo Moreno received a "kickback" for manipulating the loans and directing borrowers to his son and Grupo Arte and was directly or indirectly compensated by Armando Moreno and Grupo Arte[1].

33.   Arturo Moreno is a senior management employee or loan officer with GECU and Armando Moreno is an immediate family member of Arturo Moreno[2].

34.   Plaintiffs seek the recovery of all profits made by GECU on the BSA and DHC Loans in an amount to be determined by this Court.

### VI. COUNT 3 – Breach of Fiduciary Duty
*(Against GECU)*

35.   Plaintiffs incorporate the foregoing paragraphs as if set forth herein verbatim.

36.   The Federal Credit Union Act "imposes a duty to act in the best interests of the members on

---

[1] Plaintiffs would note that under the Texas Finance Code, it is a criminal misdemeanor for a director, committee member, officer or employee of a credit union to knowingly demand or receive, directly or indirectly, consideration for the credit union's making a specific loan or investment or purchasing an asset. Tex. Fin. Code §122.252.

[2] Upon information and belief, Armando Moreno was living in the same household as Arturo Moreno at all times relevant hereto.

419075.1                     Page 11

the directors of all federally-insured state-chartered credit unions regardless of whether state law also imposes such a duty." 71 FR 77150-01.

37. GECU breached its duties of good faith, integrity in the strictest kind and fair honest dealing to Plaintiffs by failing to approve the bridge loan and/or by failing to restructure the BSA Loan to allow BSA to obtain the $2 million line of credit with Compass Bank.

38. GECU breached its duties to refrain from self-dealing and full disclosure by failing to approve the bridge loan and directing BSA to seek alternative financing with Armando Moreno and Grupo Arte at usurious rates of interest.

39. GECU's breach resulted in injury to the Plaintiffs by forcing them to utilize the loans of Armando Moreno and Grupo Arte and others and incur increased interest, fees, and penalties. GECU's breach as also resulted in injury to the Plaintiffs by causing DHC to incur additional penalties, fees, and interest on its property tax obligations and all notes owed to GECU. Plaintiffs seek the recovery of unliquidated damages in an amount to be determined by this Court.

40. Plaintiffs injury resulted from GECU's intentional act, which entitles Plaintiff to exemplary damages under Texas Civil Practice and Remedies Code §41.003(a).

### VII. COUNT 4 — Declaratory Judgement
*(Against GECU)*

41. Plaintiffs incorporate the foregoing paragraphs as if set forth herein verbatim.

42. Pursuant to 28 U.S.C. § 2201 *et al.* Plaintiffs seek a declaratory judgment that GECU is not entitled to unilaterally raise the interest rate on the BSA Loans or DHC Loans to 9% or 18% per annum.

## VIII. COUNT 5 — Usury
### (Against Armando Moreno and Grupo Arte)

43. Plaintiffs incorporate the foregoing paragraphs as if set forth herein verbatim.

44. Plaintiffs BSA and Spira plead causes of action against Armando Moreno and Grupo Arte for usury.

45. Armando Moreno and Grupo Arte loaned money to BSA as set forth above. Grupo Arte loaned money to Spira as set forth above.

46. BSA and Spira each had an obligation to repay the principal amount of the loans by GrupoArte and Armando Moreno.

47. Armando Moreno contracted for, charged and received interest that exceeded the maximum amount allowed by law. Specifically, with regard to the November 6, 2009 Promissory Note, the compensation contracted for, charged and received for the use, forbearance or detention of $100,000.00 for 54 days was $6,499.98, an **interest rate of 43.94%** per annum.

48. Similarly, Grupo Arte contracted for, charged and received interest that exceeded the maximum amount allowed by law:

    a. With regard to the January 16, 2010 Promissory Note with BSA, the compensation contracted for, charged and received for the use, forbearance or detention of $79,000.00 for 94 days was $10,396.40, an **interest rate of 51.10%** per annum.

    b. With regard to the April 20, 2010, Promissory Note with BSA, the compensation contracted for, charged and received for the use, forbearance or detention of $100,000.00 for 69 days was $9,640.00, an **interest rate of 50.99%** per annum.

    c. With regard to the June 29, 2010 Promissory Note with BSA, the compensation

contracted for, charged and received for the use, forbearance or detention of $150,000.00 for 185 days was $27,750.00, an **interest rate of 36.50%** per annum.

d. With regard to the January 1, 2011 Promissory Note with Spira, the compensation contracted and charged for the use, forbearance or detention of $150,000.00 for 120 days is $13,140.00, an **interest rate of 26.65%** per annum.

