**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**EL PASO DIVISION**

IN RE:                                       §
                                             §
DHC REALTY, LLC.                             §        Case No. 11-30977-hcm
                                             §
         Debtor.                             §

## PLAN OF REORGANIZATION

**FILED BY**: The Debtor              **DATED**:        December 13, 2011

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| DHC REALTY, LLC. | § | Case No. 11-30977-hcm |
| | § | |
| Debtor. | § | |

## PLAN OF REORGANIZATION

**FILED BY**: The Debtor          **DATED**:        December 13, 2011

DHC REALTY, LLC, Debtor-in-Possession in the above-numbered proceeding under Chapter

11 of Title 11, United States Code, hereinafter referred to as "Debtor," proposes the following Plan

of Reorganization (the "Plan"):

ARTICLE I
DEFINITIONS

The following terms, when used in the Plan, shall, unless the context otherwise requires, have

the following meanings, respectively:

1.01    **ABSOLUTE PRIORITY RULE.** Section 1129(b)(2) of the Bankruptcy Code
provides that unsecured creditors have an absolute priority over equity interests to receive all money
or property distributed under a Plan of Reorganization, before the equity ownership interests receive
anything. The rule essentially prohibits any class junior to a dissenting class of priority or unsecured
creditors from receiving or retaining anything under the Plan until the dissenting class has been paid
in full.

1.02    **ADMINISTRATIVE CLAIM** shall mean a Claim for cost or expense of
administration of the Chapter 11 case allowed under Sections 503(b) and 507(a)(1) of the Bankruptcy
Code, including, but not limited to, Professional Fee Claims, claims for cure payments under Section
365(b)(1) of the Bankruptcy Code, obligations incurred post-petition by the Debtor in the ordinary
course of business (including tort claims), the fees or charges of the United States Trustee pursuant
to 28 U.S.C. § 1930(a)(6), and other claims as ordered by the Bankruptcy Court.

1.03    **ALLOWED CLAIM** shall mean a Claim filed with the Clerk of the Bankruptcy

Court or scheduled by the Debtor in its Schedules, Lists and Statement of Financial Affairs heretofore or hereafter filed with the Bankruptcy Court and not listed therein as disputed, contingent, or unliquidated, as to which claim no objection to the allowance thereof has been interposed within the period of time fixed by the Bankruptcy Code, the Bankruptcy Rules, or the Local Bankruptcy Rules of the Bankruptcy Court or as to which an objection to the claim or an application to amend the schedules with respect to a scheduled claim has resulted in the allowance of the claim, in whole or in part, by an order of the Bankruptcy Court, which order shall not have been reversed, stayed, modified, or amended and the time to appeal from or to seek review or rehearing of such order shall have expired and which order shall have become final in accordance with the Bankruptcy Rules and the Local Bankruptcy Rules.

1.04 **ALLOWED SECURED CLAIM** shall mean an Allowed Claim arising on or before the Petition Date, as hereinafter defined, that is secured by a valid lien, as hereinafter defined, on property of the Debtor, and said lien is not void or voidable under any state or federal law, including any provision of the Bankruptcy Code, as hereinafter defined, to the extent of the value (which is either agreed to by the Debtor pursuant to this Plan, or, in the absence of an agreement, as determined in accordance with § 506 of the Bankruptcy Code) of the interest of the holder of such Allowed Claim in the Debtor's property or an Allowed Claim that the Debtor has agreed to treat as an Allowed Secured Claim pursuant to this Plan. The portion of each Allowed Claim that exceeds the value of the security held therefor shall be an Allowed Unsecured Claim.

1.05 **ALLOWED UNSECURED CLAIM** shall mean all Allowed Claims which are other than Priority Claims, as hereinafter defined, or an Allowed Secured Claim.

1.06 **BANKRUPTCY CODE or CODE** shall mean Section 101 et seq. of Title 11 of the United States Code, as applicable to Reorganization Cases, now in effect or hereafter amended.

1.07 **BANKRUPTCY COURT or COURT** means the United States Bankruptcy Court for the Western District of Texas, El Paso Division, having jurisdiction over the Case and, to the extent of any reference is made pursuant to Title 28, United States Code, any court having competent jurisdiction to enter the Confirmation Order.

1.08 **BANKRUPTCY RULES** means the Federal Rules of Bankruptcy Procedure, as amended, and the Local Rules of the United States Bankruptcy Court for the Western District of Texas, as applicable to reorganization cases.

1.09 **BAR DATE** is the deadline established by the Court after which (i) any Proof of Claim filed has no effect on this Plan, and (ii) the holder of such Proof of Claim has no right to participate with other Creditors under the Plan, and (iii) is the date after which any Claims which must be filed will be void and disallowed for purposes of voting or distribution. The Bar Date set forth in the Chapter 11 Order for Meeting of Creditors was October 21, 2011 for non-governmental entities and November 19, 2011 for governmental entities.

1.10 **BUSINESS DAY** shall mean any day other than a Saturday, Sunday, or "legal holiday", as that term is defined in Bankruptcy Rule 9006 (a).

1.11    **CASE** shall mean the case currently pending before the Bankruptcy Court titled In re: DHC Realty, LLC, Case Number 11-30977.

1.12    **CLAIM** shall mean any right to payment from either the Debtor (or right to an equitable remedy against the Debtor for breach of performance if such breach gives rise to a right to payment) that is in existence on or as of the Petition Date, whether or not such right to payment or right to an equitable remedy is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured.

1.13    **CLASS** shall mean any Class into which Claims are classified pursuant to Articles III and IV of this Plan.

1.14    **COMMITTEE** shall mean the Official Committee of Unsecured Creditors.  There is no committee appointed in this case.

1.15    **CONFIRMATION** means the signing of the Confirmation Order by the Bankruptcy Court.

1.16    **CONFIRMATION DATE** shall mean the date upon which the Confirmation Order is entered by the Court.

1.17    **CONFIRMATION HEARING** is the hearing at which the Bankruptcy Court determines whether the Plan of Reorganization complies with all requisite provisions of Section 1129 of the Bankruptcy Code, and at which time a decision is rendered regarding the Confirmation of the Plan.

1.18    **CONFIRMATION ORDER** is the Order entered by the Court pursuant to Section 1128 of the Bankruptcy Code confirming the Plan of Reorganization in accordance with the provisions of Chapter 11 of the Bankruptcy Code.

1.19    **CONTESTED**, when used with respect to a Claim, shall mean a Claim against the Debtor (i) that is listed in the Debtor's schedules of liabilities as disputed, contingent, or unliquidated (ii) that is listed in the Debtor's schedules of liabilities as undisputed, liquidated, and not contingent and as to which a proof of Claim has been filed with the Bankruptcy Court, to the extent the proof of claim exceeds the scheduled amount; (iii) that is not listed in the Debtor's schedules of debts, but as to which a Proof of Claim has been filed with the Bankruptcy Court; or (iv) as to which an objection has been filed.  Also see definition of Disputed Claim below.

1.21    **CONTINGENT**, when used with respect to a Claim, shall mean a Claim that has not accrued, as of the Petition Date, and which is dependent upon a future event that may never occur.

1.22    **COURT** shall mean the United States Bankruptcy Court for the Western District of Texas, El Paso Division, presiding over the Case, as hereinafter defined, or, if necessary, the United

States District Court for said District having original jurisdiction over said Reorganization Case.

      1.23     **CREDITORS** shall mean all Persons, as hereinafter defined, holding Claims against the Debtor.

      1.24     **DEBTOR** shall mean DHC Realty, LLC, who filed a petition for relief under Chapter 11 of the Code on May 23, 2011.

      1.25     **DEBTOR-IN-POSSESSION** shall mean the Debtors, as Debtors-in-Possession, in control and operating their businesses and property during the Chapter 11 Case.

      1.26     **DEFICIENCY AMOUNT** shall mean the amount of a Claim against a Debtor equal to the amount by which the Claim exceeds the sum of (a) any set-off rights of the holder of such Claim against such Debtor under Sections 506 and 553 of the Bankruptcy Code **plus** (b) the net proceeds realized from the disposition of any collateral securing such Claim or, if such collateral is not liquidated to cash, the value of the interest of the holder of the Claim in the Debtor's interest in the collateral securing such Claim, as determined under Section 506 of the Bankruptcy Code; **provided, however,** that if the holder of such Claim makes the election provided in Section 1111(b) of the Bankruptcy Code, there shall be no Deficiency Amount in respect to such Claim.

      1.27     **DISALLOWED**, when used with respect to a Claim, shall mean a Claim to the extent 10 days has expired since it has been disallowed by order of the Bankruptcy Court, unless proper application for a stay of such order has been made within such 10 day period, in which case the Claim shall be disallowed 30 days after entry of the order disallowing such Claim, unless prior to the expiration of such period, a stay is obtained with respect to the order disallowing the Claim.

      1.28     **DISPUTED CLAIM** means a Claim against the Debtor, to the extent that a Proof of Claim has been timely filed or deemed timely filed under applicable Bankruptcy law, as to which an objection has been or may be timely filed by a Proponent or any other party in interest and which objection, if timely filed, has not been withdrawn on or before any date fixed for filing such objections by the Plan or order of the Bankruptcy Court, and has not been denied by a Final Order. To the extent an objection relates to the allowance of only a part of a Claim, such Claim shall be a Disputed Claim only to the extent of the objection. Prior to the time that an objection has been or may be timely filed, for the purposes of this Plan, a Claim shall be considered a Disputed Claim to the extent that the amount of the Claim specified in the Proof of Claim exceeds the amount of the Claim scheduled by the Debtor as other than disputed, contingent or unliquidated. A Disputed Claim shall include any Claim which the Debtor has scheduled as "disputed, contingent, or unliquidated."