49. Arturo Moreno (i.e. GECU), Armando Moreno and Grupo Arte's unlawful conduct caused injury to BSA which resulted in BSA being charged, and paying, a usurious rate of interest. BSA seeks the recovery of three times the amount of interest which exceeds the maximum rate of interest allowed by law. Additionally, for each loan which exceeds twice the amount of interest allowed by law or more, BSA seeks the recovery of the statutory penalty in an amount equal to the principal and interest on same[3].

50. Grupo Arte's unlawful conduct caused injury to Spira which resulted in Spira being charged, and paying, a usurious rate of interest. BSA seeks the recovery of three times the amount of interest which exceeds the maximum rate of interest allowed by law.

51. Additionally, BSA and Spira are entitled to recover reasonable attorneys fees under Texas Finance Code Sections 305.005 and/or 349.001.

## IX. COUNT 6 — Respondeat Superior
*(Against GECU)*

52. Plaintiffs incorporate the foregoing paragraphs as if set forth herein verbatim.

53. The acts of Arturo Moreno as Vice President and Employee of GECU, were performed while in the employment of GECU, and were within the course and scope of that employment or

---

[3] Plaintiff would also note that, to the extent the interest rate on any of the loans exceeds twice the amount of interest allowed by law, the contracting for, charging or receiving of that interest is a criminal misdemeanor.

419075.1           Page 14

within the authority delegated to Arturo Moreno. GECU is therefore vicariously liable for the actions of Arturo Moreno.

### X. COUNT 7 — Conspiracy
*(Against All Defendants)*

54. Plaintiffs incorporate the foregoing paragraphs as if set forth herein verbatim.

55. GECU, in combination with Armando Moreno and Grupo Arte, agreed to deny the making of bridge loans and the restructuring of loans to borrowers and instead direct borrowers to Armando Moreno and Grupo Arte to obtain loans at usurious interest rates in return for kickbacks to its officers and employees. Additionally, GECU conspired to deny the restructuring of the BSA Loan in order to force Plaintiffs to return to Armando Moreno and Grupo Arte for loans at usurious rates of interest in return for kickbacks to its officers and employees.

56. As set forth above, the Defendants did, in fact undertake overt acts to accomplish this scheme.

57. Defendants acted with the intent to harm Plaintiffs and did, in fact, proximately cause injury to Plaintiffs.

58. Plaintiffs seek the recovery from Defendants, jointly and severally, of three times the amount of interest contracted for, charged and/or received on the loans from Armando Moreno and Grupo Arte, which exceeds the maximum rate of interest allowed by law. Additionally, for each loan from Grupo Arte and Armando Moreno which exceeds twice the amount of interest allowed by law or more, Plaintiffs seek the recovery, jointly and severally from all Defendants, of the statutory penalty in an amount equal to the principal and interest on same.

Finally, Plaintiffs seek the recovery, jointly and severally from all Defendants, of all costs incurred and penalties or interest paid, as a result of not obtaining the restructuring of the BSA Loan.

**WHEREFORE, PREMISES CONSIDERED**, Plaintiffs, DHC REALTY, LLC, SPIRA SPORTSWEAR, LLC, and BASIC SPORTS APPAREL, INC., request that Defendants, GECU, ARMANDO C. MORENO and GRUPO ARTE CAPITAL CORP., be cited to appear and answer and, upon final trial, that they have judgment against the Defendants for the following:

a. Injunctive Relief.

b. Declaratory Judgment.

c. Actual damages.

d. Statutory Penalties.

e. Exemplary Damages.

f. Prejudgment and postjudgment interest.

g. All costs in prosecuting this action.

h. Reasonable and necessary attorney's fees.

i. Such other and further relief, whether legal or equitable, to which Plaintiffs may be justly entitled.

Respectfully submitted,

JAMES & HAUGLAND, P.C.
P.O. Box 1770
El Paso, Texas 79949-1770
Phone: 915-532-3911
FAX: (915) 541-6440

By: _____ with permission
Corey W. Haugland
State Bar No. 09234200
Attorney for Plaintiffs

## **VERIFICATION**

STATE OF TEXAS            §
                          §
COUNTY OF EL PASO         §

BEFORE ME, the undersigned notary public, on this day personally appeared David Chowaiki, the President and duly authorized agent of DHC Realty, LLC, who being by me duly sworn on his oath deposed and said that he has read the above and foregoing instrument; and, that the allegations contained in paragraphs 9. and 20. therein are within his personal knowledge and are true and correct.

**DHC REALTY, LLC**

_____
David Chowaiki, President

SUBSCRIBED AND SWORN TO BEFORE ME this 23rd of May, 2011, to certify which witness my hand and official seal.

_____
NOTARY PUBLIC IN AND FOR
THE STATE OF TEXAS

My commission expires:



JULIE A. BLAISDELL
NOTARY PUBLIC
In and for the State of Texas
My commission expires
April 20, 2013