      1.29     **EFFECTIVE DATE** shall mean the eleventh Business Day following the date when the Confirmation Order becomes a Final Order, or February 1, 2012, whichever is sooner.

      1.30     **EQUITY SECURITY HOLDERS** shall mean the shareholders of the issued and outstanding capital stock of the Debtor, as of the Petition Date.

1.31 **ESTATE** shall mean the estate created by Section 541 of the Bankruptcy Code upon the filing of the Debtor's Chapter 11 petition with the Court.

1.32 **EXECUTORY CONTRACT** shall mean any executory contract or unexpired lease, as contemplated by Sections 365, 1113, and 1114 of the Bankruptcy Code, in effect on the Filing Date, between the Debtor and any other Person or Persons, and including, but not limited to, any written employment agreements, collective bargaining agreements, severance contracts or plans (only with respect to employees employed on the Confirmation Date) and employee benefit, retirement, or supplemental retirement benefit plans and agreements.

1.33 **FEE APPLICATIONS** shall mean applications of Professional Persons under Sections 330 or 503 of the Bankruptcy Code for allowance of compensation and reimbursement of expenses in the Chapter 11 cases.

1.34 **FILING DATE** means May 23, 2011.

1.35 **FINAL DECREE** shall mean a final decree as described in Rule 3022 of the Bankruptcy Rules.

1.36 **FINAL ORDER** means an order or judgment of the Bankruptcy Court as entered on the docket that has not been reversed, stayed, modified or amended and as to which the time to appeal, petition for certiorari, seek reargument or rehearing has expired and as to which no appeal, reargument, petition for certiorari, or rehearing is pending or as to which any right to appeal, reargue, petition for certiorari or seek rehearing has been waived in writing in a manner satisfactory to the Proponent or, if an appeal, reargument, petition for certiorari or rehearing thereof has been sought, the order or judgment of the Bankruptcy Court has been affirmed by the highest court to which the order was appealed or from which the reargument or rehearing was sought, or certiorari has been denied, and the time to take any further appeal or to seek certiorari or further reargument or rehearing has expired. Notwithstanding, and in lieu of, the foregoing, insofar as the Confirmation Order and the Order Approving a Disclosure Statement to accompany the Plan are concerned, Final Order means such order or judgment, with respect to which no stay is in effect.

1.37 **IMPAIRED CLASS** shall mean a class of Claims or Interests that is impaired within the meaning of Section 1124.

1.38 **INSIDER** shall mean the owner of DHC Realty, LLC, any director of the LLC, any officer of the LLC, and any relative of a director, officer, or person in control of the Debtor.

1.39 **INTEREST** shall mean any share of stock or other instrument evidencing an ownership interest in the Debtor, whether or not transferable, and any option, warrant, or right, contractual or otherwise, to acquire any such interest.

1.40 **LIEN** shall mean any charge against or interest in property to secure payment of a debt or performance of an obligation and includes, without limitation, any judicial or equitable lien,

security interest, mortgage, deed of trust or statutory lien as defined in Section 101(31), Section 101(33) and/or Section 101(47) of the Bankruptcy Code.

1.41 **NET INCOME** shall mean the gross revenues less the sum of costs of goods sold, ordinary and necessary operating, selling and general and administrative expenses; provided, however, losses from discontinued operations or provisions for taxes booked but not currently payable, shall not reduce net income. Neither debt forgiveness nor losses from the sale of assets shall reduce net income. The term "gross revenues" does not include deposits until the same are forfeited by the persons making such deposits, insurance loss proceeds, an award or payment made by any governmental authority in connection with the exercise of any right of eminent domain, or any proceeds from the financing or refinancing of the Debtor's property. Each element in calculating Net Income shall be in accordance with Generally Accepted Accounting Principles, consistently applied.

1.42 **PAID IN FULL** shall mean payment of the principal balance of an Allowed Claim and, with respect to an Allowed Secured Claim, to the extent of the value of the collateral securing the claim, shall include all contractual interest but not penalties, costs, or attorney's fees; and, with respect to an Unsecured Claim, shall mean the Allowed Claim.

1.43 **PERSON** shall mean an individual, corporation, partnership, joint venture, trust, estate, unincorporated organization, or a government or any agency or political subdivision thereof.

1.44 **PETITION DATE** shall mean May 23, 2011, the date on which the Debtor filed its original Chapter 11 petition with the Court.

1.45 **PLAN** shall mean this Amended Plan of Reorganization in its present form or as it may be altered, modified, amended or supplemented in accordance with the Bankruptcy Code, the Bankruptcy Rules and this Plan.

1.46 **PLAN ADMINISTRATOR** shall mean David Chowaiki. The Plan contemplates that the Plan Administrator shall administer the Assets of the Debtor, from which the Plan Administrator shall make the disbursements or transfers contemplated under the terms of the Plan. David Chowaiki will work with a certified public accountant in reviewing the Reorganized Debtor's financial statements and bankruptcy schedules and determining the distribution allocations in accordance with the Plan.

1.47 **PRIORITY CLAIMS** shall include all Claims which are entitled to priority pursuant to Section 507 of the Bankruptcy Code.

1.48 **PRO RATA** shall mean with respect to any Allowed Claim in any Class, the same proportion that the amount of such Allowed Claim bears to the aggregate amount of all Allowed Claims making up such Class once all Disputed Claims in that Class have become Allowed or have been Disallowed.

1.49 **PROFESSIONAL PERSONS** shall mean all attorneys and accountants who have

been employed in the Case by the Debtor or the Committee with the Court's approval.

      1.50    **PROFESSIONAL PERSON EXPENSE CLAIM** shall mean the fees and expenses of Professional Persons which are allowed by the Court pursuant to Section 503(b)(2) of the Bankruptcy Code (whether paid directly by the Debtor or by Professional Persons), but excluding any salaries or wages of any employees of the Debtor.

      1.51    **PROPONENT** shall mean the Debtor or Debtor- in-Possession.

      1.52    **SECURED CLAIM** shall mean any Claim secured by property of the Debtor, but only to the extent of the value of the collateral securing such Claim.

      1.53    **SECURED CREDITORS** shall mean the holders of Allowed Secured Claims.

      1.54    **UNSECURED CLAIM** shall mean a Claim arising or accruing, or deemed to have arisen or accrued, prior to the Filing Date, other than an Administrative Claim, a Tax Claim entitled to Priority, a Priority Claim, a Secured Claim, or Equity Interest, and shall include, without limitation, any Deficiency Amount.

      1.55    **UNSECURED CREDITORS** shall mean the holders of any Allowed Unsecured Claim.

      1.56    **APPLICATION OF DEFINITIONS AND RULES OF CONSTRUCTION CONTAINED IN THE BANKRUPTCY CODE.** Words and terms defined in Section 101 of the Bankruptcy Code shall have the same meaning when used in the Plan, unless a different definition is given in the Plan. The Rules of Construction set out in Section 102 of the Bankruptcy Code shall apply to the construction of the Plan.

## ARTICLE II
## CERTAIN GENERAL TERMS AND CONDITIONS

      The following general terms and conditions apply to this Plan:

      2.01    **CLASS OF CLAIMS.** Various Classes of Claims are defined in this Plan. This Plan is intended to deal with all Claims against the Debtor of whatever character, whether or not contingent or liquidated, and whether or not allowed by the Court pursuant to Section 502(a) and/or Section 1111(a) of the Code. However, only those Claims allowed pursuant to Section 502(a) and/or Section 1111(a) of the Code will be entitled to receive payment under this Plan.

      2.02    **MODIFICATIONS TO PLAN.** Pursuant to Bankruptcy Rule 3019, this Plan may be modified upon application of the Debtor or corrected prior to Confirmation, without notice or hearing, and without an additional Disclosure Statement required pursuant to Section 1125 of the Code provided that the Court finds that such modification does not materially or adversely affect any creditor or class of creditors or other parties in interest.

2.03 **PRESERVED LIENS.** To the extent required under Section 1124(2) of the Code, to preserve the rights of a creditor having a Secured Claim dealt with pursuant to that section, the lien or encumbrance of that creditor shall, to the extent it was valid prior to the filing of the Debtor's Chapter 11 Petition, it shall be preserved. All other liens, encumbrances, judgments and claims of any type and character against the property of the Debtor held by all creditors will be invalidated and released.

2.04 **SECURITIES LAWS.** Any satisfaction provided to any creditor pursuant to this Plan which may be deemed to be a security is exempt from registration under certain state and federal securities laws pursuant to Section 1145 of the Code. Absent registration or other exemption from the requirements of registration pursuant to the Securities Act of 1933, as amended, and any applicable state securities law, the subsequent transfer of any such securities is not so exempt.

2.05 **TIME FOR FILING OF CLAIMS.** The list of Creditors filed in these proceedings by the Debtor shall constitute the filing of a Claim by each Creditor which is not listed as disputed, contingent or unliquidated as to amount, but the Debtor reserves the right to object to any such Claim where it appears that the amount scheduled by the Debtor is improper or where there is some dispute with regard to that Claim. All other Creditors, or Creditors who disagree with the amounts as scheduled by the Debtor must file a Claim by the Bar Date, unless a separate Bar Date applies for the rejection of executory contracts and unexpired leases under this Plan or where there exists deficiency claims arising out of the abandonment of collateral to previously secured creditors or as a result of the granting of an order for relief from the provisions of Section 362 of the Code or if the Claim is deemed Allowed pursuant to Section 1111(a) of the Bankruptcy Code. The failure of the Debtor to object to any Claim for the purposes of voting shall not be deemed to be a waiver of the Debtor's right to object to a Claim either before or after Confirmation by the reorganized Debtor.

2.06 **BENEFIT.** This Plan is proposed in the belief that more will be realized by creditors than would be the case if the assets of the Debtor were liquidated under Chapter 7 of the Code.

### ARTICLE III
### CLASSIFICATION OF CLAIMS

**CLASS 1:** Priority Claims for Professional Fees and Expenses.

**CLASS 2:** Secured and Priority Claims of Taxing Authorities for Ad Valorem Taxes.

**CLASS 3:** General Unsecured Creditors

**CLASS 4:** KSimon Construction of Texas, Inc.

**CLASS 5:** Internal Revenue Service

-8-

**CLASS 6:**     Government Employees Credit Union ("GECU")

**CLASS 7:**     Current Equity Interest Holders (the Debtor)

**ARTICLE IV**
**SPECIFICATION AND TREATMENT OF CLAIMS**

4.01    **Class 1: Priority Claims for Professional Fees and Expenses**. Class 1 consists of allowed Administrative Claims entitled to priority pursuant to Sections 507(a)(1) and 503(b) of the Bankruptcy Code for payment of Professional Fees and Expenses. The Court, under Order dated May 24, 2011, authorized the employment of James & Haugland P.C., to represent the Debtors-in-Possession.

Accrued estimated fees and expenses for James & Haugland, P.C. as of December 13, 2011, are detailed below. The following accrued expenses and fees for these professionals have not been approved and have not yet been submitted to the Court for approval in a fee application. Further, this disclosure does not limit these professionals from seeking approval of additional fees and expenses from the Court:

| FIRM | FEES | EXPENSES | TOTAL |
|------|------|----------|-------|
| **James & Haugland, P.C.** | $28,860.00 | $1,499.20 | $30,359.20 |

James & Haugland, P.C. has $31,029.00 in trust to secure its fees and expenses.

The Creditors in Class 1 will be paid, subject to Court approval, on the Effective Date of the Plan, or when such fees and expenses are approved and allowed by the Bankruptcy Court.

**THE CLASS 1 CREDITORS ARE UNIMPAIRED UNDER THE PLAN.**

4.02    **Class 2: Priority Claims of Taxing Authorities for Ad Valorem Taxes.** Class 2 claims consist of the secured claim of the City of El Paso.

Class 2 Claims include the secured claim of City of El Paso. The City of El Paso has filed a secured amended claim in the amount of $404,097.57 for ad valorem taxes on the Debtor's property situated in the City of El Paso, El Paso County, Texas, covering tax years 2009 through 2011. The claim amount is for real and personal property taxes. By February 1, 2012, the Debtor shall pay in full the year 2011 and prior real estate and personal property tax debt related to the 7942 Gateway and 1887 North Zaragoza property. The year 2011 and prior real estate and personal property tax debt related to the 5030/5050 North Desert Blvd property shall be paid in full in forty-eight (48) equal monthly installments, with the first payment being made on the thirtieth (30th) day following the Plan's Effective Date, with forty-seven (47) payments of equal amount to be made on each consecutive month thereafter until the tax debt is paid in full. Post-petition interest at the rate of twelve percent (12%) per annum shall accrue beginning from the Petition Date until the confirmation

date. Thereafter, plan interest at the rate of twelve percent (12%) per annum shall accrue on the entire balance until the tax debt is paid in full. The Reorganized Debtor may pre-pay the pre-petition tax debt at any time. The Debtor shall have thirty (30) days from the Effective Date to object to City of El Paso's claim; otherwise, such claim is deemed as an allowed secured claim in the amount of $404,097.57.

The City of El Paso shall retain its lien securing its pre-petition and post-petition tax debt until such time as the tax debt is paid in full.

In the event the Debtor sells, conveys or transfers any property which is the subject of the City of El Paso tax claim, the Debtor shall remit such sales proceeds first to the City of El Paso to be applied to the City of El Paso tax debt.

The Debtor will pay all post-petition and post-confirmation tax liabilities owing to the City of El Paso in the ordinary course of business as such tax debt comes due without need of filing an administrative claim and request for payment.

Should the Reorganized Debtor fail to make any payments as required in this Plan, the City of El Paso shall provide written notice of that default and send written notice by certified mail to Debtor's counsel advising of that default, and providing the Reorganized Debtor with a period of ten (10) days to cure the default. In the event that the default is not cured within ten (10) days, the City of El Paso may, without further order of this Court, pursue all of its rights and remedies available to it under the Texas Property Tax Code to collect the full amount of all taxes, penalties and interest owed. Additionally, the failure to timely pay post-petition and/or post-confirmation taxes while the Reorganized Debtor is still paying any pre-petition debt, shall be considered an event of default. The City of El Paso shall provide Debtor's counsel with written notice of that default and a ten (10) day opportunity to cure said default. In the event that the Reorganized Debtor fails to timely cure the post-petition and/or post-confirmation default, the City of El Paso may proceed without further order of this court to collect the taxes, penalties and interest owed to that jurisdiction. The Reorganized Debtor shall be entitled to no more than one (1) Notice of Default. In the event of a second (2nd) default, the City of El Paso may pursue all rights and remedies available to it under the Texas Property Tax Code in state district court without order of this court.

### THE CLASS 2 CREDITOR IS IMPAIRED UNDER THE PLAN.

4.03     **Class 3: General Unsecured Creditors.** There are ten (10) Class 3 Creditors who hold a total of $1,964,208.55 in claims. Creditors holding Class 3 Claims will receive the following:

A.     All of the Class 3 Creditors are insiders as that term is defined in the Plan. The Plan definition is intended to mirror the definition of insiders contained at 11 U.S.C. § 101(31). To the extent that any Class 3 Creditors owe money to the Debtor, their Class 3 claims will be offset against amounts due and owing to the Debtor, before any distribution is made on the Class 3 claims of those insider Creditors. If, after offsetting claims, the Class 3 Creditor owes money to the Debtor, such Class 3 Creditor shall not participate in any distribution under the Plan.

-10-

B.     On the Effective Date, the ownership interest of Chowaiki Holdings, LLC in the Debtor shall be extinguished.  The new owners of DHC Realty, LLC will be the Class 3 Creditors, whose ownership will be based pro-rata on the amount of the allowed Class 3 Creditors' claim.

C.     The equity in the Debtor is owned by Chowaiki Holdings, LLC. Pursuant to the Plan, the equity ownership interest of Chowaiki Holdings, LLC will be extinguished on the Effective Date. New equity will be issued to the Class 3 Creditors prorata based upon each creditor's prorata portion of Class 3 debt compared to the total Class 3 debt. After offsetting the amounts owed by and between the Debtor and El Paso DHC Enterprises East, El Paso DHC Enterprises Far East, and El Paso DHC Enterprises West, there will remain due and outstanding the total amount of Class 3 Claims of $1,665,882.08. Effectively, the Class 3 Creditors will be paying this amount to acquire the equity in the Reorganized Debtor. To the extent that any party wishes to competitively bid against this amount that the Class 3 Creditors will be contributing in order to acquire the equity in the Reorganized Debtor, said party can provide notice of intent to competitively bid to the attorney for the Debtor two weeks prior to the Confirmation Hearing date, and the Court shall conduct an auction for the equity at the Confirmation Hearing. The Class 3 Creditors may collectively or individually bid by adding an amount to the total amount of the Class 3 debt, in order to bid collectively against any party who wishes to competitively bid for the equity in the Reorganized Debtor.

## THE CLASS 3 CREDITORS ARE IMPAIRED UNDER THE PLAN

4.04     **Class 4: KSimon Construction of Texas, Inc.** KSimon Construction of Texas, Inc. (KSimon)  is the Class 4 Creditor.  KSimon contends that it perfected a Mechanic's and Materialman's Lien against the property commonly known as 7942 Gateway East Boulevard, El Paso, Texas 79915-1816. KSimon has filed its Proof of Claim Number 10 in the amount of $42,338.36 asserting a secured claim for $27,650.00 and an unsecured claim for $14,688.36.  This claim was initiated pre-petition as a lawsuit in Cause Number 2010-3271, in the County Court at Law Number Three for El Paso County, Texas. DHC Realty has filed an Answer including Affirmative Defenses and Counterclaims.  An Objection to this Claim has been or will be filed prior to the Confirmation Hearing.

Under the Plan, the amount of the secured claim asserted by the Class 4 Creditor will be deposited into the registry of the Bankruptcy Court or into a trust account or other secured arrangement agreed upon by counsel for the Class 4 Creditor and the Debtor. KSimon shall execute and deliver to the attorney for the Debtor a release of the Mechanic's Lien, within seven (7) days from the date that counsel receives notice of the deposit of the secured amount of the claim in the registry of the Court, into a trust account, or into another secured arrangement agreed upon by counsel for the Class 4 Creditor and the Debtor.  If and when KSimon's claim is allowed, KSimon will be paid in full in cash for the total Allowed Claim it is awarded within fourteen (14) days from the date that a judgment, order, or arbitration award is rendered with regard to said claim.

## THE CLASS 4 CREDITOR IS IMPAIRED UNDER THE PLAN.

-11-

4.05    **Class 5: Internal Revenue Service ("IRS").**  The IRS has filed a claim for $100.00 alleging a priority pursuant to 11 U.S.C. § 507(a)(8).  The claim is unsecured.  To the extent that the claim is not otherwise resolved by the Debtor's filing of a tax return for 2010, the claim will be satisfied by the payment of $100.00 on the Effective Date.

**THE CLASS 5 CREDITOR IS IMPAIRED UNDER THE PLAN.**

4.06    **Class 6: Government Employees Credit Union ("GECU").**  GECU is a secured creditor and party-in-interest in this proceeding.

A.      Specifically, GECU is the owner and holder of the following instruments:

a)      A Promissory Note ( "**Note 1**") dated June 25, 2008 in the original principal amount of $1,300,000.00, executed by DHC Realty, LP (the "**Maker**") payable to the order of GECU (the "**Payee**") secured by a Deed of Trust, Security Agreement and Financing Statement dated June 25, 2008;

b)      A Promissory Note ("**Note 2**") dated June 25, 2008 in the original principal amount of $1,648,037.00, executed by DHC Realty, LP (the "**Maker**") payable to the order of GECU (the "**Payee**") secured by a Deed of Trust, Security Agreement and Financing Statement dated June 25, 2008;

c)      A Promissory Note ("**Note 3**") dated June 25, 2008 in the original principal amount of $1,402,635.00, executed by DHC Realty, LP (the "**Maker**") payable to the order of GECU (the "**Payee**") secured by a Deed of Trust, Security Agreement and Financing Statement dated June 25, 2008;

d)      A Promissory Note ("**Note 4**") dated June 25, 2008 in the original principal amount of $170,572.00, executed by DHC Realty, LP (the "**Maker**") payable to the order of GECU (the "**Payee**") secured by a Commercial Security Agreement dated June 25, 2008, granting a security interest in all inventory, equipment and general intangibles located at 7942 Gateway East, 5030 N. Desert Blvd. and 1887 N. Zaragoza, El Paso, Texas;

e)      A Promissory Note ("**Note 5**") dated June 25, 2008 in the original principal amount of $207,520.00, executed by DHC Realty, LP (the "**Maker**") payable to the order of GECU (the "**Payee**") secured by a Commercial Security Agreement dated June 25, 2008, granting a security interest in all inventory, equipment and general intangibles located at 7942 Gateway East, 5030 N. Desert Blvd. and 1887 N. Zaragoza, El Paso, Texas;

f)      A Promissory Note ("**Note 6**") dated June 25, 2008 in the original principal amount of $138,402.00, executed by DHC Realty, LP (the "**Maker**") payable to the order of GECU (the "**Payee**") secured by a Commercial Security Agreement dated June 25, 2008, granting a security interest in all inventory,

equipment and general intangibles located at 7942 Gateway East, 5030 N. Desert Blvd. and 1887 N. Zaragoza, El Paso, Texas;

all of which are collectively referred herein as the "**Loan Documents**".

B.    The Loan Documents grant GECU a security interest in all of the Debtor's inventory, equipment and general intangibles as well as the real property and improvements described as:

1.    A portion of Lot 25, Block 3, SAGELAND ADDITION REPLAT, an Addition to the City of El Paso, El Paso County, Texas, according to the plat thereof in Volume 26, Page 18, Plat Records of El Paso County, Texas, commonly known as 7942 Gateway East, El Paso, Texas 79915;

2.    Parcel 1:   A portion of Lot 1, Block 115, VISTA HILLS UNIT 38, an Addition to the City of El Paso, El Paso County, Texas, according to the plat thereof in Volume 68, Page 32, Plat Records of El Paso County, Texas (0.8394 acre parcel)

Parcel 2:   A portion of Lot 1, Block 115, VISTA HILLS UNIT 38, an Addition to the City of El Paso, El Paso County, Texas, according to the plat thereof in Volume 68, Page 32, Plat Records of El Paso County, Texas (0.0567 acre parcel), commonly known as 1887 N. Zaragoza, El Paso, Texas 79936;

3.    A portion of Lot 1, Block 1, SUNNY SANDS REPLAT "B", an Addition to the City of El Paso, El Paso County, Texas, according to the plat thereof in Volume 70, Page 7, Plat Records of El Paso County, Texas, commonly known as 5030 N. Desert Blvd., El Paso, Texas 79912;

All collectively referred to as the "**Property**".

C.    The balance of the Notes of the unpaid principal as of November 11, 2011 is as follows:

|        | **Principal Due** | **Total Due** |
|--------|-------------------|---------------|
| Note 1 | $1,194,473.96     | $1,241,617.99 |
| Note 2 | $1,519,641.43     | $1,574,064.92 |
| Note 3 | $1,293,347.57     | $1,339,667.45 |
| Note 4 | $   109,508.30    | $ 115,041.13  |

-13-

| | | |
|---|---|---|
| Note 5 | $ 133,232.67 | $ 139,689.63 |
| Note 6 | $ 88,854.61 | $ 93,160.87 |
| **TOTAL** | | $4,503,241.99 |

D.  The last payment received on the Notes was on July 29, 2011.  Late charges and interest continue to accrue post-petition at 6.5% per annum.  In addition,  the Debtor has guaranteed a $1.3 million note by its affiliate, Basic Sports Apparel, Inc.  As of December 7, 2011, the payoff of this note is $1,334,503.80.  The total debt owed to GECU is $5,837,745.79.

E.  The Debtor leases the above-referenced Property to non-Debtor subsidiaries for the operation of Fuddrucker's® franchises.

F.  GECU shall have an Allowed Secured Claim for the amount set forth hereinabove for the Class 6 Creditor.  GECU shall  retain all of its liens on the collateral located at 7942 Gateway East, El Paso, Texas 79915 and on the property commonly known as 1887 North Zaragoza, El Paso, Texas 79936.  This includes all of the real estate and personal property collateral located at these locations.  The value of the collateral located at 7942 Gateway East Boulevard is valued at $2.8 million, including $338,926.00 of furniture and equipment. The property located at 1887 Zaragoza Road is valued at $2, 650,000.00, including $278,168.00 of furniture and equipment. These valuations are based upon May 17, 2011 appraisals provided by George K. Karam of Property Analysis Service, the same appraiser who has provided appraisals for GECU for these properties since the inception of the loan relationship between GECU and the Debtor.  There is additional property at 7942 Gateway East which will be conveyed to GECU under this Plan, including antiques/bric-a-brac, motorcycles, signage, and neon signs having a value of $180,000.00.  There is additional property at 1887 North Zaragoza which will be conveyed to GECU under this Plan, including antiques/bric-a-brac, motorcycles, signage, arcade games, and neon signs having a value of $220,000.00.  The total value of the property at these two locations is $5,850,000.00 based on these appraisals and the Debtor's valuation of the additional property to be conveyed to GECU.

G.  On the Effective Date, or soon thereafter as is practicable, the Disbursing Agent shall assign or otherwise transfer to GECU all of the property which is collateral for its allowed secured claim located at 7942 Gateway East Boulevard, El Paso, Texas 79915 and at 1887 North Zaragoza, El Paso, Texas 79936.  Alternatively, GECU may foreclose on the real property if it prefers receiving title in this fashion.  Further, Fuddrucker's East and Fuddrucker's Far East shall transfer the franchises for the Fuddrucker's restaurants operated at those locations to GECU or its designated assignee.  A valuation hearing will be conducted at the Confirmation Hearing to assure that the real property and personal property and franchises conveyed to GECU are equal to or exceed the Allowed Secured Claim of GECU.  To the extent that the

-14-

transfer of property will not accomplish full satisfaction of the Allowed Secured Claim, the guarantees of such obligations by David Chowaiki and/or Hilel Chowaiki shall remain in effect, except to the extent that any remaining claim of GECU is paid in cash on the Effective Date. It is the intent of the Debtor to pay any unsatisfied Allowed Secured Claim of GECU in cash on the Effective Date, to the extent that the Court values the property to be transferred as described above as less than the amount of the Allowed Secured Claim.

H.  GECU shall execute a release of its Deed of Trust and a Release of any UCC-1 Financing Statements that relate to the real property or personal property located at 5030 North Desert Boulevard, El Paso, Texas 79912, once the allowed secured claim is paid in full by the Reorganized Debtor, as set forth above. If GECU fails to execute the requested release of lien documents, the Reorganized Debtor may execute same on behalf of GECU and file same with the appropriate legal authorities.

**THE CLASS 6 CREDITOR IS IMPAIRED UNDER THE PLAN.**

4.07    **Class 7: Current Equity Interest Holders.**  The equity in the Debtor is owned by Chowaiki Holdings, LLC. Pursuant to the Plan, the equity ownership interest of Chowaiki Holdings, LLC will be extinguished on the Effective Date. New equity will be issued to the Class 3 Creditors prorata based upon each creditor's prorata portion of Class 3 debt compared to the total Class 3 debt. After offsetting the amounts owed by and between the Debtor and El Paso DHC Enterprises East, El Paso DHC Enterprises Far East, and El Paso DHC Enterprises West, there will remain due and outstanding the total amount of Class 3 Claims of $1,665,882.08. Effectively, the Class 3 Creditors will be paying this amount to acquire the equity in the Reorganized Debtor. To the extent that any party wishes to competitively bid against this amount that the Class 3 Creditors will be contributing in order to acquire the equity in the Reorganized Debtor, said party can provide notice of intent to competitively bid to the attorney for the Debtor two weeks prior to the Confirmation Hearing date, and the Court shall conduct an auction for the equity at the Confirmation Hearing. The Class 3 Creditors may collectively or individually bid by adding an amount to the total amount of the Class 3 debt, in order to bid collectively against any party who wishes to competitively bid for the equity in the Reorganized Debtor.

**THE CLASS 7 EQUITY HOLDERS ARE IMPAIRED UNDER THE PLAN.**

**ARTICLE V**
**ADDITIONAL PROVISIONS APPLICABLE TO ALL CLAIMS**

5.01    **DISPUTED CLAIMS.**  Notwithstanding any other provision of this Plan specifying a date or time for the payment or distribution of consideration hereunder, payments and distributions in respect of any Claim which at such date or time is disputed, unliquidated or contingent shall not be made until such Claim becomes an Allowed Claim, whereupon such payments and distributions shall be made promptly. A Disputed Claim will become an Allowed Claim only as provided for in the definition of Allowed Claim **and** only after determination by motion or adversary proceeding in

-15-

the Bankruptcy Court. The Debtor/Reorganized Debtor will object to all Claims, as appropriate, before or within sixty (60) days after the Effective Date.

5.02 **PREPAYMENT.** The Debtor reserves the right to pay any and all classes of Claims, in advance of the distribution date(s) on a pro-rata basis without penalty, if any.

5.03 **OBJECTION TO CLAIMS.** Notwithstanding the occurrence of the Confirmation Date, and except as regards a Claim or Interest that otherwise has been allowed under the Plan, the Debtor may object to the allowance of any Claim, including, but not limited to, claims for an administrative expense or for costs incurred on or before the Effective Date. No distribution shall be made on account of any Claim which is not allowed. The Debtor shall have the right to file Objections to Claims for sixty (60) days after the Effective Date. Any Claim which is allowed after objection by the Debtor shall be paid on the first business day after the Order allowing the Claim becomes final and non-appealable.

## ARTICLE VI
## TREATMENT OF UNCLASSIFIED CLAIMS

6.01 **Administrative Claims and Professional Fee Claims.** All Administrative Claims and Professional Fee Claims against the Debtor shall be treated as set forth below:

6.02 **Time for Filing Administrative Claims.** The holder of an Administrative Claim, whether or not disputed, other than a Professional Fee Claim or a liability incurred and paid in the ordinary course of business by the Debtor, must file with the Bankruptcy Court notice of such Administrative Claim within thirty (30) days after the entry of the Confirmation Order pursuant to Bankruptcy Rule 3020(b) or be forever barred from receiving payment.

6.03 **Time for Filing Professional Fee Claims.** Any Professional Person seeking an award by the Bankruptcy Court of compensation for services or reimbursement of expenses shall file with the Bankruptcy Court, and serve on all parties required to receive notice, no later than ninety (90) days after the Effective Date, a Fee Application for all costs and fees incurred through the Effective Date. The failure to file a Fee Application as required under this section shall result in the Professional Fee Claim being forever barred and discharged. The Confirmation Order shall amend and supercede any previously entered order of the Bankruptcy Court regarding procedures for the payment of Professional Fee Claims.

(a) Allowance of Administrative Claims and Professional Fee Claims. An Administrative Claim or a Professional Fee Claim filed before Confirmation of the Plan with respect to which notice has been properly given shall become an Allowed Claim if no objection is filed on or before sixty (60) days after the publication of the notice of entry of the Confirmation Order pursuant to Bankruptcy Rule 3020(b). If a timely objection is filed, then the Claim shall become an Allowed Administrative Claim or an Allowed Professional Fee Claim only to the extent allowed by a Final Order.

(b)     Payment of Administrative Claims and Professional Fee Claims. Each holder of an Allowed Administrative Claim or Allowed Professional Fee Claim shall be paid the full amount of such holder's Allowed Claim on the Effective Date, or upon such other terms as agreed upon by such holder and the Debtor, or as ordered by the Bankruptcy Court; provided, however, that an Administrative Claim representing a liability incurred in the ordinary course of business by the Debtor may be paid in the ordinary course of business by the Debtor. The compensation of professionals and others whose compensation must be approved by the Bankruptcy Court will be paid only after Bankruptcy Court approval, on the eleventh (11th) day after approval of such compensation.

## ARTICLE VII
## ACCEPTANCE OR REJECTION OF THE PLAN

7.01    **Classes Entitled to Vote.** Each Class of Claims that is impaired under the Plan shall be entitled to vote to accept or reject the Plan.

7.02    **Class Acceptance Requirement.** With respect to any class of Claims that is impaired and entitled to vote, such class shall have accepted the Plan if it is accepted by at least two-thirds (2/3) in amount and more than one-half (1/2) in number of the Allowed Claims of such class that vote on the Plan. With respect to any class of Interests that is impaired and entitled to vote, such Class shall have accepted the Plan if it is accepted by at least two-thirds (2/3) in amount of such Class that vote on the Plan.

7.03    **Confirmation Without Acceptance.** If any impaired class of Claims or Interests shall fail to accept the Plan in accordance with Bankruptcy Code Section 1129(a), the Debtor may request that the Bankruptcy Court confirm the Plan in accordance with Bankruptcy Code Section 1129(b), provided at least one impaired class has accepted the Plan.

## ARTICLE VIII
## IMPLEMENTATION OF THE PLAN

8.01    **Plan Concept.** $5,850,000.00 of property including two Fuddrucker's franchises are being transferred to GECU to satisfy $5,837,745.79 of debt (plus interest and late fees to the extent accrued through the Effective Date). To the extent that the collateral is valued by the Court in an amount less than the Allowed Secured Claim of GECU, the Reorganized Debtor shall pay GECU in cash the additional amount of its secured claim allowed by the Court. Said transfer of collateral and payment of cash shall be in complete satisfaction of GECU's claim.

The Claim of the City of El Paso Tax Assessor/Collector shall be paid in cash on the Effective Date, to the extent that real property taxes and personal property taxes have accrued on the Fuddrucker's locations at 1887 North Zaragoza, El Paso, Texas 79936 and at 7942 Gateway East Boulevard, El Paso, Texas 79915. The accrued real property taxes and personal property taxes outstanding and assessed against the Fuddrucker's location at 5030 North Desert Boulevard, El Paso,

Texas 79912, shall be financed by the City Tax Assessor/Collector at the statutory rate and paid in forty-eight level monthly installments beginning on the Effective Date.

The Class 3 Creditors shall have their claims converted to equity, unless a party successfully outbids them for the equity in the Reorganized Debtor. In the event the Class 3 Creditors are not the successful bidder for the equity in the Reorganized Debtor, said Class 3 Creditors shall be paid prorata for the full amount bid by any party who successfully outbids the Class 3 Creditors for the equity in the Reorganized Debtor. Alternatively, the Class 3 Creditors shall be the equity owners of the Reorganized Debtor, with said ownership to be prorata based on the outstanding portion of the remaining Class 3 debt after offsetting of claims between the Debtor and any insiders who owe the Debtor money.

8.02 **Source of Plan Funds.** The Debtor has obtained financing for up to $1 million, which amount shall be secured by a second lien on the real estate located at 5030 North Desert Boulevard, El Paso, Texas 79912 and a first lien on any personal property located at that address which belongs to the Reorganized Debtor. These funds will be utilized to pay the costs of administering the Plan, to pay the allowed administrative claims associated with the Chapter 11 proceeding, to pay the $250,000.00, approximately, which will be due to the Class 2 Creditor on the Effective Date , to deposit the $27,650.00 into the registry of the court or other secured account to secure payment of the alleged secured claim of the Class 4 Creditor (to assure its immediate payment once it is an Allowed Secured Claim), to pay the $100.00 owed to the Class 5 Creditor (if any), and to pay any allowed secured claim of Government Employees Credit Union which is not satisfied by the transfer of collateral contemplated in the Class 6 treatment of its Allowed Secured Claim.

The Reorganized Debtor shall make monthly payments on the remaining claim of the City/County Tax Assessor-Collector for El Paso County and the Class 2 Creditor, in accordance with the Plan.

The Reorganized Debtor shall also be left with the operations of Fuddrucker's West and the Debtor's catering business, which the Debtor projects will generate profits in excess of $250,000.00 during the first year of post-confirmation operations.

8.03 **Disbursement of Plan Funds.** Cash required to be distributed under this Plan will be distributed on the Effective Date or the next business day thereafter or monthly as provided in the Plan; and, thereafter, any net cash will be distributed on the sale of assets or from income annually.

8.04 **Post-Confirmation Operations and Management.** After Confirmation, the Reorganized Debtor will manage its affairs as follows: (i) conducting its business in the usual, regular, and ordinary course of business in a manner consistent with sound practice, subject to the obligations under the Plan; (ii) using best efforts to preserve respective business properties and goodwill, and to preserve goodwill and business relationships with suppliers, distributors, customers, and others with whom it has business relationships; (iii) taking no actions inconsistent with the Plan; (iv) using best efforts to satisfy the conditions and the effectiveness of the Plan; (v) the Plan Administrator may retain professionals without further Order of this Court; and (vi) making cash

-18-

payments, and otherwise conducting cash management, in the ordinary course of business and in the manner consistent with the terms of the Plan.

      8.05   **Post-Confirmation Administrative Costs and Fees.** All costs and fees incurred after Confirmation shall be subject to the Reorganized Debtor's review and approval and shall be promptly paid in full from available cash of the Reorganized Debtor.

## IX. ADDITIONAL PROVISIONS APPLICABLE TO ALL CLAIMS

      9.01   **Binding Effect.** Except as otherwise provided in Section 1141(d)(1) of the Bankruptcy Code, on and after the Effective Date, the provisions of the Plan shall bind any holder of a Claim against, or Interest in, the Debtor/Reorganized Debtor and such holder's respective successors and assigns, whether or not the Claim or Interest of such holder is impaired under the Plan and whether or not such holder has accepted the Plan.

      9.02   **Injunction.** Except as provided in the Plan or Confirmation Order, as of the Effective Date, all entities that have held, currently hold, or may hold a Claim or other debt or liability against the Debtor are enjoined (unless the Debtor defaults under their Plan) from taking any of the following actions on account of any such Claims, debts or liabilities: (1) commencing or continuing in any manner, any action or other proceeding against the Reorganized Debtor or the property transferred under the Plan to the Reorganized Debtor; (2) enforcing, attaching, collecting or recovering, in any manner, against the Reorganized Debtor, any judgment, award, decree or order against the Reorganized Debtor or the property transferred to the Reorganized Debtor under the Plan; (3) creating, perfecting or enforcing any lien or encumbrance against the Reorganized Debtor or the property transferred to the Reorganized Debtor under the Plan; (4) asserting against the Reorganized Debtor or the property transferred to the Reorganized Debtor under the Plan, a set-off, right or claim of subordination or recoupment of any kind against any debt, liability or obligation due to the Debtor; (5) commencing or continuing any action, in any manner, in any place that does not comply with or is inconsistent with the provisions of the Plan.

## X. PAYMENT OF UNITED STATES TRUSTEES FEES

      All fees due to the United States Trustee pursuant to 28 U.S.C. § 1930(a)(6) will be paid in full on the Effective Date and prior to the payment of Administrative Expenses held by Court appointed attorneys and accountants. Any such fees accrued after the Effective Date will constitute an Allowed Administrative Expense Claim and be treated accordingly. The Reorganized Debtor shall be responsible for timely payment of quarterly fees of the United States Trustee incurred pursuant to 28 U.S.C. §1930(a)(6) until a Final Decree is entered in the Case. The Reorganized Debtor shall file with the Bankruptcy Court and serve on the United States Trustee a quarterly financial report for each quarter (or portions thereof) that the Debtor's case remains open on a format prescribed by the Office of the United States Trustee.

## XI. EXECUTORY CONTRACTS AND UNEXPIRED LEASES

11.01. **Rejection of Executory Contracts and Unexpired Leases**. On the Effective Date, all executory contracts and unexpired leases to which the Debtor is a party shall be deemed rejected, except for any executory contract or unexpired lease of the Debtor that: (i) has been previously assumed or rejected pursuant to a Final Order of the Court or is the subject of a separate motion to assume or reject filed under Section 365 of the Bankruptcy Code by the Debtor prior to the hearing to consider the confirmation of the Plan and related matters (which the hearing to consider the confirmation of the Plan and related matters. The Debtor expressly reserves the right to add or remove executory contracts and unexpired leases to or from the Debtor's Schedule of Assumed Contracts and Leases at any time prior to the Plan's Effective Date. The listing of a document on the Debtor's Schedule of Assumed Contracts and Leases shall not constitute an admission that such document is an executory contract or unexpired lease or that the Debtor has any liability thereunder.

Each executory contract and unexpired lease listed or to be listed on the Debtor's Schedule of Assumed Contracts and Lease or the Debtor's Schedule of Rejected Contracts and Leases (collectively the "Contract Schedules") shall include modifications, amendments, supplements, restatements or other agreements, including guarantees thereof, made directly or indirectly by the Debtor or any Third Parties in any agreement, instrument or other document that in any manner affects such executory contract or unexpired lease, without regard to whether such agreement, instrument or other document is listed on the Contract Schedules. The mere listing of a document on the Contract Schedules shall not constitute an admission by the Debtor that such document is an executory contract or unexpired lease or that the Debtor has an liability thereunder.

11.02. **Cure of Defaults.** Except to the extent that: (i) a different treatment has been agreed to by the non-debtor party or parties to any executory contract or unexpired lease to be assumed pursuant to Section 14.01 of the Plan; or (ii) any executory contract or unexpired lease shall have been assumed pursuant to an order of the Court which order shall have approved the cure amounts with respect thereto, the Debtor shall, pursuant to the provisions of Sections 1123(a)(5) and 1123(b)(2) of the Bankruptcy Code and consistent with the requirements of Section 365 of the Bankruptcy Code, no later than thirty (30) days after the Confirmation Date, file with the Court and serve one or more pleadings listing, the cure amounts of all executory contracts or unexpired leases to be assumed, subject to the Debtor's right to amend any such pleading or pleadings any time prior to thirty (30) days after the Confirmation Date. The parties to such executory contracts or unexpired leases to be assumed by the Debtor shall have fifteen (15) days from service of any such pleading to object to the cure amounts listed by the Debtor. Service of such pleading shall be sufficient if served on the other party to the contract or lease at the address indicated on (i) the contract or lease; (ii) any proof of claim filed by such other party in respect of such contract or lease; or (iii) the Debtor's books and records, including the Schedules, provided, however, that if a pleading served by the Debtor shall attempt reserve of the pleading on an alternative address, if any, from the above listed sources. If any objections are filed, the Court shall hold a hearing. Any party failing to object to the proposed cure amount fifteen days following service of the proposed cure amount by the Debtor shall be forever barred from asserting, collecting or seeking to collect any amounts in excess of the proposed cure amount against the Debtor or Reorganized Debtor. Notwithstanding the foregoing or anything

contained elsewhere in this Disclosure Statement or in the Plan, at all times through the date that is five (5) Business Days after the Court enters an order resolving and fixing the amount of a disputed cure amount, the Debtor shall have the right to reject to such executory contract or unexpired lease.

11.03. **Approval of Assumption of Certain Executory Contracts.** The executory contracts and unexpired leases on the Debtor's Schedule of Assumed Contracts shall be assumed by and, as applicable, assigned to the Debtor. Except as may otherwise be ordered by the Court, the Debtor shall have the right to cause any assumed executory contract or unexpired lease to vest in the Reorganized Debtor.

11.04. **Approval of Rejection of Executory Contracts and Unexpired Leases.** Entry of the Confirmation Order shall constitute the approval, pursuant to Section 365(a) of the bankruptcy Code, of the rejection of any executory contracts and unexpired leases to be rejected as and to the extent provided in the Plan.

11.05. **Bar Date for Filing Proof of Claims Relating to Executory Contracts and Unexpired Leases Rejected Pursuant to the Plan.** Claims arising out of the rejection of an executory contract or unexpired lease pursuant to the Plan must be filed with the Court no later than the later of (i) twenty (20) days after the Effective Date and (ii) thirty (30) days after the entry of an order rejecting such executory contract or lease. Any claims not filed within such time period will be forever barred from assertion against the Debtor and/or its estate. Objections to Claims filed pursuant to this provision shall be governed by the procedures set forth above. Unsecured Claims resulting from the rejection of executory contracts shall be treated in Class 6.

11.06. **Deemed Consents and Deemed Compliance with Respect to Executory Agreements.** Unless a counterparty to an executory contract, unexpired lease, license or permit objects to the Debtor's assumption thereof in writing on before seven (7) days prior to the Plan Confirmation Hearing, then, unless such executory contract, unexpired lease, license or permit has been rejected by the Debtor or will be rejected by operation of the Plan of the Debtor, the Debtor shall enjoy all the rights and benefits under each such executory contract, unexpired lease, license and permit without the necessity of obtaining such counterparty's written consent to assumption or retention of such rights and benefits.

## XII. RELATIONSHIP OF DEBTOR WITH AFFILIATES AND INSIDERS

The Debtor has affiliates as that term is defined and interpreted under Section 101(2) of the Bankruptcy Code, as set forth on the attached Exhibit "1".

## XIII. GENERAL PROVISIONS AFFECTING THE PLAN

13.01 **Additional Creditors**. Any Creditors added to the Debtor's Schedules after the first date set for the Section 341 meeting of creditors and any other Creditors not otherwise herein listed shall have until ten (10) days after the entry of the Order Confirming the Plan of Reorganization to file a Proof of Claim or their claims shall be barred. The Reorganized Debtor shall have thirty (30)

days after the entry of the Order Confirming the Plan of Reorganization to object to any such subsequently filed Claim.

13.02 **Conditions To Distribution**. Any entity, including any Creditor that has not, within the time provided in the Plan or any final order of the Court, performed any material act required in the Plan or in such final order, shall not be entitled to participate in any distribution under the Plan. No distribution shall be made with respect to Claims except pursuant to a final order.

13.03 **Best Interest Test.** Even if a plan is accepted by each class of holders of Claims and Interests, the Bankruptcy Code requires a Court to determine that the plan is in the "best interest" of all holders of claims and interests that are impaired by the plan and that have not accepted the plan. The "best interest" test, as set forth in Section 1129(a)(7) of the Bankruptcy Code, requires a Court to find either that (i) all members of an impaired class of Claims or Interests have accepted the plan or (ii) the plan will provide a member who has not accepted the plan with a recovery of property of a value, as of the Effective Date of the plan, that is not less than the amount that such holder would recover if the debtor were liquidated under Chapter 7 of the Bankruptcy Code.

To calculate the probable distributions to members of each impaired class of holders of Claims and Interests if the debtor were liquidated under Chapter 7, a Court must first determine the aggregate dollar amount that would be generated from the sale of the debtor's non-exempt assets if its chapter 11 case were converted to a Chapter 7 case under the Bankruptcy Code. The "liquidation value" would consist primarily of the proceeds from a forced sale of the debtor's non-exempt assets by a Chapter 7 trustee after payment of all Allowed Secured Claims.

The amount of liquidation value available to Unsecured Creditors would be reduced by the costs of liquidation under Chapter 7 of the Bankruptcy Code, including the compensation of a trustee, as well as of counsel and other professionals retained by the trustee, asset disposition expenses, additional administrative claims and other wind-down expenses. The liquidation itself would trigger certain priority payments that otherwise would be due in the ordinary course of business. Those priority claims would be paid in full from the liquidation proceeds before the balance would be made available to pay general unsecured claims or to make any distribution in respect of equity interest.

The foregoing types of claims and such other claims which may rise in the liquidation cases or result from the pending Chapter 11 case would be paid in full from the liquidation proceeds before the balance of those proceeds would be made available to pay pre-petition claims.

Once the Court ascertains the recoveries in liquidation of secured creditors and priority claimants, it must determine the probable distribution to general unsecured creditors and equity security holders from the remaining available proceeds in liquidation. If such probable distribution has a value greater than the distributions to be received by such creditors and equity security holders under a debtor's plan, then such plan is not in the best interest of creditors and equity security holders.

## XIV. RISK FACTORS

The holder of a Claim against the Debtor should read and carefully consider the following factors, as well as the other information set forth in this Disclosure Statement (and the documents delivered together herewith and/or incorporated by reference herein), before deciding whether to vote to accept or to reject the Plan. These factors should not, however, be regarding as constituting the only risks involved in connection with the Plan and its implementation.

There can be no assurance that the requisite acceptances to confirm the Plan will be obtained. Even if the requisite acceptances are received, the can be no assurance that the Court will confirm the Plan. A non-accepting creditor of the Debtor might challenge the adequacy of the Disclosure Statement or the balloting procedures and results as not being in compliance with the Bankruptcy Code and/or Bankruptcy Rules. Even after the Court has determined that the Disclosure Statement and the balloting procedures are appropriate, the Court could still decline to confirm the Plan if it were to find that any of the statutory requirements for confirmation had not been met. Section 1129 of the Bankruptcy Code sets forth the requirements for confirmation and requires, among other things, a finding by the Court that the confirmation of the Plan is not likely to be followed by a liquidation or a need for further financial reorganization and that the value of distributions to non-accepting holders of claims and interests within a particular class under the Plan will not be less than the value of distributions such holders would receive if the Debtor's non-exempt assets were liquidated under Chapter 7 of the Bankruptcy Code. While there can be no assurance that the Court will conclude that these requirements have been met, the Debtor believes that the Plan will not be followed by a need for further financial reorganization and that non-accepting holders within each class under the Plan will receive distributions at least as great as would be received following a liquidation pursuant to Chapter 7 of the Bankruptcy Code when taking into consideration all administrative claims and costs associated with any such Chapter 7 case.

Following Plan Confirmation, the Reorganized Debtor will be subject to all of the risks associated with the ownership of real estate in El Paso, Texas and the operation of a closely held business.

Despite these risks, the Reorganized Debtor will continue to be competitive enough to sustain the necessary cash flows to make each and every payment required under the Plan.

14.01 **Conditions Precedent**. The final conclusion of the Chapter 11 proceeding is subject to various conditions precedent, including among others, the approval by one impaired Class of Creditors, the Confirmation by the Court, the absence of any resort to appellate courts by the Debtor or individual Creditors, the continued viability of the Debtor, and the absence of unknown or unreported Claims. No assurance can be given that all required conditions will occur.

## XV. RETENTION OF BANKRUPTCY COURT JURISDICTION

15.01    Notwithstanding Confirmation of this Plan, or the Effective Date having occurred, the Bankruptcy Court shall retain full jurisdiction as provided in 28 U.S.C. § 1334 to enforce the provisions, purposes, and intent of this Plan including, without limitation, the authority to:

    (a)    To determine any and all objections to and proceedings involving the allowance, estimation, classification, and subordination of Claims or Equity Interests.

    (b)    To adjudicate all claims or any lien on any property of Debtor or any proceeds thereof.

    (c)    To adjudicate all claims or controversies arising during the pendency of this Chapter 11 case.

    (d)    To recover all assets and properties of the Debtor wherever located, including recoveries in all claims and causes of action brought by the Debtor, both before and after the Confirmation Date, including but not limited to Sections 542, 544, 545, 547, and 548 of the Bankruptcy Code.

    (e)    To hear and determine matters covering state, local and federal taxes pursuant to Sections 346, 505, 525 and 1146 of the Bankruptcy Code.

    (f)    To determine any and all applications for allowances of compensation and reimbursement of expenses and any other fees and expenses authorized to be paid or reimbursed under the Bankruptcy Code or the Plan.

    (g)    To determine any applications pending on the Effective Date for the rejection or assumption of executory contracts or unexpired leases or for the assumption and assignment, as the case may be, of executory contracts or unexpired leases to which the Debtor is a party or with respect to which the Debtor may be liable, and to hear and determine, and if need be to liquidate, any and all Claims arising therefrom.

    (h)    To approve the terms and conditions of the sale of any property of Debtor's estate pursuant to Section 363 of the Bankruptcy Code, and the final distribution of the proceeds from such sales.

    (i)    To determine all questions and disputes regarding Title to and liens on, the assets of the estate and determination of all causes of action, controversies, disputes, or conflicts whether or not subject to an action pending as of the date of Confirmation of the Plan, between the Debtor and any other party.

(j)     To consider any modifications of the Plan, remedy any defect or omission or reconcile any inconsistency in any order of the Bankruptcy Court, including the Confirmation Order, to the extent authorized by the Bankruptcy Code.

(k)     To determine all controversies, suits, and disputes that may arise in connection with the interpretation, enforcement, or consummation of the Plan or any Person's obligations hereunder.

(l)     To issue such orders in aid of execution of the Plan to the extent authorized by Section 1142 of the Bankruptcy Code and Rule 7070 of the Federal Rules of Bankruptcy Procedure.

(m)     To determine such other matters as may be set forth in the Confirmation Order or which may arise in connection with the Plan, the Confirmation Order, the Effective Date or the Distribution Date.

(n)     To enter any order, including injunctions, necessary to enforce the title, rights and powers of the Debtor and to impose such limitations, restrictions, terms and conditions of such rights, title and powers as the Bankruptcy Court may deem necessary.

(o)     Determine disputed applications for the assumption or rejection of executory contracts and unexpired leases under Section 365 of the Bankruptcy Code, and determine the allowance of Claims resulting therefrom.

(p)     To enter a final decree closing this Chapter 11 case.

15.02     **Powers of the Reorganized Debtor**. The Reorganized Debtor shall retain the powers of a Debtor-in-Possession for the purpose of prosecuting claims and causes of actions under Sections 542, 544, 545, 547, 548, 549, 550, and 553 of the Bankruptcy Code, available to the estate, with full authority to preserve, compromise and resolve all such claims and causes of action. The Court shall retain jurisdiction to hear and resolve by final order all such claims and causes of action.

All such claims and causes of action shall inure to the benefit of the Reorganized Debtor and any recoveries upon such causes of action may, in the Debtor's discretion, be used to satisfy any or all obligations to creditors under any promissory notes issued as Part of the Plan.

## XVI. MISCELLANEOUS

16.01     **Parties Bound.** Upon Confirmation of this Plan, the Debtor, Reorganized Debtor and all Creditors and other parties in interest shall be bound by the provisions of this Plan.

16.02.     **Remedies to Cure Defects.** After Confirmation, the Reorganized Debtor may, with the approval of the Court, and so long as it does not materially or adversely affect the interest of

Creditors, remedy any defect or omission, or reconcile any inconsistencies in the Plan, or in the Confirmation of the Plan, in such a manner as may be necessary to carry out the purposes and the intent of the Plan.

16.03. **Headings.** Paragraph headings have been inserted in this Plan for the convenience of the reader. Such headings shall not serve in any way to limit or modify the provisions of the paragraph.

16.04. **Monthly Operating Reports.** Upon Confirmation of the Plan, the Debtor shall be relieved of any further obligation of filing monthly operating reports beyond the month in which the Order Confirming the Plan of Reorganization is signed. **The Reorganized Debtor will, however, be required to file its Application for Final Decree within the time limits prescribed by the Court in its Order Confirming Plan of Reorganization**.

16.05. **Governing Law.** Except to the extent the Bankruptcy Code or Bankruptcy Rules are applicable, the rights and obligations arising under this Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of Texas, without giving effect to the principles of conflicts of law thereof. Notwithstanding the preceding sentence and anything to the contrary contained in the Plan, the rights and obligations arising under the Plan with respect to Tax Claims, shall be governed by, and construed and enforced in accordance with, the non-bankruptcy laws and rules which would otherwise have applied if the Reorganization Case had not been commenced.

16.06. **Amendment and Modification.** This Plan may be altered, amended or modified on or after the Confirmation Date as provided in the Plan or Bankruptcy Code Section 1127. The Reorganized Debtor may, after notice and hearing, with the approval of the Court, and so long as there is no materially adverse effect upon the interests of the Creditors, modify the Plan or remedy any defects in or omissions from, or reconcile any inconsistencies in the Plan or in the Order Confirming the Plan, as may be necessary to carry out its purposes and effects.

16.07. **Severability.** Should the Bankruptcy Court determine, prior to the Confirmation Date, that any provision in the Plan is either illegal on its face or illegal as applied to any Claim or interest, such provision shall be unenforceable either as to all holders of Claims or interests or as to the holder of such Claim or interest to which the provision is illegal, respectively. Such a determination of unenforceability shall in no way limit or affect the enforceability and operative effect of any other provision of the Plan.

16.08. **Revocation.** The Debtor reserves the right to revoke and withdraw the Plan prior to the Confirmation Date. If the Debtor revokes or withdraws this Plan, then the Plan shall be deemed null and void and, in such event, nothing contained herein shall be deemed to constitute a waiver or release of any Claims by or against the Debtor or any other Person, or to prejudice, in any manner, the rights of any person in any further proceedings involving the Debtor.

16.09. **The Failure to Satisfy a Confirmation Condition or an Effective Date Condition.** If one or more of the conditions to Confirmation or the Effective Date that has not been waived in writing by the Debtor is not satisfied, and the time within which such condition must be satisfied has expired, the Plan shall be deemed null and void, and, in such event, nothing contained herein shall

be deemed to constitute a waiver or release of any Claims by or against the Debtor or any other Person or to prejudice in any manner the rights of the Debtor or any Person in any further proceedings involving the Debtor.

16.10. **Time.** In computing any period of time prescribed or allowed by this Plan, the day of the act, event, or default from which the designated period of time begins to run shall not be included. The last day of the period so computed shall be included, unless it is a Saturday, a Sunday, or a legal holiday, or, when the act to be done is the filing of a paper in court, a day on which weather or other conditions have made the Clerk's office inaccessible, in which event the period runs until the end of the next day which is not one of the aforementioned days. When the period of time prescribed or allowed is less than 8 days, intermediate Saturdays, Sundays and legal holidays shall be excluded in the computation.

As used in this Plan, "legal holiday" includes New Year's Day, the Birthday of Martin Luther King, Jr., Washington's Birthday, Memorial Day, Independence Day, Labor Day, Columbus Day, Veterans Day, Thanksgiving Day, Christmas Day, and any other day appointed as a holiday by the President or the Congress of the United States, or by the state in which the Court is held.

16.11. **Rules of Construction.** As required to make sense, the singular shall include the plural and the plural shall include the singular.

16.12. **Post-Confirmation Operation**. On or after the Effective Date, the Reorganized Debtor shall have full authority to collect and sell non-exempt assets, retain professionals, and take any action as is appropriate to carry out the provisions of the Plan. Prior Bankruptcy Court approval shall not be required except as otherwise expressly provided for in the Plan.

16.13. **Further Authorization**. The Reorganized Debtor shall be entitled to seek such orders, injunctions, and rulings as they deem necessary to carry out the intentions of the Plan, including but not limited to an order specifying which recorded liens are discharged and released upon the sale, transfer or other disposition of the property.

16.14. **Litigation of Estate Claims**. Except as otherwise expressly provided in the Plan, pursuant to Section 1123(b)(3)(B), the Reorganized Debtor shall retain the right to enforce, litigate, and liquidate all claims, causes of action and interest belonging to the Debtor and/or the Estate. Any and all causes of action which the Debtor may have or which may arise under any provisions of the Code or which may be enforceable under any provision of the Code or any other law or statute, including claims against the Estate, shall be preserved and this Court shall retain jurisdiction to dispose of such causes of action, including common or statutory law causes and of action unrelated to bankruptcy. All such causes of action shall belong to the Estate as part of the assets of the Reorganized Debtor. Any recovery shall be distributed in accordance with the distribution scheme set forth in the Plan to various Classes of Creditors.

16.15. **Less Favorable Treatment.** The Reorganized Debtor and the Holder of an Allowed Claim may agree to payment of such Allowed Claim on a basis less favorable to the Holder than provided for in the Plan.

16.16. **Plan Not an Admission of Liability**. Until the Effective Date, (i) the compromises, settlements, releases and abandonments set forth in the Plan shall be of no force or effect; (ii) nothing in the Plan shall be deemed to be an admission that any Claim that could be asserted by any Person is valid in any respect; and (iii) nothing in the Plan or Disclosure Statement may be admitted into evidence or otherwise used in opposition to any suit, action, motion, contested matter or adversary proceeding brought on any such Claim.

16.17. **Successors and Assigns; Transferability**. The rights and obligations of any Person named or referred to in this Plan shall inure to the benefit of, and shall be binding upon, as the case may be, the successors and assigns of such Person.

16.18. **Compliance with Tax Requirements**. In connection with the Plan, the Debtor and Reorganized Debtor shall comply with all withholding and reporting requirements imposed by federal, state, local and foreign taxing authorities and all distributions hereunder shall be subject to such withholding and reporting requirements.

16.19. **Compliance with Applicable Laws**. If notified by any governmental authority that it is in violation of any applicable law, rule, regulation or order of such governmental authority relating to its business, Reorganized Debtor shall comply with such law, rule, regulation or order; provided however, that nothing contained herein shall require such compliance by Reorganized Debtor where the legality or applicability of such law, rule, regulation or order is being contested in good faith in appropriate proceedings by Reorganized Debtor and, if appropriate, for which an adequate reserve has been set aside on the books of Reorganized Debtor.

16.20. **Conflict**. In the event that there is any conflict or inconsistency between this Plan and/or the Disclosure Statement, the terms and provisions of this Plan shall govern.

16.21. **Business Days**. In the event that any payment or distribution to be made hereunder would otherwise be required to be made on a day that is not a Business Day, such payment or distribution shall instead be made on the next succeeding Business Day.

16.22. **Provisions Severable.** If any term or provision of the Plan is held be invalid, void or unenforceable, the Bankruptcy Court shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extend practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions hereof shall remain in full force and effect and shall in no way be affected, impaired or invalidated by such holding, alteration or interpretation. The Confirmation Order shall constitute a judicial determination and shall provide that

each term and provision hereof, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable in accordance with its terms.

16.23. **Payment**. Whether any payment or distribution to be made under the Plan shall be due on a day other than a Business Day, such payment or distribution shall instead be made on the immediately following Business Day. Whenever payment of a fraction of a cent would otherwise be called for, the actual payment shall reflect a rounding of such fraction to the nearest whole cent.

16.24. **Confirmation Order**. The Confirmation Order shall continue such injunctions and other orders necessary to implement the Plan. To the extent necessary, the Confirmation Order shall contain any provisions necessary to provide for Substantial Consummation of the Plan on the Effective Date.

16.25. **Effectuating Documents and Further Action.** The Debtor and the Reorganized Debtor are each authorized to execute, deliver, file or record such contracts, instruments or other agreements or documents and take such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan and any notes or securities issued pursuant to the Plan. Nothing contained herein shall prevent the Reorganized Debtor from taking such actions as may be necessary to consummate the Plan, although such actions may not expressly be provided for in the Plan.

16.26. **Post-Confirmation Administrative Expenses.** Administrative Expenses incurred by the Reorganized Debtor after the Confirmation Date, including, but not limited to, Claims for professionals' fees and expenses, shall not be subject to the requirement of a Court approved application and may be paid by the Reorganized Debtor in the ordinary course of business and without further Bankruptcy Court approval.

16.27. **Closing of Case**. The Reorganized Debtor shall endeavor to move for a final decree and closing of the Case as quickly as possible following the Confirmation Order becoming a Final Order; provided, however, the Case will not be closed until all Disputed Claims have been resolved by Final Order.

16.28. **Tax Withholding**. The Reorganized Debtor may withhold from any property to be distributed under the Plan any property that the Reorganized Debtor determines must be withheld for taxes payable by the person or entity entitled to such property to the extent required by applicable law. The Reorganized Debtor is authorized to require any Creditor or Interest Holder receiving any payment or distribution under the Plan to provide his, her or its tax identification number or social security number prior to any payment or distribution to such Creditor or Interest Holder.

16.29. **Conversion to Chapter 7.** If the Debtor's Case is converted to a case under Chapter 7 of the Bankruptcy Code, all assets of the Debtor will become property of the Chapter 7 Estate.

16.30. **Notices.** All notices, requests and demands, in order to be effective, shall be in writing (including by facsimile transmission) and, unless otherwise expressly provided herein, shall be

deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed, addressed as follows:

DHC Realty, LLC
301 Williams
El Paso, Texas 79901

Corey W.Haugland
James & Haugland, P.C.
P.O. Box 1770
El Paso, Texas 79949-1770
Telephone: 915-532-3911
Facsimile: 915-541-6440

## XVII. SOLICITATION IN CONNECTION WITH THE PLAN

Although the Disclosure Statement has attempted to provide information regarding the estate of the Debtor and the potential benefit that might accrue to its creditors, the Disclosure Statement cannot accurately project the percentages of each allowed claim to be realized upon immediate liquidation or that will be received from the Plan if implemented because of the various factors described herein. Despite these uncertainties and risks described herein, the Debtor believes that the Plan is feasible and can provide each holder of a claim against the Debtor with an opportunity to receive more than the benefits that would be received from liquidation of the Debtors' non-exempt assets.

## XVIII. CONCLUSION AND RECOMMENDATION

**THE PLAN PROVIDES FOR AN EQUITABLE DISTRIBUTION TO CREDITORS OF THE DEBTOR. THE DEBTOR BELIEVES THAT ANY ALTERNATIVE TO CONFIRMATION OF THE PLAN, SUCH AS A TOTAL LIQUIDATION OF THE DEBTOR'S NON-EXEMPT ASSETS OR ATTEMPTS BY ANOTHER PARTY IN INTEREST TO FILE A PLAN COULD RESULT IN SIGNIFICANT DELAYS AND LITIGATION AND COSTS. MOREOVER, THE DEBTOR BELIEVES THAT THE CREDITORS WILL RECEIVE GREATER AND EARLIER RECOVERIES UNDER THE PLAN THAN THOSE THAT WOULD BE ACHIEVED IN LIQUIDATION OR UNDER AN ALTERNATIVE PLAN. FOR THESE REASONS, THE DEBTOR URGES YOU TO RETURN YOUR BALLOT ACCEPTING THE PLAN.**

## XIX. CRAMDOWN

The Bankruptcy Court may confirm the Plan even though less than all Classes of Claims and interests have accepted the Plan. Confirmation of the Plan over the objection of one or more Classes of Creditors or Stockholders is generally referred to as a "cramdown." Section 1129(b) of the Bankruptcy Code sets forth the circumstances in which the Bankruptcy Court may confirm the Plan over the objection of a Class of Creditors or Stockholders pursuant to a "cramdown." **THE**

**DEBTORS FULLY RESERVE THE RIGHT TO REQUEST THE COURT TO CONFIRM THE PLAN PURSUANT TO THE CRAMDOWN PROVISIONS OF THE CODE.**

### XX. INTEREST AND PENALTIES

Upon entry of a Final Order awarding interest, accruing or assessed after the Petition date, an Allowed Claim, the amount of interest shall be calculated at the Federal Judgment Rate (28 U.S.C. § 1961).

**DATED** this 13th day of December, 2011.

Respectfully submitted,

JAMES & HAUGLAND, P.C.
P.O. Box 1770
El Paso, Texas 79949-1770
Phone: (915) 532-3911
FAX: (915) 541-6440

By: _____
Corey W. Haugland
State Bar No. 09234200
Attorney for Debtor

**APPROVED:**

DHC REALTY, LLC

By: _____
David Chowaiki, President

-31-



Pro Forma Organization

Chowaiki-Fuddruckers-Pro Forma  Org Chart F-08