**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**EL PASO DIVISION**

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| DHC REALTY, LLC. | § | Case No. 11-30977-hcm |
| | § | |
| Debtor. | § | |

## DISCLOSURE STATEMENT

**FILED BY**: The Debtor          **DATED**:          December 13, 2011

# INDEX TO DISCLOSURE STATEMENT

ARTICLE                                                                                                    PAGE

I.      INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
        1.01    The Debtor . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
        1.02    Purpose of Disclosure Statement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
        1.03    Chapter 11 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
        1.04    Creditors Entitled to Vote . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
        1.05    Definition of Impairment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
        1.06    Approval . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
        1.07    Voting on and Confirmation of the Plan . . . . . . . . . . . . . . . . . . . . . . . . . 3
        1.08    Tabulation of Votes and Voting Objection Procedure . . . . . . . . . . . . . . . . . . 4
        1.09    Purpose of the Plan . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
        1.10    Requirements for Confirmation of the Plan . . . . . . . . . . . . . . . . . . . . . . . . 5
        1.11    Cramdown . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

II.     REPRESENTATIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

III.    DEFINITIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

IV.     FINANCIAL PICTURE OF THE DEBTOR . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
        4.01    Financial History and Background of Debtor . . . . . . . . . . . . . . . . . . . . . . 10
        4.02    Future Income and Expenses Under the Plan . . . . . . . . . . . . . . . . . . . . . . 12
        4.03    Accounting Information . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
        4.04    Collectability of Accounts Receivable . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
        4.05    Actual or Projected Recognized Value from Recovery
                Of Preferences or Voidable Transfer . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
        4.06    Debtor's Bankruptcy Cause of Action . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

V.      ANALYSIS AND VALUATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
        5.01    Real Property . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
        5.02    Personal Property . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
        5.03    Liquidation Value of Assets . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
        5.04    Summary of Significant Orders Entered During the Case . . . . . . . . . . . . . . . 13

VI.     PROVISIONS FOR PAYMENT OF ADMINISTRATIVE EXPENSES AND
        PRIORITY TAX CLAIMS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
        6.01    Provision for Payment of Administrative Fee Expense Requests . . . . . . . . . . 13
        6.02    Provision for Payment of Priority Tax Claims . . . . . . . . . . . . . . . . . . . . . . 14

VII.    CONCEPT AND IMPLEMENTATION OF PLAN . . . . . . . . . . . . . . . . . . . . . . 14
        7.01    General Concept of Plan . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

7.02    Bar Date for Claims ................................................ 15
7.03    Continuing Jurisdiction of the Bankruptcy Court ..................... 15
7.04    Confirmability, Modification and Severability of the Plan ................. 16
7.05    Creditor Remedies Upon Default by Debtor ........................... 17
7.06    Retention of Property or Interest ................................... 18
7.07    Final Decree ..................................................... 18

VIII.   SPECIFICATION AND TREATMENT OF CLASSES ......................... 18
8.01    Class 1 Claims ................................................... 18
8.02    Class 2 Claims ................................................... 19
8.03    Class 3 Claims ................................................... 20
8.04    Class 4 Claims ................................................... 20
8.05    Class 5 Claims ................................................... 21
8.06    Class 6 Claims ................................................... 21
8.07    Class 7 Claims ................................................... 25

IX.     ADDITIONAL PROVISIONS APPLICABLE TO ALL CLAIMS ................ 25
9.01    Objection Deadline ............................................... 25
9.02    Power to Object to, Litigate, and Settle Disputed Claims .................. 25
9.03    Date of Distributions ............................................. 25
9.04    No Distribution Pending Allowance ................................. 25
9.05    Distributions After Allowance ...................................... 25
9.06    Reserves for Disputed Claims ...................................... 26
9.07    Delivery of Distributions .......................................... 27
9.08    Procedures for Resolving Contested Claims ........................... 27
9.09    Valuation of Secured Claims ....................................... 28
9.10    Treatment of Disallowed Claims .................................... 28
9.11    Effective Date Payments and Post-Effective Date Financing ............... 29
9.12    Preservation of Causes of Action ................................... 29
9.13    Setoffs .......................................................... 29

X.      FEASIBILITY OF THE PLAN    ...................................... 30

XI.     MEANS FOR IMPLEMENTATION OF THE PLAN ......................... 30
11.01   Source of Plan Funds ............................................. 30
11.02   Vesting of Title .................................................. 31
11.03   Retention of Professional Persons .................................. 31

XII.    EFFECT OF CONFIRMATION OF THE PLAN .......................... 31
12.01   Binding Effect ................................................... 31
12.02   Discharge of Claims Against the Debtor .............................. 31
12.03   Injunction ....................................................... 32

XIII.   PAYMENT OF UNITED STATES TRUSTEES FEES . . . . . . . . . . . . . . . . . . . . . . . . . 32

XIV.   EXECUTORY CONTRACTS AND UNEXPIRED LEASES . . . . . . . . . . . . . . . . . . . 32
        14.01  Rejection of Executory Contracts and Unexpired Leases . . . . . . . . . . . . . . . . . 32
        14.02  Cure of Defaults . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33
        14.03  Approval of Assumption of Certain Executory Contracts . . . . . . . . . . . . . . . . . 33
        14.04  Approval of Rejection of Executory Contracts and Unexpired Leases . . . . . . . . 34
        14.05  Bar Date for Filing Proof of Claims Relating to Executory Contracts
                 and Unexpired Leases Rejected Pursuant to Plan . . . . . . . . . . . . . . . . . . 34
        14.06  Deemed Consent and Deemed Compliance with Respect to
                 Executory Agreements . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

XV.    RELATIONSHIP OF DEBTOR WITH AFFILIATES AND INSIDERS . . . . . . . . . . . 34

XVI.   GENERAL PROVISIONS AFFECTING THE PLAN . . . . . . . . . . . . . . . . . . . . . . . . 34
        16.01  Additional Creditors . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34
        16.02  Conditions to Distribution . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34
        16.03  Best Interest Test . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

XVII.  RISK FACTORS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35
        17.01  Conditions Precedent . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

XVIII. ALTERNATIVES TO THE PLAN . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36
        18.01  General . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36
        18.02  Consequences of Rejection of the Plan . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37
        18.03  Liquidation Analysis . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37

XIX.   FEDERAL INCOME TAX CONSEQUENCES OF THE PLAN . . . . . . . . . . . . . . . . . 38
        19.01  General . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38
        19.02  Form 1040 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39

XX.    LITIGATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39
        20.01  Bankruptcy Litigation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39
        20.02  State Court Actions Involving the Debtor . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39
        20.03  Other Cases Involving the Debtor . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39

XXI.   MISCELLANEOUS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40
        21.01  Parties Bound . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40
        21.02  Remedies to Cure Defects . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40
        21.03  Headings . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40
        21.04  Monthly Operating Reports . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40
        21.05  Governing Law . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40
        21.06  Amendment and Modification . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40

21.07  Revocation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40
21.08  The Failure to Satisfy a Confirmation Condition/Effective Date Condition . . . . 41
21.09  Time . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 41
21.10  Rules of Construction  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 41
21.11  Post-Confirmation Operation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 41
21.12  Further Authorization . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 41
21.13  Litigation of Estate Claims  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 41
21.14  Less Favorable Treatment  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 42
21.15  Plan Not an Admission of Liability . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 42
21.16  Successors and Assigns; Transferability  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 42
21.17  Compliance with Tax Requirements . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 42
21.18  Compliance with Applicable Laws  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 42
21.19  Conflict  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 42
21.20  Business Days  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  42
21.21  Provisions Severable . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 43
21.22  Payment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 43
21.23  Confirmation Order . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 43
21.24  Effectuating Documents and Further Action . . . . . . . . . . . . . . . . . . . . . . . . . . 43
21.25  Post-Confirmation Administration Expenses  . . . . . . . . . . . . . . . . . . . . . . . . . 43
21.26  Closing of Case  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 44
21.27  Tax Withholding  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 44
21.28  Conversion to Chapter 7  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 44
21.29  Notices  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 44

XXII.SOLICITATION IN CONNECTION WITH THE PLAN . . . . . . . . . . . . . . . . . . . . . . . 44

XXIII.CONCLUSION  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 45

INDEX OF ATTACHMENTS  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 46

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## EL PASO DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| DHC REALTY, LLC. | § | Case No. 11-30977-hcm |
| | § | |
| Debtor. | § | |

### DISCLOSURE STATEMENT

Dated:        December 13, 2011

Comes now DHC REALTY, LLC, Debtor and Debtor- in-Possession in the above-numbered proceeding under Chapter 11 of Title 11, United States Code, and file their Disclosure Statement (the "Disclosure Statement") in connection with the solicitation of acceptances for its Plan of Reorganization (the "Plan").

**THIS DOCUMENT HAS IMPORTANT LEGAL CONSEQUENCES. CONSULTATION WITH AN ATTORNEY FAMILIAR WITH BANKRUPTCY LAW IS STRONGLY ENCOURAGED WITH RESPECT TO THE INTERPRETATION OF PROVISIONS AFFECTING YOUR PARTICULAR CLAIM AND THOSE GENERAL PROVISIONS FOUND IN THIS DISCLOSURE STATEMENT.**

### I. INTRODUCTION

1.01. **The Debtors**.  On May 23, 2011, DHC REALTY, LLC referred to as the "Debtor" or "Debtor-in-Possession" filed a voluntary petition for reorganization under Chapter 11 of the United States Bankruptcy Code (the "Code") in the United States Bankruptcy Court for the Western District of Texas, El Paso Division (the "Court"). Since then, the Debtors have continued in possession of their assets, and to operate their business, as a Debtor-in-Possession, pursuant to Section 1108 of the Code.

1.02. **Purpose of Disclosure Statement**.  The Disclosure Statement is prepared in accordance with Section 1125 of the Bankruptcy Code. Although the Code does not specifically spell out what information is required to be set forth in the Disclosure Statement, it must contain "adequate information" of a kind and in sufficient detail that would enable a hypothetical, reasonable investor typical of the holders of claims against or interests in the Debtor, to make an informed judgment about the plan. The Disclosure Statement must be approved by the Bankruptcy Court for the Western District of Texas, El Paso Division (the "Bankruptcy Court"), after notice and hearing,

prior to solicitation of votes of the Creditors on any Plan of Reorganization.

The purpose of the Disclosure Statement is to provide the creditors and parties in interest with adequate information to make an informed judgment about the Debtor's Plan of Reorganization (the "Plan"). Generally, the information includes, among other matters, a brief history of the Debtor, the Chapter 11 case, a description of the remaining assets and liabilities of the Debtor, an explanation of how the Plan will function and an explanation of why the reorganization of the Debtor under the proposed Plan should result in a greater benefit to the creditors than if the Chapter 11 case was converted to a Chapter 7 case and a Chapter 7 Trustee was appointed.

To make an informed judgment about the Plan, you are urged to read the entire Disclosure Statement and Plan. Any definition of any terms used in the Disclosure Statement is to be determined first by reference to the Definitions section of the Plan, then the Bankruptcy Code and finally the plain language meaning of the term.

The Debtors have complied with the requirements of Section 1125 of the Code and on January _____, 2012, the Bankruptcy Court approved the Disclosure Statement and authorized the Debtors to solicit acceptances and rejections of the Plan, which is attached hereto as Exhibit "A" and incorporated herein by reference.

1.03. **Chapter 11**. Pursuant to Chapter 11 of the Bankruptcy Code, the Debtor retains possession of its assets without the appointment of a Trustee. Unless the Court orders otherwise, the Debtor continues to operate its business as a Debtor-in-Possession. Upon the filing of the petition for relief under Title 11 of the United States Code and until such time as the Debtor's Plan of Reorganization is confirmed, the Debtor and its assets remain protected by the automatic stay granted to the Debtor by Section 362 of the Code. The automatic stay allows the Debtor an opportunity to continue its business and to reorganize or achieve rehabilitation by proposing, obtaining confirmation of, and implementing a plan of reorganization under which the claims and interests of creditors and owners are to be provided for by payment in whole or in part.

1.04. **Creditors Entitled to Vote**. Any creditor of the Debtor whose Claim is impaired under the Plan is entitled to vote if either (i) its claim has been scheduled by the Debtor (and such Claim is not scheduled as disputed, contingent or unliquidated), or (ii) it has filed a proof of claim on or before the last date set by the Bankruptcy Court for such filings. Any Claim as to which an objection has been filed (and such objection is still pending) is not entitled to vote, unless the Bankruptcy Court temporarily allows the Claim in an amount which it deems proper for the purpose of accepting or rejecting the Plan upon application by the Creditor. Such application must be heard and determined by the Bankruptcy Court at such time as specified by the Court. A Creditor's vote may be disregarded if the Bankruptcy Court determines that the creditor's acceptance or rejection was not solicited or procured in good faith or in accordance with the provisions of the Bankruptcy Code. Only the votes of Creditors holding Allowed Claims or Interests will be counted for the purpose of confirming the Plan.

1.05. **Definition of Impairment**. Under Section 1124 of the Bankruptcy Code and except as provided in Section 1123(a)(4) of the Bankruptcy Code, a class of claims or interests is impaired under a plan unless, with respect to each claim or interest of such class, the plan--

(1)     leaves unaltered the legal, equitable, and contractual rights to which such claim or interest entitles the holder of such claim or interest; or

(2)     notwithstanding any contractual provision or applicable law that entitles the holder of such claim or interest to demand or receive accelerated payment of such claim or interest after the occurrence of a default--

    (A)     cures any such default that occurred before or after the commencement of the case under this title, other than a default of a kind specified in section 365(b)(2) of this title;

    (B)     reinstates the maturity of such claim or interest as such maturity existed before such default;

    (c)     compensates the holder of such claim or interest for any damages incurred as a result of any reasonable reliance by such holder on such contractual provision or such applicable law; and

    (D)     does not otherwise alter the legal, equitable, or contractual rights to which such claim or interest entitles the holder of such claim or interest.

1.06. **Approval**. The Disclosure Statement has previously been approved by the Court at a hearing held on January 12, 2012, of which each party-in-interest was notified in advance. The information set forth herein is current as of December 13, 2011.

1.07. **Voting on and Confirmation of the Plan**. In addition to the Disclosure Statement and a copy of the Plan, each party entitled to vote will hereafter be provided with a ballot pursuant to which each party can register its acceptance or rejection of the Plan. Creditors may vote with respect to the Plan by completing and mailing the ballot to Corey W. Haugland, James & Haugland, P.C., P. O. Box 1770, El Paso, Texas 79949-1770 or by utilizing its physical address of 609 Montana Avenue, El Paso, Texas 79902.

All ballots must be received by Mr. Haugland no later than the close of business (5:00 p.m., Mountain Daylight Time) January _____, 2012 or such ballots cannot be counted in voting on the Plan. **Pursuant to Local Rule 3018 of the United States Bankruptcy Court for the Western District of Texas, except as otherwise provided by order of the Court, no ballots are to be filed with the Clerk of the Court.**

Section 1128(a) of the Bankruptcy Code requires the Bankruptcy Court, after notice, to hold

a hearing on confirmation of the Plan (the "Confirmation Hearing"). Section 1128(b) provides that any party in interest may object to Confirmation of the Plan.

The time and date of the Confirmation Hearing will be set forth in a notice to each Creditor. The Confirmation Hearing may be adjourned from time to time by the Bankruptcy Court without further notice except for an announcement made at the Confirmation Hearing or any adjournment thereof. Any Objection to Confirmation must be made in writing and filed with the Bankruptcy Court and served upon all parties in interest and Debtor's counsel, Corey W. Haugland, James & Haugland, P.C., P. O. Box 1770, El Paso, Texas 79949-1770 or by utilizing its physical address of 609 Montana Avenue, El Paso, Texas 79902 on or before the deadline set by the Court.

Responses or objections, if any, to confirmation of the Debtor's Plan: (a) shall be in writing; (b) shall state the name and address of the objector and its interest in the Debtor; (c) shall state, if appropriate, the amount and nature of the objector's Claim or Equity Interest; (d) shall state the grounds for the responses or objections and the legal basis therefore; (e) shall reference with specificity the text of the Plan to which the response or objection is made; and (f) shall provide proposed language changes or insertions to the Plan to resolve responses or objections. If a response or objection to the confirmation of the Plan is not timely filed and served before the objection deadline, the responding or objecting party shall be barred from objection to confirmation of the Plan and be precluded from being heard at the Confirmation Hearing.

1.08. **Tabulation of Votes and Voting Objection Procedure**. Votes on the Plan will be counted in accordance with either (i) the Debtor's schedules (as amended) with respect to Claims as to which no proofs of claim have been filed or (ii) a proof of claim filed in these cases, provided that a vote in respect of a Claim that is subject to an objection seeking to (a) disallow or reduce a Claim for voting purposes, (b) disallow a Claim, (c) reduce the amount of a Claim, and (d) reallocate and transfer a proof of claim (collectively, "Claims Objections") shall be counted in accordance with the treatment provided in such Claims Objection or as otherwise provided by the Court. If such an Objection is timely filed, the Ballot for the holder of such proof of claim shall be counted in accordance with a Claims Objection, unless temporarily allowed in a different manner by the Court after notice and hearing. Any party seeking temporary allowance of a Claim for voting purposes in a manner different than as stated in a Claims Objection is required to file with the Court a motion, with evidence in support thereof, seeking temporary allowance of such Claim pursuant to Bankruptcy Rule 3018(a) on or before January _____, 2012 by 5:00 p.m. (Mountain Daylight Time) (the "Rule 3018(a) Motion Deadline"). Furthermore, any holder of a Claim that is scheduled as zero, disputed, unliquidated or contingent in the Schedules who wishes to vote on a Plan must file a Rule 3018(a) Motion on or prior to the Rule 3018(a) Motion Deadline. A Rule 3018(a) Motion must be served on counsel of the Debtor so as to be received by the Rule 3018(a) Motion Deadline.

1.09. **Purpose of the Plan**. Chapter 11 is the principal reorganization chapter of the Bankruptcy Code. Pursuant to Chapter 11, the Debtor attempts to reorganize her personal affairs and business or effectively liquidate her assets for the benefit of her creditors and other parties in interest. Confirmation of a Plan of Reorganization is the purpose of a Chapter 11 reorganization case. A

Reorganization Plan sets forth the means for satisfying the holders of claims against the Debtor.

After a Chapter 11 Plan has been filed, it must be accepted by the Creditors of the Debtor. Section 1125 of the Bankruptcy Code requires full disclosure before solicitation of votes concerning a Chapter 11 Plan. The Disclosure Statement is presented to the Creditors to satisfy the requirements of Section 1125 of the Bankruptcy Code.

1.10. **Requirements for Confirmation of the Plan.** At the Confirmation Hearing, the Bankruptcy Court shall determine whether the requirements of Section 1129 of the Bankruptcy Code have been satisfied, in which event the Bankruptcy Court shall enter an order confirming the Plan. To confirm the Plan, the Bankruptcy Court must find that:

(a)     The Plan complies with the applicable provisions of the Bankruptcy Code.

(b)     the Plan Proponent has complied with the applicable provisions of the Bankruptcy Code.

(c)     The Plan has been proposed in good faith and not by any means forbidden by law.

(d)     Any payment made or promised by the Debtor or by a person issuing securities or acquiring property under the Plan, for services or for costs and expenses in, or in connection with the case or in connection with the Plan and incident to the case, has been disclosed to the Bankruptcy Court, and any such payment made before the Confirmation of the Plan is reasonable, or if such payment is to be fixed after Confirmation of the Plan, such payment is subject to the approval of the Bankruptcy Court as reasonable.

(e)     The Plan Proponent has disclosed the identity and affiliations of any individual proposed to serve, after Confirmation of the Plan, as a director, officer, or voting agent of the Debtor, an affiliate of the Debtor participating in a joint plan with the Debtor, or a successor to the Debtor under the Plan, and the appointment to, or continuance in, such office of such individual, is consistent with the interests of creditors and equity security holders and with public policy, and the Debtor has disclosed the identity of any insider that will be employed or retained by the reorganized Debtor, and the nature of any compensation for such insider.

(f)     Any governmental regulatory commission with jurisdiction, after Confirmation of the Plan, over the rates of the Debtor has approved any rate change provided for in the Plan, or such rate change is expressly conditioned on such approval.

(g)     With respect to each impaired class of claims or interests, either each holder of a Claim or Interest of such class has accepted the Plan, or will receive or retain under the Plan on account of such claim or interest property of a value, as of the Effective Date of the Plan, that is not less than the amount that such holder would so receive or retain if the Debtor were liquidated on such date under Chapter 7 of the Bankruptcy Code.

(h)     A class of claims or interests has either accepted the Plan or is not impaired under the Plan.

(i)     Except to the extent that the holder of a particular claim has agreed to a different treatment of such claim, the Plan provides that administrative expenses and priority claims (other than tax claims) will be paid in full on the Effective Date and that priority tax claims will receive on account of such claims deferred cash payments, over a period not exceeding six years after the date of assessment of such claim, of a value, as of the effective date, equal to the allowed amount of such claim.

(j)     At least one class of claims that is impaired under the Plan has accepted the Plan, determined without including any acceptance of the Plan by any insider holding a claim of such class.

(k)     Confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the Debtor or any successor to the Debtor under the Plan, unless such liquidation or reorganization is proposed in the Plan.

(l)     All fees payable under 28 U.S.C. § 1930, as determined by the Court at the hearing on confirmation of the Plan, have been paid or the Plan provides for the payment of all such fees on the Effective Date of the Plan.

(m)     The Plan provides for the continuance, after its Effective Date, of payment of all retiree benefits, as that term is defined in Section 1114 of the Title, at the level established pursuant to subsection (e)(1)(B) or (g) of Section 1114 of the Title, at any time prior to confirmation of the Plan for the duration of the period the Debtor has obligated herself to provide such benefits.

The Debtor believes that the Plan satisfies all of the statutory requirements of Chapter 11 of the Bankruptcy Code applicable to the Debtor, that the Debtor has complied or will have complied with all of the requirements of Chapter 11 and that the proposal of the Plan is made in good faith.

The Debtor believes that the holders of all Claims impaired under the Plan will receive payments under the Plan having a present value as of the Effective Date in amounts not less than the amounts likely to be received if the Debtor were liquidated in a case under Chapter 7 of the Bankruptcy Code.

The Debtor also believes that Confirmation of the Plan is not likely to be followed by the liquidation or the need for further financial reorganization of the Debtor, except for any liquidation expressly contemplated by the Plan.

1.11. **Cramdown**. In the event that any impaired class of Claims does not accept the Plan, the Bankruptcy Court may still confirm the Plan at the request of the Debtor if, as to each impaired

class which has not accepted the Plan, the Plan "does not discriminate unfairly" and is "fair and equitable." A plan of reorganization does not discriminate unfairly within the meaning of the Bankruptcy Code if no class receives more than it is legally entitled to receive for its claims or equity interests. "Fair and equitable" has different meanings for Secured Claims, Unsecured Claims, and equity interests.

With respect to a Secured Claim, "fair and equitable" means either: (i) the impaired Secured Creditor retains its lien to the extent of its allowed Claim and receives deferred cash payments at least equal to the allowed amount of its Claim with a present value as of the Effective Date at least equal to the value of such creditor's interest in the property securing its lien; or (ii) property subject to the lien of the impaired Secured Creditor is sold free and clear of that lien, with the lien attaching to the proceeds of the sale, and such lien proceeds must be treated in accordance with clauses (i) or (iii) hereof; or (iii) the impaired Secured Creditor realizes the "indubitable equivalent" of its claim under the Plan.

With respect to an Unsecured Claim "fair and equitable" means either: (i) each impaired Unsecured Creditor receives or retains property of a value equal to the amount of its allowed claim; or (ii) the holders of Claims and Interests that are junior to the Claims of the dissenting class will not receive any property under the Plan.

In the event one or more classes of impaired Claims rejects the Plan, the Bankruptcy Court will determine at the Confirmation Hearing whether the Plan is fair and equitable and does not discriminate unfairly against any rejecting impaired class of Claims. In the event one or more classes of impaired Claims or interest rejects the Plan, the Debtor requests that the Court confirm the Plan through a cramdown of dissenting, impaired classes as the Confirmation Hearing, without additional notice to creditors.

**THE DEBTORS INTEND TO REQUEST THE COURT TO ORDER CRAMDOWN PURSUANT TO SECTION 1129(b).**

## II. REPRESENTATIONS

**APPROVAL OF THIS DISCLOSURE STATEMENT BY THE COURT SHALL NOT CONSTITUTE AN ENDORSEMENT OF THE PLAN BY THE COURT.**

**ALL CAPITALIZED TERMS USED HEREIN, NOT OTHERWISE DEFINED, SHALL HAVE THE MEANING ASSIGNED IN THE PLAN.**

**NO REPRESENTATION CONCERNING THE DEBTORS, THEIR BUSINESS OPERATIONS, THE VALUE OF HER PROPERTY, OR THE VALUE OF ANY BENEFITS OFFERED TO HOLDERS OF CLAIMS OR OTHER PARTIES IN INTEREST IN CONNECTION WITH THE PLAN ARE AUTHORIZED OTHER THAN AS SET FORTH IN THIS DISCLOSURE STATEMENT. ANY REPRESENTATIONS OR INDUCEMENTS**

MADE TO SECURE YOUR ACCEPTANCE WHICH ARE CONTRARY TO INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT SHOULD NOT BE RELIED UPON BY YOU IN ARRIVING AT YOUR DECISION, AND ANY SUCH ADDITIONAL REPRESENTATIONS AND INDUCEMENTS SHOULD BE REPORTED TO THE DEBTORS AND THEIR COUNSEL:

> COREY W. HAUGLAND
> JAMES & HAUGLAND, P.C.
>
> Mailing Address:
> P. O. BOX 1770
> EL PASO, TEXAS 79949-1770
>
> Physical Address:
> 609 MONTANA AVENUE
> EL PASO, TEXAS 79902

IN ACCORDANCE WITH SECTION 1145 OF THE BANKRUPTCY CODE, THE DISCLOSURE STATEMENT IS EXEMPTED FROM THE REQUIREMENTS OF THE SECURITIES LAWS OF THE UNITED STATES, INCLUDING THE SECURITIES ACT OF 1933 ("1933 ACT") AND THE 1934 EXCHANGE ACT ("1934 ACT") AS WELL AS THE BLUE SKY LAWS OF THE STATE OF TEXAS AND THE STATE SECURITIES LAWS OF EACH STATE IN WHICH THE DEBTORS TRANSACT BUSINESS.

ALL CREDITORS ARE ADVISED AND ENCOURAGED TO READ THIS DISCLOSURE STATEMENT AND THE PLAN OF REORGANIZATION IN THEIR ENTIRETY BEFORE VOTING TO ACCEPT OR REJECT THE PLAN OF REORGANIZATION. A SUMMARY OF THE PLAN OF REORGANIZATION MADE IN THIS DISCLOSURE STATEMENT ARE QUALIFIED IN THEIR ENTIRETY BY REFERENCE TO THE PLAN OF REORGANIZATION, OTHER EXHIBITS ANNEXED OR REFERRED TO IN THE PLAN OF REORGANIZATION AND THIS DISCLOSURE STATEMENT. THE STATEMENTS CONTAINED IN THIS DISCLOSURE STATEMENT ARE MADE ONLY AS OF THE DATE HEREOF, AND THERE CAN BE NO ASSURANCE THAT THE STATEMENTS CONTAINED HEREIN WILL BE CORRECT AT ANY TIME AFTER THE DATE HEREOF.

THIS DISCLOSURE STATEMENT HAS BEEN PREPARED IN ACCORDANCE WITH 11 U.S.C. § 1125 AND RULE 3016(c) OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE (THE "BANKRUPTCY RULES") AND NOT NECESSARILY IN ACCORDANCE WITH FEDERAL OR STATE SECURITIES LAWS OR OTHER LAWS GOVERNING DISCLOSURE OUTSIDE THE CONTEXT OF TITLE 11 OF THE UNITED STATES CODE §§ 101-1330 (THE "BANKRUPTCY CODE"). NEITHER THE SECURITIES TO BE DISTRIBUTED NOR THIS DISCLOSURE STATEMENT HAS BEEN

APPROVED OR DISAPPROVED BY THE SECURITIES AND EXCHANGE COMMISSION (THE "SEC") OR ANY STATE SECURITIES COMMISSION, NOR HAS THE SEC APPROVED OR DISAPPROVED THE ACCURACY OR ADEQUACY OF THE STATEMENTS CONTAINED HEREIN.

AS TO CONTESTED MATTERS, ADVERSARY PROCEEDINGS, AND OTHER ACTIONS OR THREATENED ACTIONS, THIS DISCLOSURE STATEMENT AND APPENDICES HERETO WILL NOT CONSTITUTE OR BE CONSTRUED AS AN ADMISSION OF ANY FACT OR LIABILITY, STIPULATION OR WAIVER, BUT RATHER AS A STATEMENT MADE IN SETTLEMENT NEGOTIATIONS. THIS DISCLOSURE STATEMENT WILL NOT BE ADMISSIBLE IN ANY NON-BANKRUPTCY PROCEEDING NOR WILL IT BE CONSTRUED TO BE CONCLUSIVE ADVICE ON THE TAX SECURITIES OR OTHER LEGAL EFFECTS OF THE REORGANIZATION AS TO HOLDERS OF CLAIMS AGAINST OR EQUITY INTEREST IN THE DEBTOR.

THE INFORMATION CONTAINED HEREIN HAS BEEN PROVIDED BY THE DEBTOR, THE DEBTOR'S RECORDS AND UTILIZING THE DOCUMENTS ON FILE WITH THE UNITED STATES BANKRUPTCY COURT, AND HAS NOT BEEN INDEPENDENTLY AUDITED EXCEPT AS SPECIFICALLY REFERENCED HEREIN. THE RECORDS KEPT BY THE DEBTOR RELY FOR ITS ACCURACY UPON BOOKKEEPING PERFORMED BOTH INTERNALLY AND BY OUTSIDE SERVICES. THIS DISCLOSURE STATEMENT CONTAINS ONLY A BRIEF SUMMARY OF THE PLAN AND IS QUALIFIED IN ITS ENTIRETY BY THE TERMS AND PROVISIONS OF THE PLAN.

THE PROJECTIONS PROVIDED IN THIS DISCLOSURE STATEMENT HAVE BEEN PREPARED BY THE DEBTOR. THESE PROJECTIONS, WHILE PRESENTED WITH NUMERICAL SPECIFICITY, ARE NECESSARILY BASED ON A VARIETY OF ESTIMATES AND ASSUMPTIONS WHICH, THOUGH CONSIDERED REASONABLE BY THE DEBTOR AT THE TIME THEY WERE MADE, MAY NOT BE ACHIEVED AND ARE INHERENTLY SUBJECT TO SIGNIFICANT FINANCIAL UNCERTAINTIES AND CONTINGENCIES, MANY OF WHICH ARE BEYOND THE DEBTOR'S CONTROL. THE DEBTOR CAUTIONS THAT NO REPRESENTATION CAN BE MADE AS TO THE ACCURACY OF THESE PROJECTIONS OR TO THE DEBTOR'S ABILITY TO ACHIEVE THE PROJECTED RESULTS. SOME ASSUMPTIONS INEVITABLY WILL NOT MATERIALIZE. FURTHER, EVENTS AND CIRCUMSTANCES OCCURRING SUBSEQUENT TO THE DATE ON WHICH THESE PROJECTIONS WERE PREPARED MAY BE DIFFERENT FROM THOSE ASSUMED OR, ALTERNATIVELY, MAY HAVE BEEN UNANTICIPATED, AND THUS, THE OCCURRENCE OF THESE EVENTS MAY AFFECT FINANCIAL RESULTS IN A MATERIALLY ADVERSE OR MATERIALLY BENEFICIAL MANNER. THE PROJECTIONS, THEREFORE, MAY NOT BE RELIED UPON AS A GUARANTY OR OTHER ASSURANCE OF THE ACTUAL RESULTS THAT WILL OCCUR.

SEE THE SECTION ENTITLED RISK FACTORS OF THIS DISCLOSURE STATEMENT FOR A DISCUSSION OF CERTAIN RISK FACTORS WHICH SHOULD BE CONSIDERED IN CONNECTION WITH A DECISION BY A HOLDER OF AN IMPAIRED CLAIM OR IMPAIRED EQUITY INTEREST TO ACCEPT THE PLAN OF REORGANIZATION.

THE DEBTOR MAKES NO REPRESENTATIONS WITH RESPECT TO THE EFFECTS OF TAXATION (STATE OR FEDERAL) ON THE CREDITORS WITH RESPECT TO THE TREATMENT OF THEIR CLAIMS UNDER THE PLAN, AND NO SUCH REPRESENTATIONS ARE AUTHORIZED BY THE DEBTOR. CREDITORS ARE ENCOURAGED TO SEEK THE ADVICE OF THEIR OWN PROFESSIONAL LEGAL OR FINANCIAL ADVISERS IF THEY HAVE ANY SUCH QUESTIONS.

CONFIRMATION OF THE PLAN, THE ORDER OF CONFIRMATION OR SECTION 1141(d) OF THE BANKRUPTCY CODE WILL, TO THE EXTENT PERMITTED BY THE BANKRUPTCY CODE, DISCHARGE THE DEBTOR FROM ALL PRE-PETITION DEBTS OF THE DEBTOR, EXCEPT AS PROVIDED FOR SPECIFICALLY IN THE PLAN. CONFIRMATION WILL MAKE THE PLAN BINDING UPON THE DEBTOR, ALL CREDITORS AND OTHER PARTIES-IN-INTEREST, REGARDLESS OF WHETHER OR NOT THEY HAVE ACCEPTED THE PLAN.

### III. DEFINITIONS

The Definitions utilized in the Debtor's Plan are set forth in the Plan.

### IV. FINANCIAL PICTURE OF THE DEBTOR

4.01.    **Financial History and Background of Debtor.**    DHC Realty, L.P. (now DHC Realty, LLC) was established on July 18, 2003. The main objective of DHC Realty was to own and manage real estate investments for David and Hilel Chowaiki. It was initially created as an L.P., but later changed to an LLC on December 31, 2008.

DHC Realty acquired its first land in 2003 (7942 Gateway East) and built the first Fuddrucker's restaurant in El Paso for a related company, El Paso DHC Enterprises (a related company through direct shareholder ownership). The restaurant opened on October 12, 2004 and performed above expectations. The real estate and restaurant was originally financed by First Savings Bank.

DHC acquired its second parcel of land in 2005 (5030 North Desert), and built the second Fuddrucker's restaurant in El Paso for a related company, El Paso DHC Enterprises West (a related company through direct shareholder ownership). The restaurant opened on May 3, 2006 and it performed above expectations. The real estate and restaurant was originally financed by First Savings Bank.

-10-

DHC Realty acquired its third parcel of land on October 23, 2006 (1887 North Zaragoza), and built the third Fuddrucker's restaurant in El Paso for a related company, El Paso DHC Enterprises Far East (a related company through direct shareholder ownership). The restaurant opened on October 29, 2007. This real estate and restaurant were originally financed by First Savings Bank.

During the first half of 2008, David and Hilel Chowaiki were approached by GECU to refinance all of their loans at First Savings Bank with GECU for a lower rate. GECU advised the Chowaikis "that they were here for us" and "they were a not for profit organization dedicated to people helping people". DHC Realty and the Chowaikis were sold and convinced that they had found a good partner for their lending needs. Prior to changing its lending relationship from First Savings Bank to GECU, DHC Realty had an approval to close with the Small Business Administration, but declined that alternative as GECU advised that DHC Realty would receive better terms through GECU.

In opening the three DHC Realty locations, Basic Sports Apparel, Inc. (a family owned business), Hilel Chowaiki, David Chowaiki, Abraham Chowaiki, and Nadia Nahmed Chowaiki loaned DHC Realty a substantial amount of monies to support the purchase of land, enable construction, and provide start-up costs for each location.

Since 2003, DHC Realty has made payments on the three locations and built a substantial amount of equity into the land and buildings for each Fuddrucker's operation.

Basic Sports Apparel, Inc. is a Texas corporation founded in December 1992 by Hilel and David Chowaiki. It is a private label apparel manufacturer whose clients have been some of the most important brands/retailers in the country. Its primary headquarters are located in El Paso, Texas, with its manufacturing facilities in Ciudad Juarez, Mexico. The manufacturing entity is owned through direct shareholder ownership. Basic Sports Apparel, Inc., with its foreign manufacturing arm employs more than 300 people. On August 7, 2008, due to a substantial growth forecast based on projections from current customers, Basic Sports Apparel, Inc. obtained a $1.3 million loan from GECU secured by the equity built up with the DHC Realty locations. Shortly thereafter, in October/November of 2008, the national economic downturn hit, impacting the three (3) Fuddrucker's restaurant sales. In an effort to maintain sales, DHC Realty put a strong emphasis on its catering department. The catering department has grown substantially over the last several years.

In June 2009, CIT, Basic Sports Apparel's primary lender, had financial difficulties and eventually went bankrupt. This forced Basic Sports Apparel to raise $1.6 million to pay off their line of credit.

In late 2009, Basic Sports Apparel received sales forecasts from their customers that there was again going to be in a tremendous sales upswing for 2010. Basic Sports Apparel needed financing in order to operate and grow. Basic Sports Apparel entered into financing arrangements with extremely high cost lenders. Basic Sports Apparel also had to help DHC Realty meet its

-11-

obligations, due to the economic slowdown and reduction in sales at the restaurant operations. Basic Sports Apparel located alternative financing in March of 2011 and closed a deal with an asset based lender. However, this lead to unforseen problems with GECU.

Attached Exhibit "1" to the Disclosure Statement is a Summary of Operations for January through October, 2011 for all three Fuddrucker's locations. The catering operations for the Debtor are contained in the operations reported for the Far East Fuddrucker's. These financial numbers are typical of the three (3) Fuddrucker's operations for 2009 and 2010 as well as 2011. Financial operations of DHC Realty and the three Fuddrucker's restaurants during this timeframe was possible only because of capital contributions by Basic Sports Apparel, the Chowaikis individually, other family members, and related entities. Continued operation of the three Fuddrucker's restaurants is not viable.

Prior to filing for Chapter 11 bankruptcy relief, GECU made demand upon DHC Realty to pay off its debt, enter into an unfavorable loan modification agreement, or face foreclosure. Instead, DHC Realty filed for Chapter 11 relief on May 23, 2011.

4.02 **Future Income and Expenses Under the Plan.** By consolidating the catering into one location, DHC Realty and the Chowaikis believe that future operations can be highly profitable. Included as Exhibit "2" to this Disclosure Statement are Projections for Operations of El Paso DHC Enterprises West, LLC, which will effectively be the only remaining Fuddrucker's operation post-confirmation. Included as Exhibit "3" to this Disclosure Statement is a Five Year Projection for Operations of the Reorganized Debtor. As reflected in the Projections for Operations, the Debtor believes that available cash flow in year 2012 will be $284,825.83. With a three percent (3%) growth in expenses each year and a five percent growth in revenue for each year, the net available for payment of taxes and creditors should increase each year through 2016.

4.03 **Accounting Information.** All financial information herein was prepared by the Debtor.

4.04 **Collectability of Accounts Receivable.** After offsetting amounts due/from affiliates, the account receivable due from Fuddrucker's West for $297,497.49 is uncollectible; and, the account receivable due from Fuddrucker's Far East for $363,763.34 is uncollectible.

4.05 **Actual or Projected Recognizable Value from Recovery of Preferences or Voidable Transfer.** The Debtor has no causes of action against any entity for recovery of preferences or voidable transfers.

4.06 **Debtors' Litigation Bankruptcy and Causes of Action.** On October 3, 2011, DHC Realty, LLC, Spira Sportswear, LLC, and Basic Sports Apparel, Inc. filed their Original Complaint against GECU, Arturo Moreno (a Senior Commercial Loan Officer at GECU), Armando C. Moreno, and Grupo Arte Capital Corp. in Case Number 3:11-CV-00410 in the United States District Court for the Western District of Texas, El Paso Division seeking damages for legal claims

asserted against the Defendants as follows: (1) usury against Armando Moreno and Grupo Arte; (2) violation of the Racketeer Influenced and Corrupt Organizations act ("RICO") and conspiracy to do same (against all Defendants; (3) violation of Texas Administrative Code and Code of Federal Regulations (against GECU); (4) breach of fiduciary duty (against GECU); (4) Respondiate Superior (against GECU); and (5) conspiracy (against all Defendants).

## V. ANALYSIS AND VALUATION

5.01 **Real Property**. The Debtors own the real estate included on Schedule A of their Amended Bankruptcy Schedules. Schedule A, Schedule B, Schedule D, Schedule F, Schedule G, and Schedule H of the Debtors' Bankruptcy Schedules are included herewith collectively as Exhibit "4".

The real estate owned by the Debtor has a value of $8,310,000.00.

5.02 **Personal Property**. The personal property of the Debtor has a value of $1,137,644.88, not including any value for the U.S. District Court lawsuit. The itemized Schedule B from the Debtors' Amended Schedules is attached as part of Exhibit "4".

5.03 **Liquidation Value of Assets**. A complete Liquidation Analysis has been prepared and is attached as Exhibit "5" to the Disclosure Statement.

For further information concerning the nature, and extent of the Debtor's assets, liabilities, see the Amended Schedules filed in the case, Exhibit "4" attached hereto.

To better evaluate the liquidation analysis provided by the Debtor, the following Exhibit is attached to the Debtors' Amended Disclosure Statement:

Exhibit 5: DHC Realty, LLC's 2010 Form 1065 U.S. Return of Partnership Income;

5.04 **Summary of Significant Orders Entered During the Case**. Below is a list of significant orders which have been entered through including the date of this Disclosure Statement:

a. On May 24, 2011, the Court entered its Order Approving Employment of James & Haugland, P.C. as attorneys for the Debtor;

## VI. PROVISIONS FOR PAYMENT OF ADMINISTRATIVE FEE EXPENSE REQUESTS AND PRIORITY TAX CLAIMS

6.01 **Provision for Payment of Administrative Fee Expense Requests**. Administrative Expenses are financial charges against the Debtor constituting a cost or expense of administration of the Chapter 11 case allowed under §503(b) of the Bankruptcy Code, including any actual and

necessary costs and expenses of preserving the estate of the Debtor, any actual and necessary costs and expenses of operating the business of the Debtor, any indebtedness or obligations incurred or assumed by the Debtor-in-Possession in connection with the conduct of her business or for the acquisition or lease of property or the rendition of services, any allowance of compensation or reimbursement of expenses to the extent allowed by final order under §330 of the Bankruptcy Code arising before the Effective Date, and fees or charges assessed against the Estate of the Debtor under §1930, Chapter 123, Title 28, United States Code.

Request for compensation must be approved by the Bankruptcy Court after a hearing on notice at which the Debtor and other parties in interest may participate and, if appropriate, object to the allowance of any compensation or reimbursement of expenses. Within thirty (30) days after the Effective Date, the Debtor's counsel shall file its Application for Allowance of Compensation of Fees and Costs of Professionals. The Debtor's counsel shall be responsible for calendaring and providing notice of a hearing.

The estimated attorneys' fees for James & Haugland in representing the Debtor in this Chapter 11 case, including meetings with Debtor's representative; negotiations with creditors of the Debtor; meetings with the Debtor; preparation of the Debtor's Schedules, Statement of Financial Affairs, motions necessary to move this Chapter 11 case forward, preparation of the Plan of Reorganization and Disclosure Statement and preparation for and attendance of hearings on all contested matters, and confirmation of the Plan of Reorganization is the sum of $40,000.00. The Debtor has incurred approximately $30,000.00 in attorneys' fees as of the date of the submission of the Disclosure Statement. The fees owed to James & Haugland, P.C. are secured by approximately $31,029.00 which is held in the trust account of James & Haugland, P.C.

Pursuant to the Plan, Administrative Expenses will be paid in full, in cash, on the Effective Date. Aside from the professional fees as set forth herein, the Debtor is not aware of any other administrative expense claims.

6.02    **Provision for Payment of Priority Tax Claims.** Priority tax claims are those tax Claims entitled to priority pursuant to Section 507(a)(8) of the Bankruptcy Code. The Plan provides for the payment of Priority Tax Claims at Article 4.02 and 4.09.

Any Claim or demand for any accrued post-petition interest or penalty will be discharged upon confirmation of the Plan in accordance with Section 1141(d)(1) of the Bankruptcy Code, and the holder of a Priority Tax Claim will be precluded from assessing or attempting to collect taxes accrued interest or penalty from the Reorganized Debtor.

## VII. CONCEPT AND IMPLEMENTATION OF PLAN

7.01    **General Concept of Plan.** $5,850,000.00 of property including two Fuddrucker's franchises are being transferred to GECU to satisfy $5,837,745.79 of debt (plus interest and late fees to the extent accrued through the Effective Date). To the extent that the collateral is valued by the

-14-

Court in an amount less than the Allowed Secured Claim of GECU, the Reorganized Debtor shall pay GECU in cash the additional amount of its secured claim allowed by the Court. Said transfer of collateral and payment of cash shall be in complete satisfaction of GECU's claim.

The Claim of the City of El Paso Tax Assessor/Collector shall be paid in cash on the Effective Date, to the extent that real property taxes and personal property taxes have accrued on the Fuddrucker's locations at 1887 North Zaragoza, El Paso, Texas 79936 and at 7942 Gateway East Boulevard, El Paso, Texas 79915. The accrued real property taxes and personal property taxes outstanding and assessed against the Fuddrucker's location at 5030 North Desert Boulevard, El Paso, Texas 79912, shall be financed by the City Tax Assessor/Collector at the statutory rate and paid in forty-eight level monthly installments beginning on the Effective Date.

The Class 3 Creditors shall have their claims converted to equity, unless a party successfully outbids them for the equity in the Reorganized Debtor. In the event the Class 3 Creditors are not the successful bidder for the equity in the Reorganized Debtor, said Class 3 Creditors shall be paid prorata for the full amount bid by any party who successfully outbids the Class 3 Creditors for the equity in the Reorganized Debtor. Alternatively, the Class 3 Creditors shall be the equity owners of the Reorganized Debtor, with said ownership to be prorata based on the outstanding portion of the remaining Class 3 debt after offsetting of claims between the Debtor and any insiders who owe the Debtor money.

7.02    **Bar Date for Claims. THE COURT ESTABLISHED OCTOBER 21, 2011, AS THE BAR DATE TO FILE CLAIMS. ALL CLAIMS WHICH HAVE BEEN SCHEDULED AS EITHER DISPUTED, CONTINGENT, OR UNLIQUIDATED BY THE DEBTOR AND NOT PREVIOUSLY ALLOWED BY THE COURT OR FILED PRIOR TO OCTOBER 21, 2011, AND NOT PREVIOUSLY BARRED BY PRIOR ORDER OF THE COURT, SHALL BE BARRED.**

7.03    **Continuing Jurisdiction of the Bankruptcy Court.** The Bankruptcy Court shall retain jurisdiction of this bankruptcy case after the Confirmation Date for purposes of the following:

a.    To classify, allow or disallow claims and to hear and determine any controversies pertaining thereto.

b.    To hear and determine any and all matters arising out of or related to the property of the estate, the Plan, and this case;

c.    To enter and implement such orders as may be appropriate in the event the Order Confirming Plan is, for any reason, stayed, reversed, revoked, or vacated;

d.    To liquidate or estimate damages or determine the manner and time for such liquidation or estimation in connection with any contingent or unliquidated claim.

e.     To adjudicate all claims or any lien on any property of Debtor or any proceeds thereof including but not limited to Section 365 of the Bankruptcy Code.

f.     To adjudicate all claims or controversies arising during the pendency of this Chapter 11 case.

g.     To recover all assets and properties of the Debtor wherever located, including recoveries in all claims and causes of action brought by the Debtor, both before and after the Confirmation Date, including but not limited to Sections 542, 544, 545, 547, and 548 of the Bankruptcy Code.

h.     To hear and determine matters covering state, local and federal taxes and regulations pursuant to Sections 346, 505, 525 and 1146 of the Bankruptcy Code.

i.     To allow professional fees and reimbursement of the expenses of professionals employed during these proceedings.

j.     To approve the terms and conditions of the sale of any property of Debtor's estate pursuant to Section 363 of the Bankruptcy Code, and the final distribution of the proceeds from such sales.

k.     To determine all questions and disputes regarding title to and liens on the assets of the estate and determination of all causes of action, controversies, disputes, or conflicts whether or not subject to an action pending as of the date of Confirmation of the Plan, between the Debtor and any other party.

l.     To modify the Plan after Confirmation pursuant to the Federal Rules of Bankruptcy Procedure and the Bankruptcy Code.

m.     To enforce and interpret the terms and conditions of the Plan.

n.     To enter any order, including injunctions, necessary to enforce the title, rights and powers of the Debtor and to impose such limitations, restrictions, terms and conditions of such rights on parties-in-interest, title and powers as the Bankruptcy Court may deem necessary to ensure successful completion between the Effective Date and entry of a final decree or completion of payments , whichever is later.

o.     To enter a final decree closing this Chapter 11 case.

    7.04    **Confirmability, Modification and Severability of the Plan.** The provisions of the Plan, once confirmed, are binding upon the Debtor and all Creditors. As a general rule, the confirmation of the plan of reorganization constitutes a final judgment. Confirmation of the plan of reorganization has the effect of a judgment by the district court and *res judicata* principles bar re-

litigation of any issues raised or that could have been raised during the Chapter 11 case. The Confirmation of the Plan vests all property of the estate in the Reorganized Debtor except as otherwise provided in the Plan. The Debtor's property is free and clear of all Claims and interests except as otherwise provided in the Plan. The Debtor is discharged from any debt for contractual obligations that arose before Confirmation except as provided for in the Plan, Order Confirming Plan or the Bankruptcy Code, to the extent provided by Section 1141 of the Bankruptcy Code.

However, subject to the provisions of the Plan, the Debtor reserves the right, in accordance with the Bankruptcy Code and the Bankruptcy Rules, to amend or modify the Plan at any time prior to the entry of the Confirmation Order. Additionally, the Debtor reserves the right to alter, amend, modify, revoke or withdraw the Plan as it applies to the Debtor.

After entry of the Confirmation Order, the Debtor may, upon order of the Court, amend or modify the Plan in accordance with Section 1127(b) of the Bankruptcy Code and the Plan, or remedy any defect or omission or reconcile any inconsistency in the Plan in such manner as may be necessary to carry out the purpose and intent of the Plan. A holder of an Allowed Claim or Allowed Equity Interest that is deemed to have accepted the Plan shall be deemed to have accepted the Plan as modified if the proposed modification does not materially and adversely change the treatment of the Claim or Equity Interest of such holder.

If, prior to the applicable Confirmation Date, any term or provision of any of the Plan is determined by the Court to be invalid, void or unenforceable, the Court will have the power to alter or interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision will then be applicable as altered or interpreted. Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and affect and will in no way be affected, impaired or invalidated by such holding, alteration or interpretation. The Confirmation Order will constitute a judicial interpretation that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to her terms. Additionally if the Court determines that the Plan is not confirmable pursuant to Section 1129 of the Bankruptcy Code (and cannot be altered or interpreted in a way that makes it confirmable), such determination shall not limit or affect (a) the confirmability of the Plan or (b) the Debtor's inability to modify the Plan, to satisfy the confirmation requirements of Section 1129 of the Bankruptcy Code.

7.05 **Creditor Remedies Upon Default by Debtor**. After the Effective Date, if the Reorganized Debtor defaults under any obligation to Creditors in Classes 2-7, as modified by the Plan, such Creditor may, without further order of the Bankruptcy Court, pursue any of the remedies accorded to such Creditor under the Bankruptcy Code or state law or set forth in any applicable promissory note, security agreement or loan agreement. The occurrence of any of the following shall constitute an event of default under the Plan:

a. Failure on the part of the Reorganized Debtor to fully pay when due, any payment

-17-

required to be made under the terms of the Plan.

b.     Failure of the Reorganized Debtor to perform or observe any term or provision set forth in Articles IV through VIII of the Plan, which failure remains uncured for a period of twenty (20) days, after written notification to the Reorganized Debtor and her counsel of such default.

c.     The failure of the Reorganized Debtor to pay their debts as they become due as evidenced by the Reorganized Debtor's admission in writing of their inability to pay their debts or by the Reorganized Debtor making a general assignment for the benefit of Creditors.

7.06   **Retention of Property or Interest**. The Debtor will retain all properties and interests, except as provided elsewhere in the Plan, that are property of the estate on the date of Confirmation of the Plan. In the event of conversion to Chapter 7, all property of the Reorganized Debtor shall become property of the Estate.

7.07   **Final Decree**. Within six (6) months of the entry of a final, non-appealable Order Confirming the Debtor's Plan and if the Plan is substantially consummated prior to that time, the Debtor will file an Application for Final Decree to close this Chapter 11 case.

## VIII. SPECIFICATION AND TREATMENT OF CLASSES

8.01   **Class 1: Priority Claims for Professional Fees and Expenses**. Class 1 consists of allowed Administrative Claims entitled to priority pursuant to Sections 507(a)(1) and 503(b) of the Bankruptcy Code for payment of Professional Fees and Expenses. The Court, under Order dated May 24, 2011, authorized the employment of James & Haugland P.C., to represent the Debtors-in-Possession.

Accrued estimated fees and expenses for James & Haugland, P.C. as of December 13, 2011, are detailed below. The following accrued expenses and fees for these professionals have not been approved and have not yet been submitted to the Court for approval in a fee application. Further, this disclosure does not limit these professionals from seeking approval of additional fees and expenses from the Court:

| FIRM | FEES | EXPENSES | TOTAL |
|---|---|---|---|
| **James & Haugland, P.C.** | $28,860.00 | $1,499.20 | $30,359.20 |

James & Haugland, P.C. has $31,029.00 in trust to secure its fees and expenses.

The Creditors in Class 1 will be paid, subject to Court approval, on the Effective Date of the Plan, or when such fees and expenses are approved and allowed by the Bankruptcy Court.

**THE CLASS 1 CREDITORS ARE UNIMPAIRED UNDER THE PLAN.**

-18-

8.02    **Class 2: Priority Claims of Taxing Authorities for Ad Valorem Taxes.** Class 2 claims consist of the secured claim of the City of El Paso.

Class 2 Claims include the secured claim of City of El Paso. The City of El Paso has filed a secured amended claim in the amount of $404,097.57 for ad valorem taxes on the Debtor's property situated in the City of El Paso, El Paso County, Texas, covering tax years 2009 through 2011. The claim amount is for real and personal property taxes. By February 1, 2012, the Debtor shall pay in full the year 2011 and prior real estate and personal property tax debt related to the 7942 Gateway and 1887 North Zaragoza property. The year 2011 and prior real estate and personal property tax debt related to the 5030/5050 North Desert Blvd property shall be paid in full in forty-eight (48) equal monthly installments, with the first payment being made on the thirtieth (30th) day following the Plan's Effective Date, with forty-seven (47) payments of equal amount to be made on each consecutive month thereafter until the tax debt is paid in full. Post-petition interest at the rate of twelve percent (12%) per annum shall accrue beginning from the Petition Date until the confirmation date. Thereafter, plan interest at the rate of twelve percent (12%) per annum shall accrue on the entire balance until the tax debt is paid in full. The Reorganized Debtor may pre-pay the pre-petition tax debt at any time. The Debtor shall have thirty (30) days from the Effective Date to object to City of El Paso's claim; otherwise, such claim is deemed as an allowed secured claim in the amount of $404,097.57.

The City of El Paso shall retain its lien securing its pre-petition and post-petition tax debt until such time as the tax debt is paid in full.

In the event the Debtor sells, conveys or transfers any property which is the subject of the City of El Paso tax claim, the Debtor shall remit such sales proceeds first to the City of El Paso to be applied to the City of El Paso tax debt.

The Debtor will pay all post-petition and post-confirmation tax liabilities owing to the City of El Paso in the ordinary course of business as such tax debt comes due without need of filing an administrative claim and request for payment.

Should the Reorganized Debtor fail to make any payments as required in this Plan, the City of El Paso shall provide written notice of that default and send written notice by certified mail to Debtor's counsel advising of that default, and providing the Reorganized Debtor with a period of ten (10) days to cure the default. In the event that the default is not cured within ten (10) days, the City of El Paso may, without further order of this Court, pursue all of its rights and remedies available to it under the Texas Property Tax Code to collect the full amount of all taxes, penalties and interest owed. Additionally, the failure to timely pay post-petition and/or post-confirmation taxes while the Reorganized Debtor is still paying any pre-petition debt, shall be considered an event of default. The City of El Paso shall provide Debtor's counsel with written notice of that default and a ten (10) day opportunity to cure said default. In the event that the Reorganized Debtor fails to timely cure the post-petition and/or post-confirmation default, the City of El Paso may proceed without further order of this court to collect the taxes, penalties and interest owed to that jurisdiction. The Reorganized

-19-

Debtor shall be entitled to no more than one (1) Notice of Default. In the event of a second (2nd) default, the City of El Paso may pursue all rights and remedies available to it under the Texas Property Tax Code in state district court without order of this court.

**THE CLASS 2 CREDITOR IS IMPAIRED UNDER THE PLAN.**

8.03 **Class 3: General Unsecured Creditors.** There are ten (10) Class 3 Creditors who hold a total of $1,964,208.55 in claims. Creditors holding Class 3 Claims will receive the following:

A. All of the Class 3 Creditors are insiders as that term is defined in the Plan. The Plan definition is intended to mirror the definition of insiders contained at 11 U.S.C. § 101(31). To the extent that any Class 3 Creditors owe money to the Debtor, their Class 3 claims will be offset against amounts due and owing to the Debtor, before any distribution is made on the Class 3 claims of those insider Creditors. If, after offsetting claims, the Class 3 Creditor owes money to the Debtor, such Class 3 Creditor shall not participate in any distribution under the Plan.

B. On the Effective Date, the ownership interest of Chowaiki Holdings, LLC in the Debtor shall be extinguished. The new owners of DHC Realty, LLC will be the Class 3 Creditors, whose ownership will be based pro-rata on the amount of the allowed Class 3 Creditors' claim.

C. The equity in the Debtor is owned by Chowaiki Holdings, LLC. Pursuant to the Plan, the equity ownership interest of Chowaiki Holdings, LLC will be extinguished on the Effective Date. New equity will be issued to the Class 3 Creditors prorata based upon each creditor's prorata portion of Class 3 debt compared to the total Class 3 debt. After offsetting the amounts owed by and between the Debtor and El Paso DHC Enterprises East, El Paso DHC Enterprises Far East, and El Paso DHC Enterprises West, there will remain due and outstanding the total amount of Class 3 Claims of $1,665,882.08. Effectively, the Class 3 Creditors will be paying this amount to acquire the equity in the Reorganized Debtor. To the extent that any party wishes to competitively bid against this amount that the Class 3 Creditors will be contributing in order to acquire the equity in the Reorganized Debtor, said party can provide notice of intent to competitively bid to the attorney for the Debtor two weeks prior to the Confirmation Hearing date, and the Court shall conduct an auction for the equity at the Confirmation Hearing. The Class 3 Creditors may collectively or individually bid by adding an amount to the total amount of the Class 3 debt, in order to bid collectively against any party who wishes to competitively bid for the equity in the Reorganized Debtor.

**THE CLASS 3 CREDITORS ARE IMPAIRED UNDER THE PLAN**

8.04 **Class 4: KSimon Construction of Texas, Inc.** KSimon Construction of Texas, Inc. (KSimon) is the Class 4 Creditor. KSimon contends that it perfected a Mechanic's and Materialman's Lien against the property commonly known as 7942 Gateway East Boulevard, El Paso, Texas 79915-1816. KSimon has filed its Proof of Claim Number 10 in the amount of

$42,338.36 asserting a secured claim for $27,650.00 and an unsecured claim for $14,688.36. This claim was initiated pre-petition as a lawsuit in Cause Number 2010-3271, in the County Court at Law Number Three for El Paso County, Texas. DHC Realty has filed an Answer including Affirmative Defenses and Counterclaims. An Objection to this Claim has been or will be filed prior to the Confirmation Hearing.

Under the Plan, the amount of the secured claim asserted by the Class 4 Creditor will be deposited into the registry of the Bankruptcy Court or into a trust account or other secured arrangement agreed upon by counsel for the Class 4 Creditor and the Debtor. KSimon shall execute and deliver to the attorney for the Debtor a release of the Mechanic's Lien, within seven (7) days from the date that counsel receives notice of the deposit of the secured amount of the claim in the registry of the Court, into a trust account, or into another secured arrangement agreed upon by counsel for the Class 4 Creditor and the Debtor. If and when KSimon's claim is allowed, KSimon will be paid in full in cash for the total Allowed Claim it is awarded within fourteen (14) days from the date that a judgment, order, or arbitration award is rendered with regard to said claim.

### THE CLASS 4 CREDITOR IS IMPAIRED UNDER THE PLAN.

8.05    **Class 5: Internal Revenue Service ("IRS").** The IRS has filed a claim for $100.00 alleging a priority pursuant to 11 U.S.C. § 507(a)(8). The claim is unsecured. To the extent that the claim is not otherwise resolved by the Debtor's filing of a tax return for 2010, the claim will be satisfied by the payment of $100.00 on the Effective Date.

### THE CLASS 5 CREDITOR IS IMPAIRED UNDER THE PLAN.

8.06    **Class 6: Government Employees Credit Union ("GECU").** GECU is a secured creditor and party-in-interest in this proceeding.

A.    Specifically, GECU is the owner and holder of the following instruments:

a)    A Promissory Note ( "**Note 1**") dated June 25, 2008 in the original principal amount of $1,300,000.00, executed by DHC Realty, LP (the "**Maker**") payable to the order of GECU (the "**Payee**") secured by a Deed of Trust, Security Agreement and Financing Statement dated June 25, 2008;

b)    A Promissory Note ("**Note 2**") dated June 25, 2008 in the original principal amount of $1,648,037.00, executed by DHC Realty, LP (the "**Maker**") payable to the order of GECU (the "**Payee**") secured by a Deed of Trust, Security Agreement and Financing Statement dated June 25, 2008;

c)    A Promissory Note ("**Note 3**") dated June 25, 2008 in the original principal amount of $1,402,635.00, executed by DHC Realty, LP (the "**Maker**")

payable to the order of GECU (the "**Payee**") secured by a Deed of Trust, Security Agreement and Financing Statement dated June 25, 2008;

d) A Promissory Note ("**Note 4**") dated June 25, 2008 in the original principal amount of $170,572.00, executed by DHC Realty, LP (the "**Maker**") payable to the order of GECU (the "**Payee**") secured by a Commercial Security Agreement dated June 25, 2008, granting a security interest in all inventory, equipment and general intangibles located at 7942 Gateway East, 5030 N. Desert Blvd. and 1887 N. Zaragoza, El Paso, Texas;

e) A Promissory Note ("**Note 5**") dated June 25, 2008 in the original principal amount of $207,520.00, executed by DHC Realty, LP (the "**Maker**") payable to the order of GECU (the "**Payee**") secured by a Commercial Security Agreement dated June 25, 2008, granting a security interest in all inventory, equipment and general intangibles located at 7942 Gateway East, 5030 N. Desert Blvd. and 1887 N. Zaragoza, El Paso, Texas;

f) A Promissory Note ("**Note 6**") dated June 25, 2008 in the original principal amount of $138,402.00, executed by DHC Realty, LP (the "**Maker**") payable to the order of GECU (the "**Payee**") secured by a Commercial Security Agreement dated June 25, 2008, granting a security interest in all inventory, equipment and general intangibles located at 7942 Gateway East, 5030 N. Desert Blvd. and 1887 N. Zaragoza, El Paso, Texas;

all of which are collectively referred herein as the "**Loan Documents**".

B. The Loan Documents grant GECU a security interest in all of the Debtor's inventory, equipment and general intangibles as well as the real property and improvements described as:

1. A portion of Lot 25, Block 3, SAGELAND ADDITION REPLAT, an Addition to the City of El Paso, El Paso County, Texas, according to the plat thereof in Volume 26, Page 18, Plat Records of El Paso County, Texas, commonly known as 7942 Gateway East, El Paso, Texas 79915;

2. Parcel 1: A portion of Lot 1, Block 115, VISTA HILLS UNIT 38, an Addition to the City of El Paso, El Paso County, Texas, according to the plat thereof in Volume 68, Page 32, Plat Records of El Paso County, Texas (0.8394 acre parcel)

Parcel 2: A portion of Lot 1, Block 115, VISTA HILLS UNIT 38, an Addition to the City of El Paso, El Paso County, Texas, according to the plat thereof in Volume 68, Page 32, Plat Records of El Paso County, Texas

(0.0567 acre parcel), commonly known as 1887 N. Zaragoza, El Paso, Texas 79936;

3.  A portion of Lot 1, Block 1, SUNNY SANDS REPLAT "B", an Addition to the City of El Paso, El Paso County, Texas, according to the plat thereof in Volume 70, Page 7, Plat Records of El Paso County, Texas, commonly known as 5030 N. Desert Blvd., El Paso, Texas 79912;

All collectively referred to as the "**Property**".

C.  The balance of the Notes of the unpaid principal as of November 11, 2011 is as follows:

|        | **Principal Due** | **Total Due** |
|--------|-------------------|---------------|
| Note 1 | $1,194,473.96     | $1,241,617.99 |
| Note 2 | $1,519,641.43     | $1,574,064.92 |
| Note 3 | $1,293,347.57     | $1,339,667.45 |
| Note 4 | $   109,508.30    | $  115,041.13 |
| Note 5 | $  133,232.67     | $  139,689.63 |
| Note 6 | $     88,854.61   | $   93,160.87 |
| *TOTAL* |                  | $4,503,241.99 |

D.  The last payment received on the Notes was on July 29, 2011. Late charges and interest continue to accrue post-petition at 6.5% per annum. In addition, the Debtor has guaranteed a $1.3 million note by its affiliate, Basic Sports Apparel, Inc. As of December 7, 2011, the payoff of this note is $1,334,503.80. The total debt owed to GECU is $5,837,745.79.

E.  The Debtor leases the above-referenced Property to non-Debtor subsidiaries for the operation of Fuddrucker's® franchises.

F.  GECU shall have an Allowed Secured Claim for the amount set forth hereinabove for the Class 6 Creditor. GECU shall retain all of its liens on the collateral located at 7942 Gateway East, El Paso, Texas 79915 and on the property commonly known as 1887 North Zaragoza, El Paso, Texas 79936. This includes all of the real estate and personal property collateral located at these locations. The value of the

collateral located at 7942 Gateway East Boulevard is valued at $2.8 million, including $338,926.00 of furniture and equipment. The property located at 1887 Zaragoza Road is valued at $2, 650,000.00, including $278,168.00 of furniture and equipment. These valuations are based upon May 17, 2011 appraisals provided by George K. Karam of Property Analysis Service, the same appraiser who has provided appraisals for GECU for these properties since the inception of the loan relationship between GECU and the Debtor. There is additional property at 7942 Gateway East which will be conveyed to GECU under this Plan, including antiques/bric-a-brac, motorcycles, signage, and neon signs having a value of $180,000.00. There is additional property at 1887 North Zaragoza which will be conveyed to GECU under this Plan, including antiques/bric-a-brac, motorcycles, signage, arcade games, and neon signs having a value of $220,000.00. The total value of the property at these two locations is $5,850,000.00 based on these appraisals and the Debtor's valuation of the additional property to be conveyed to GECU.

G.   On the Effective Date, or soon thereafter as is practicable, the Disbursing Agent shall assign or otherwise transfer to GECU all of the property which is collateral for its allowed secured claim located at 7942 Gateway East Boulevard, El Paso, Texas 79915 and at 1887 North Zaragoza, El Paso, Texas 79936. Alternatively, GECU may foreclose on the real property if it prefers receiving title in this fashion. Further, Fuddrucker's East and Fuddrucker's Far East shall transfer the franchises for the Fuddrucker's restaurants operated at those locations to GECU or its designated assignee. A valuation hearing will be conducted at the Confirmation Hearing to assure that the real property and personal property and franchises conveyed to GECU are equal to or exceed the Allowed Secured Claim of GECU. To the extent that the transfer of property will not accomplish full satisfaction of the Allowed Secured Claim, the guarantees of such obligations by David Chowaiki and/or Helil Chowaiki shall remain in effect, except to the extent that any remaining claim of GECU is paid in cash on the Effective Date. It is the intent of the Debtor to pay any unsatisfied Allowed Secured Claim of GECU in cash on the Effective Date, to the extent that the Court values the property to be transferred as described above as less than the amount of the Allowed Secured Claim.

H.   GECU shall execute a release of its Deed of Trust and a Release of any UCC-1 Financing Statements that relate to the real property or personal property located at 5030 North Desert Boulevard, El Paso, Texas 79912, once the allowed secured claim is paid in full by the Reorganized Debtor, as set forth above. If GECU fails to execute the requested release of lien documents, the Reorganized Debtor may execute same on behalf of GECU and file same with the appropriate legal authorities.

**THE CLASS 6 CREDITOR IS IMPAIRED UNDER THE PLAN.**

8.07 **Class 7: Current Equity Interest Holders.** The equity in the Debtor is owned by Chowaiki Holdings, LLC. Pursuant to the Plan, the equity ownership interest of Chowaiki Holdings, LLC will be extinguished on the Effective Date. New equity will be issued to the Class 3 Creditors prorata based upon each creditor's prorata portion of Class 3 debt compared to the total Class 3 debt. After offsetting the amounts owed by and between the Debtor and El Paso DHC Enterprises East, El Paso DHC Enterprises Far East, and El Paso DHC Enterprises West, there will remain due and outstanding the total amount of Class 3 Claims of $1,665,882.08. Effectively, the Class 3 Creditors will be paying this amount to acquire the equity in the Reorganized Debtor. To the extent that any party wishes to competitively bid against this amount that the Class 3 Creditors will be contributing in order to acquire the equity in the Reorganized Debtor, said party can provide notice of intent to competitively bid to the attorney for the Debtor two weeks prior to the Confirmation Hearing date, and the Court shall conduct an auction for the equity at the Confirmation Hearing. The Class 3 Creditors may collectively or individually bid by adding an amount to the total amount of the Class 3 debt, in order to bid collectively against any party who wishes to competitively bid for the equity in the Reorganized Debtor.

## THE CLASS 7 EQUITY HOLDERS ARE IMPAIRED UNDER THE PLAN.

## IX. ADDITIONAL PROVISIONS APPLICABLE TO ALL CLAIMS

9.01. **Objection Deadline**. As soon as practicable, but in no event later than thirty (30) days after the Effective Date, unless extended by order of the Bankruptcy Court, objections to Claims shall be filed with the Bankruptcy Court and served upon the holders of each of the Claims to which objections are made.

9.02. **Power to Object to, Litigate, and Settle Disputed Claims.** After the Effective Date, the Reorganized Debtor will have the authority to (i) file Objections to Claims, (ii) to file Proofs of Claim on behalf of Creditors who did not file Claims within the period set for doing so, pursuant to Bankruptcy Rule 3004, and (iii) litigate to final judgment, settle, or withdraw Objections to Disputed Claims.

9.03. **Date of Distributions**. Any distributions to be made under the Plan shall be made on the Effective Date, or as provided for in the Plan, or as the Bankruptcy Court may otherwise order.

9.04. **No Distribution Pending Allowance**. Notwithstanding any other provisions of the Plan, no payment or distribution shall be made with respect to any Claim to the extent it is a Contested Claim unless and until such Contested Claim becomes an Allowed Claim.

9.05. **Distributions After Allowance**. Payments and distributions to each holder of a Disputed Claim, to the extent that such Claim ultimately becomes an Allowed Claim, shall be made in accordance with the provisions of the Plan governing the class of Claims to which the respective holder belongs. With respect to any Claim that is a Contested Claim on the Effective Date, as soon

as practicable after the date that the order or judgment of the Bankruptcy Court allowing such Contested Claim becomes a Final Order or a Disputed Claim otherwise becomes an Allowed Claim, the Reorganized Debtors shall distribute to the holders of such Claim any Cash payment, without interest, that would have been distributed to such holder if the Claim had been Allowed on the Effective Date.

9.06    **Reserves for Disputed Claims.**

(i)    *Amount of Reserves.* Except to the extent that the Bankruptcy Court shall determine that a lesser amount is adequate, the Reorganized Debtor shall deposit in segregated interest bearing (in the case of deposits of Cash) escrow accounts for each Class or category of Claims in which there are Disputed Claims (the "Disputed Claims Reserve Accounts") Cash equal to the Distributions that would have been made to the holders of Disputed Claims in such Class or category if such Claims were Allowed in the Adjusted Amount.

(ii)    *Held in Trust.* All earnings on funds deposited in the Disputed Claims Reserve Account, and all dividends or distributions on account of proceeds from liquidation of Assets held in the Disputed Claims Reserve Account, shall be held in trust in the Disputed Claims Reserve Account and shall be distributed only in the manner provided in this Plan; and

(iii)    *Release of Reserves from Disputed Claims Reserve Account.* At such time as all or any portion of a Disputed Claim becomes an Allowed Claim, the Distributions reserved for such Disputed Claim or portion (including any interest thereon or dividends received with respect thereto) shall be released from the appropriate Disputed Claims Reserve Account and paid for distributed by the Reorganized Debtor to the holder of such Allowed Claim, net of any taxes or other applicable charges required to be paid by the Reorganized Debtor in respect thereof. At such time as all or any portion of a Disputed Claim is determined not to be an Allowed Claim, the Distributions reserved for such Disputed Claim or portion (including any interest thereon or dividends received with respect thereto) shall be, in the case of Cash, released from the appropriate Disputed Claims Reserve Account.

d.    **Unclaimed Distributions:**

(i) *Safeguarding of Unclaimed Distributions.* For a period of six (6) months following the Effective Date, Distributions, including any interest as may have been earned thereon and dividends as may have been received with respect thereto, as have not been claimed shall be held by the Reorganized Debtor in the Disputed Claims Reserve Accounts, solely for the benefit of the holders of Allowed Claims and Allowed Administrative Claims that have failed to claim such Distributions and shall be released from the Disputed Claims Reserve Accounts and delivered to such holder, net of any taxes or other applicable charges required to be paid by the Reorganized Debtor in

-26-

respect thereof, upon presentation of proper proof of such holder of its entitlement thereto;

(ii) *Release of Unclaimed Distributions.* On the date on which all or any portion of any Distribution becomes an Unclaimed Distribution (including interest thereon and dividends with respect thereto), such Unclaimed Dividends shall be released by the Reorganized Debtor from the appropriate Disputed Claims Reserve Account.

b. **Form of Distributions**. Any cash payment to be made pursuant to the Plan may be made by a check or wire transfer or as otherwise required by an order of the Bankruptcy Court.

(i) **Disputed Payment**. In the event that any dispute arises as to the right of a holder of an Allowed Claim to receive any Distribution to be made under this Plan, the Reorganized Debtor may, in lieu of making such Distribution to such holder, make such Distribution into an escrow account or hold such Distribution until the disposition thereof shall be determined by the Bankruptcy Court or by written agreement among the interested parties to such dispute.

9.07. **Delivery of Distributions**. Subject to Bankruptcy Rule 9010, Distributions to holders of Allowed Claims shall be made at the address of each such holder as set forth on the Proofs of Claims or Proofs of Equity Interest filed such holders (or at the last known addresses of such a holder if no Proof of Claim or Proof of Equity Interest is filed or if the Reorganized Debtor has been notified in writing of a change of address), except as provided below. If any holder's Distribution is returned as undeliverable, no further distributions to such holder shall be made unless and until the Reorganized Debtor is notified of such holder's then current address, at which time all missed Distributions shall be made to such holder. Amounts in respect of undeliverable Distributions shall be returned to the Reorganized Debtor. All claims for undeliverable Distributions shall be made on or before the second anniversary of the Effective Date. After such date, all unclaimed property shall revert to the holder of Allowed Claims or any successor thereto, and the claim of any holder with respect to such property shall be discharged and forever barred.

9.08. **Procedures for Resolving Contested Claims**. The Reorganized Debtor may file with the Bankruptcy Court an objection to a Proof of Claim filed by any Claimant. Objections must be filed within sixty (60) days after the Effective Date. Any Objection must be in writing, must set out the name of the Creditor who filed the Claim, as well as any assignee, if any, and the dollar amount of the Claim. Each specific ground for objection or defense to the Claim shall be listed in a separate paragraph. Service of the Objection shall be made upon the attorney of record for the Claimant, or to the Creditor directly if not represented by an attorney, by serving a true and correct copy of the Objection and shall be

deemed complete upon mailing as set out in Bankruptcy Rule 9006(e). A certificate of service shall promptly be attached to each objection and shall comply with Local Bankruptcy Rules.

If any objection to a Claim is filed, the Creditor shall file a response to any such Objection within twenty (20) days from the mailing date set out in the certificate of service for the Objection. Responses may take one of two forms, namely, a consent to the Objection, or a non-consenting response. A non-consenting response shall state specific reasons for each defense, shall list the names and addresses of any and all witnesses to be called in support of the response, and shall include copies of all documents, including invoices, security documents, and the like relied upon by the non-consenting party to support allowance of the Claim. Copies of such responses shall be served upon the Debtors, and the attorneys for the Debtors. Failure to timely file a response shall result in a deemed consent to the objection, and upon the expiration of the twenty-day period, the Court may enter an Order without further notice of hearing. In the event of a timely non-consenting response is filed, the Court shall set a hearing on not less than thirty (30) days notice to the parties in accordance with Bankruptcy Rule 3007.

The Reorganized Debtor may, in its discretion, offset any such claim held against a person against any payment due such person under the Plan; *provided, however,* that any claims of the Reorganized Debtor arising before the Petition Date shall first be offset against Claims against the Reorganized Debtor arising before the applicable Petition Date.

All Creditors who have or assert Claims in any Class shall, upon Confirmation of this Plan, be deemed to have acknowledged that their respective Claims are fully satisfied by the distribution provided herein, each of which Claims, whether known or unknown, scheduled or unscheduled, filed or unfiled, asserted or assertable, is declared and shall be, for all purposes, upon the entry of the Order confirming this Plan, satisfied in full.

9.09. **Valuation of Secured Claims**. The Bankruptcy Court pursuant to a motion of the Reorganized Debtor filed within the later of thirty (30) days after the Effective Date or such later date as the Bankruptcy Court shall fix pursuant to a motion filed prior to the expiration of such 30-day period, shall determine the value of any Claim secured by a lien on property in which the Estate has an interest, unless the value is agreed upon by the parties, fixed in the Plan or previously determined by the Court. If no such motion to value is filed by the required date with respect to a Secured Claim, that Claim shall be deemed to be an Allowed Secured Claim in the amount set forth in the Creditor's Proof of Claim, or as otherwise agreed by the Reorganized Debtor and the Creditor.

9.10. **Treatment of Disallowed Claims**. Disallowed Claims shall receive no payment, and the Debtor and Reorganized Debtor shall be discharged in full except in the case of an IRS Claim governed by the Internal Revenue Code, and as otherwise set forth in Section 1141 of the Bankruptcy Code.

9.11. **Effective Date Payments and Post-Effective Date Financing and Plan Payments**. All cash necessary for the Debtors to make payments pursuant to the Plan will be obtained from the Debtors' employment, liquidation of assets, and income from investments.

9.12. **Preservation of Causes of Action**. On and after the Effective Date, and except as may otherwise be agreed to by the Reorganized Debtor in the Plan, the Reorganized Debtor will retain and have the exclusive right to enforce any and all present or future rights, claims or causes of action against any person (other than holders of Unsecured Claims against the Reorganized Debtor) and rights of the Reorganized Debtor that arose before or after the applicable Petition Date, and asserting any rights of counterclaim and set-off, as discussed further below, including, but not limited to, rights, claims, causes of action, avoiding powers, suits and proceedings arising under Sections 541, 542, 544, 545, 548, 549, 550 and 553 of the Bankruptcy Code. The Reorganized Debtor may pursue, abandon, settle or release any or all such rights of action, as it deems appropriate, without the need to obtain approval or any other or further relief from the Court. The Reorganized Debtor may, in its discretion, offset any such claim held against a person against any payment due such person under the Plan; *provided, however,* that any claims of the Reorganized Debtor arising before the applicable Petition Date shall first be offset against Claims against the Reorganized Debtor arising before the applicable Petition Date.

The Debtor is currently unaware or has insufficient knowledge of any material claims or causes of actions (or the underlying facts giving rise to such material claims or causes of action) against any person that would constitute a material asset of the estate other than such claims or causes of action disclosed on the Debtor's Schedules or in this Disclosure Statement (including claims, causes of action and counterclaims, in proceedings listed in the Debtor's Statement of Financial Affairs). All Creditors should be aware, however, that the Reorganized Debtor may have additional material claims or causes of action against persons of which (1) the Debtor is currently unaware of or has insufficient knowledge; (2) the Debtor is currently unaware of or has insufficient knowledge of the underlying facts giving rise to such material claims or causes of action; (3) the underlying facts giving rise to such materials claims or causes of action has not yet occurred. All creditors should further be aware that the Reorganized Debtor explicitly reserves its right to pursue all claims and causes of action, among others, pursuant to the Plan and as discussed above.

9.13. **Setoffs**. The Reorganized Debtor may, in accordance with the provisions of the Plan, Section 553 of the Bankruptcy Code and applicable non-bankruptcy law, set off against any Allowed Claim and the Distributions to be made pursuant to the Plan on account of such Allowed Claim (before any Distribution is made on account of such Allowed Claim), the Claims, rights and causes of action of any nature that the Reorganized Debtor may hold against the holder of such Allowed Claim; *provided, however,* that neither the failure to effect such a setoff nor the allowance of any Claim hereunder shall constitute a waiver or release by the Reorganized Debtor of any such Claims, rights, and causes of action that the

-29-

Reorganized Debtor may possess against such holder; and *provided, however,* that any Claims of the Reorganized Debtor arising before the applicable Petition Date shall only be set off against Claims against the Reorganized Debtor arising before the Petition Date.

## X. FEASIBILITY OF THE PLAN

To confirm the Plan, the Court must find that confirmation of the Plan is not likely to be followed by the liquidation or the need for further financial reorganization of the Reorganized Debtor, unless and to the extent liquidation is contemplated by the Plan. This requirement is imposed by Section 1129(a)(11) of the Bankruptcy Code and is referred to as the "feasibility" requirement. The Debtor believes that it will be able to timely perform all obligations described in the Plan, and therefore, that the Plan is feasible.

Accordingly, the Debtor believes that the Plan satisfies the feasibility requirement of Section 1129(a)(11) of the Bankruptcy Code. Many of the assumptions upon which the Projections are based are subject to uncertainties outside the control of the Debtor / Reorganized Debtor. Some assumptions may not materialize, and events and circumstances occurring after the Effective Date may be different from those assumed or may be unanticipated and may adversely affect the Debtor's financial results. Therefore, the actual results may vary from the expected results and the variations may be material and adverse. See the section entitled Risk Factor for a more detailed discussion of risk factors that may affect financial feasibility of the Plan.

## XI. MEANS FOR IMPLEMENTATION OF THE PLAN

11.01  **Source of Plan Funds.**  The Debtor has obtained financing for up to $1 million, which amount shall be secured by a second lien on the real estate located at 5030 North Desert Boulevard, El Paso, Texas 79912 and a first lien on any personal property located at that address which belongs to the Reorganized Debtor. These funds will be utilized to pay the costs of administering the Plan, to pay the allowed administrative claims associated with the Chapter 11 proceeding, to pay the $250,000.00, approximately, which will be due to the Class 2 Creditor on the Effective Date , to deposit the $27,650.00 into the registry of the court or other secured account to secure payment of the alleged secured claim of the Class 4 Creditor (to assure its immediate payment once it is an Allowed Secured Claim), to pay the $100.00 owed to the Class 5 Creditor (if any), and to pay any allowed secured claim of Government Employees Credit Union which is not satisfied by the transfer of collateral contemplated in the Class 6 treatment of its Allowed Secured Claim.

The Reorganized Debtor shall make monthly payments on the remaining claim of the City/County Tax Assessor-Collector for El Paso County and the Class 2 Creditor, in accordance with the Plan.

The Reorganized Debtor shall also be left with the operations of Fuddrucker's West and the Debtor's catering business, which the Debtor projects will generate profits in excess of $250,000.00 during the first year of post-confirmation operations.

11.02. **Vesting of Title.** The Confirmation Order shall vest title in the Reorganized Debtor to all of the Assets.

On the Effective Date, the Debtor, its properties, interests in property, and its operations shall be released from the custody and jurisdiction of the Bankruptcy Court, and the Estate of the Debtor shall vest in the Reorganized Debtor. From and after the Effective Date, the Reorganized Debtor may operate its business and may use, acquire and dispose of its property free of any restrictions of the Bankruptcy Code or the Bankruptcy Rules, subject to the terms and conditions of the Plan and the documents executed pursuant to the Plan.

11.03. **Retention of Professional Persons.** The Reorganized Debtor may consult with attorneys, accountants and agents, and the opinions of the same shall be full protection and justification to the Reorganized Debtor for any actions taken in accordance with said opinions. The Reorganized Debtor, without further order of the Court, is also authorized to retain attorneys, accountants, consultants, agents and other professionals to assist the Reorganized Debtor in the performance of its duties, and to defend the Reorganized Debtor against any claim brought by any party against the Reorganized Debtor in connection with the Plan. The Reorganized Debtor is authorized to compensate any such party out of the proceeds from monthly revenues in the amount of all reasonable fees and expenses incurred in connection with the performance of any such services without further order of the Court. The Reorganized Debtor is expressly authorized to engage any firm or professional to provide any such services, other than any firm or professional which is an "insider" of the Reorganized Debtor as said term is defined in the Bankruptcy Code.

## XII. EFFECT OF CONFIRMATION OF THE PLAN

12.01 **Binding Effect.** Except as otherwise provided in Section 1141(a) of the Bankruptcy Code, on and after the Effective Date, the provisions of the Plan shall bind any holder of a Claim against, or Interest in, the Debtor/Reorganized Debtor and such holder's respective successors and assigns, whether or not the Claim or Interest of such holder is impaired under the Plan and whether or not such holder has accepted the Plan.

12.02 **Discharge of Claims Against the Debtor.** Except as otherwise provided herein, pursuant to Section 1141(d)(2), (3) and (5) of the Bankruptcy Code, upon completion of all payments under the Plan and entry of an Order of Discharge by the Court, all Claims against the Debtor shall be discharged, cancelled and released. Upon completion of all payments under the Plan and entry of an Order of Discharge by the Court, all such persons shall be forever precluded and enjoined, pursuant to Section 524 of the Bankruptcy Code, from prosecuting or asserting any such discharged Claim against or cancelled Equity Interest in the Reorganized Debtor.

12.03 **Injunction.** Except as provided in the Plan or Confirmation Order, as of the Effective Date, all entities that have held, currently hold, or may hold a Claim or other debt or liability against the Debtor are enjoined (unless the Debtors default under their Plan) from taking any of the following actions on account of any such Claims, debts or liabilities: (1) commencing or continuing in any manner, any action or other proceeding against the Reorganized Debtor or the property transferred under the Plan to the Reorganized Debtor; (2) enforcing, attaching, collecting or recovering, in any manner, any judgment, award, decree or order against the Reorganized Debtor or the property transferred to the Reorganized Debtor under the Plan; (3) creating, perfecting or enforcing any lien or encumbrance against the Reorganized Debtor or the property transferred to the Reorganized Debtor under the Plan; (4) asserting against the Reorganized Debtor or the property transferred to the Reorganized Debtor under the Plan, a set-off, right or claim of subordination or recoupment of any kind against any debt, liability or obligation due from the Debtor; (5) commencing or continuing any action, in any manner, in any place that does not comply with or is inconsistent with the provisions of the Plan.

## XIII. PAYMENT OF UNITED STATES TRUSTEES FEES

All fees due to the United States Trustee pursuant to 28 U.S.C. § 1930(a)(6) will be paid in full on the Effective Date and prior to the payment of Administrative Expenses held by Court appointed attorneys and accountants. Any such fees accrued after the Effective Date will constitute an Allowed Administrative Expense Claim and be treated accordingly. The Reorganized Debtor shall be responsible for timely payment of quarterly fees of the United States Trustee incurred pursuant to 28 U.S.C. §1930(a)(6) until a Final Decree is entered in the Case. The Reorganized Debtor shall file with the Bankruptcy Court and serve on the United States Trustee a quarterly financial report for each quarter (or portions thereof) that the Debtor's case remains open on a format prescribed by the Office of the United States Trustee.

## XIV. EXECUTORY CONTRACTS AND UNEXPIRED LEASES

14.01. **Rejection of Executory Contracts and Unexpired Leases**. On the Effective Date, all executory contracts and unexpired leases to which the Debtor is a party shall be deemed rejected, except for any executory contract or unexpired lease of the Debtor that has been previously assumed or rejected pursuant to a Final Order of the Court; or is the subject of a separate motion to assume or reject filed under Section 365 of the Bankruptcy Code by the Debtor prior to the hearing to consider the confirmation of the Plan and related matters (which the hearing to consider the confirmation of the Plan and related matters. The Debtor expressly reserves the right to add or remove executory contracts and unexpired leases to or from the Debtor's Schedule of Assumed Contracts and Leases at any time prior to the Plan's Effective Date. The listing of a document on the Debtor's Schedule of Assumed Contracts and Leases shall not constitute an admission that such document is an executory contract or unexpired lease or that the Debtor has any liability thereunder.

Each executory contract and unexpired lease listed or to be listed on the Debtor's Schedule of Assumed Contracts and Lease or the Debtor's Schedule of Rejected Contracts and Leases (collectively the "Contract Schedules") shall include modifications, amendments, supplements, restatements or other agreements, including guarantees thereof, made directly or indirectly by the Debtor in any agreement, instrument or other document that in any manner affects such executory contract or unexpired lease, without regard to whether such agreement, instrument or other document is listed on the Contract Schedules. The mere listing of a document on the Contract Schedules shall not constitute an admission by the Debtor that such document is an executory contract or unexpired lease or that the Debtor has an liability thereunder.

14.02. **Cure of Defaults.** Except to the extent that: (i) a different treatment has been agreed to by the non-debtor party or parties to any executory contract or unexpired lease to be assumed pursuant to Section 14.01 of the Plan; or (ii) any executory contract or unexpired lease shall have been assumed pursuant to an order of the Court which order shall have approved the cure amounts with respect thereto, the Debtor shall, pursuant to the provisions of Sections 1123(a)(5) and 1123(b)(2) of the Bankruptcy Code and consistent with the requirements of Section 365 of the Bankruptcy Code, no later than thirty (30) days after the Confirmation Date, file with the Court and serve one or more pleadings listing, the cure amounts of all executory contracts or unexpired leases to be assumed, subject to the Debtor's right to amend any such pleading or pleadings any time prior to thirty (30) days after the Confirmation Date. The parties to such executory contracts or unexpired leases to be assumed by the Debtor shall have fifteen (15) days from service of any such pleading to object to the cure amounts listed by the Debtor. Service of such pleading shall be sufficient if served on the other party to the contract or lease at the address indicated on (i) the contract or lease; (ii) any proof of claim filed by such other party in respect of such contract or lease; or (iii) the Debtor's books and records, including the Schedules, provided, however, that if a pleading served by the Debtor shall attempt reserve of the pleading on an alternative address, if any, from the above listed sources. If any objections are filed, the Court shall hold a hearing. Any party failing to object to the proposed cure amount fifteen days following service of the proposed cure amount by the Debtor shall be forever barred from asserting, collecting or seeking to collect any amounts in excess of the proposed cure amount against the Debtor or Reorganized Debtor. Notwithstanding the foregoing or anything contained elsewhere in this Disclosure Statement or in the Plan, at all times through the date that is five (5) Business Days after the Court enters an order resolving and fixing the amount of a disputed cure amount, the Debtor shall have the right to reject to such executory contract or unexpired lease.

14.03. **Approval of Assumption of Certain Executory Contracts.** Subject to Section 11.01 of the Plan of Reorganization, the executory contracts and unexpired leases on the Debtor's Schedule of Assumed Contracts shall be rejected by the Debtor. Except as may otherwise be ordered by the Court, the Debtor shall have the right to cause any assumed executory contract or unexpired lease to vest in the Reorganized Debtor.

14.04. **Approval of Rejection of Executory Contracts and Unexpired Leases.** Entry of the Confirmation Order shall constitute the approval, pursuant to Section 365(a) of the bankruptcy Code, of the rejection of any executory contracts and unexpired leases to be rejected as and to the extent provided in the Plan.

14.05. **Bar Date for Filing Proof of Claims Relating to Executory Contracts and Unexpired Lease Rejected Pursuant to the Plan.** Claims arising out of the rejection of an executory contract or unexpired lease pursuant to the Plan must be filed with the Court no later than the later of (i) twenty (20) days after the Effective Date and (ii) thirty (30) days after the entry of an order rejecting such executory contract or lease. Any claims not filed within such time period will be forever barred from assertion against the Debtor and/or its estate. Objections to Claims filed pursuant to this provision shall be governed by the procedures set forth above. Unsecured Claims resulting from the rejection of executory contracts shall be treated in Class 6.

14.06. **Deemed Consents and Deemed Compliance with Respect to Executory Agreements.** Unless a counterparty to an executory contract, unexpired lease, license or permit objects to the Debtor's assumption thereof in writing on before seven (7) days prior to the Plan Confirmation Hearing, then, unless such executory contract, unexpired lease, license or permit has been rejected by the Debtor or will be rejected by operation of the Plan of the Debtor, the Debtor shall enjoy all the rights and benefits under each such executory contract, unexpired lease, license and permit without the necessity of obtaining such counterparty's written consent to assumption or retention of such rights and benefits.

## XV. RELATIONSHIP OF DEBTOR WITH AFFILIATES AND INSIDERS

The Debtor has affiliates as that term is defined and interpreted under Section 101(2) of the Bankruptcy Code. Exhibit "1" to the Plan identifies all such affiliates.

## XVI. GENERAL PROVISIONS AFFECTING THE PLAN

16.01 **Additional Creditors.** Any Creditors added to the Debtor's Schedules after the first date set for the Section 341 meeting of creditors and any other Creditors not otherwise herein listed shall have until ten (10) days after the entry of the Order Confirming the Plan of Reorganization to file a Proof of Claim or their claims shall be barred. The Reorganized Debtor shall have thirty (30) days after the entry of the Order Confirming the Plan of Reorganization to object to any such subsequently filed Claim.

16.02 **Conditions To Distribution.** Any entity, including any Creditor that has not, within the time provided in the Plan or any final order of the Court, performed any material act required in the Plan or in such final order, shall not be entitled to participate in any distribution under the Plan. No distribution shall be made with respect to Claims except pursuant to a final order.

16.03 **Best Interest Test.** Even if a plan is accepted by each class of holders of Claims and Interests, the Bankruptcy Code requires a Court to determine that the plan is in the "best interest" of all holders of claims and interests that are impaired by the plan and that have not accepted the plan. The "best interest" test, as set forth in Section 1129(a)(7) of the Bankruptcy Code, requires a Court to find either that (i) all members of an impaired class of Claims or Interests have accepted the plan or (ii) the plan will provide a member who has not accepted the plan with a recovery of property of a value, as of the Effective Date of the plan, that is not less than the amount that such holder would recover if the debtor were liquidated under Chapter 7 of the Bankruptcy Code.

To calculate the probable distributions to members of each impaired class of holders of Claims and Interests if the debtor were liquidated under Chapter 7, a Court must first determine the aggregate dollar amount that would be generated from the sale of the debtor's non-exempt assets if its chapter 11 case were converted to a Chapter 7 case under the Bankruptcy Code. The "liquidation value" would consist primarily of the proceeds from a forced sale of the debtor's non-exempt assets by a Chapter 7 trustee after payment of all Allowed Secured Claims.

The amount of liquidation value available to Unsecured Creditors would be reduced by the costs of liquidation under Chapter 7 of the Bankruptcy Code, including the compensation of a trustee, as well as of counsel and other professionals retained by the trustee, asset disposition expenses, additional administrative claims and other wind-down expenses. The liquidation itself would trigger certain priority payments that otherwise would be due in the ordinary course of business. Those priority claims would be paid in full from the liquidation proceeds before the balance would be made available to pay general unsecured claims or to make any distribution in respect of equity interest.

The foregoing types of claims and such other claims which may rise in the liquidation cases or result from the pending Chapter 11 case would be paid in full from the liquidation proceeds before the balance of those proceeds would be made available to pay pre-petition claims.

Once the court ascertains the recoveries in liquidation of secured creditors and priority claimants, it must determine the probable distribution to general unsecured creditors and equity security holders from the remaining available proceeds in liquidation. If such probable distribution has a value greater than the distributions to be received by such creditors and equity security holders under a debtor's plan, then such plan is not in the best interest of creditors and equity security holders.

## XVII. RISK FACTORS

The holder of a Claim against the Debtor should read and carefully consider the following factors, as well as the other information set forth in this Disclosure Statement (and the documents delivered together herewith and/or incorporated by reference herein), before

deciding whether to vote to accept or to reject the Plan. These factors should not, however, be regarding as constituting the only risks involved in connection with the Plan and its implementation.

There can be no assurance that the requisite acceptances to confirm the Plan will be obtained. Even if the requisite acceptances are received, the can be no assurance that the Court will confirm the Plan. A non-accepting creditor of the Debtor might challenge the adequacy of the Disclosure Statement or the balloting procedures and results as not being in compliance with the Bankruptcy Code and/or Bankruptcy Rules. Even after the Court has determined that the Disclosure Statement and the balloting procedures are appropriate, the Court could still decline to confirm the Plan if it were to find that any of the statutory requirements for confirmation had not been met. Section 1129 of the Bankruptcy Code sets forth the requirements for confirmation and requires, among other things, a finding by the Court that the confirmation of the Plan is not likely to be followed by a liquidation or a need for further financial reorganization and that the value of distributions to non-accepting holders of claims and interests within a particular class under the Plan will not be less than the value of distributions such holders would receive if the Debtor's non-exempt assets were liquidated under Chapter 7 of the Bankruptcy Code. While there can be no assurance that the Court will conclude that these requirements have been met, the Debtor believes that the Plan will not be followed by a need for further financial reorganization and that non-accepting holders within each class under the Plan will receive distributions at least as great as would be received following a liquidation pursuant to Chapter 7 of the Bankruptcy Code when taking into consideration all administrative claims and costs associated with any such Chapter 7 case.

Following Plan Confirmation, the Reorganized Debtor will be subject to all of the risks associated with ownership of real estate in El Paso, Texas and ownership of a closely held business.

17.01  **Conditions Precedent**. The final conclusion of the Chapter 11 proceeding is subject to various conditions precedent, including among others, the approval by one impaired Class of Creditors, the Confirmation by the Court, the absence of any resort to appellate courts by the Debtor or individual Creditors, the continued viability of the Debtor, and the absence of unknown or unreported Claims. No assurance can be given that all required conditions will occur.

## XVIII. ALTERNATIVES TO THE PLAN

18.01  **General**. The alternatives to the confirmation of the Plan are continuation of the Chapter 11 proceeding, conversion to a liquidation proceeding under Chapter 11 or 7, or dismissal of the case. The Debtor believes that the Plan is the best and most realistic alternative available to Creditors, that provides an opportunity for success in repaying priority and unsecured obligations in cash and over a reasonable  period of time.

18.02 **Consequences of Rejection of the Plan.** There are three possible consequences should this Plan be rejected or should the Court refuse to confirm the Plan: (1) the Court could allow the Debtor or some other third party to formulate a different Plan under Chapter 11; (2) the Court could convert the proceedings into liquidation proceeding under Chapter 7 of the Bankruptcy Code; or (3) the Court could dismiss this bankruptcy proceeding.

Of the three possible consequences, the most probable is dismissal. If dismissal were to occur, the Debtor would no longer have the protection of the Court and the Bankruptcy Code, and Creditors would be entitled to pursue their collection efforts.

As to other alternatives, in all likelihood, the Chapter 11 will continue for another 90-120 days, during which any party in interest might be allowed to propose a plan and the Debtor could propose an alternative plan.

The third alternative is the liquidation of Debtor's estate. A liquidation or straight bankruptcy proceeding, known as a Chapter 7 proceeding, is a liquidation of the Debtor by an impartial Trustee with no effort to rehabilitate the Debtor's business. By contrast, a Chapter 11 proceeding, in which the Debtor is currently engaged, is designed to permit the Debtor time to formulate a Plan for the rehabilitation of the Debtor or the sale of the assets of the Debtor as a going concern under the supervision and protection of the Court.

In a Chapter 7 bankruptcy proceeding, the amount to be received by Unsecured Creditors would depend upon the net estate available after all non-exempt assets of the Debtor have been reduced to cash, and all Secured Creditors have been paid in full. Furthermore, whether a bankruptcy is a Chapter 7 or a Chapter 11 proceeding, administrative, Secured and Priority Claims are entitled to be paid in cash and in full before Unsecured Creditors receive any funds.

Should this case be converted to Chapter 7 liquidation, a Secured Creditor would be entitled to full payment of its allowed claim from the proceeds of sale of its collateral. The Chapter 7 Trustee would be entitled to receive compensation under Section 326 of the Bankruptcy Code. Such a fee would not exceed twenty-five percent (25%) on the first $5,000.00 or less, ten percent (10%) on any amount in excess of $5,000.00, but not in excess of $50,000.00, and five percent (5%) on any amount in excess of $50,000.00, but not in excess of $1,000,000.00, and three percent (3%) on any amount in excess of $1,000,000.00, on all monies disbursed or turned over in the case by the Trustee to parties in interest, excluding the Debtor, but including holders of Secured Claims. The Chapter 7 Trustee's fees would be paid as a cost of administration and would be paid in full prior to the costs and expenses incurred in the Chapter 11 case and prior to any payment of Unsecured Creditors.

18.03 **Liquidation Analysis.** *If the Debtor's case was converted to a case under Chapter 7, the Debtor's Unsecured Creditors would receive substantially less than will be*

*realized under the Plan (probably – 0–), than will be realized pursuant to the Plan (equity ownership of the Reorganized Debtor worth more than $1 million on the Effective Date).*

Notwithstanding the difficulties in quantifying recoveries to creditors with precision, the Debtor believes that after consideration of the effects that a Chapter 7 liquidation would have on the ultimate proceeds available for distribution to creditors in the Chapter 11 case, including (a) the increased costs and expenses of a liquidation under Chapter 7 arising from fees payable to a trustee in bankruptcy and professional advisors to such trustee; (b) the substantial increase in claims which would be satisfied on a priority basis or on a parity with creditors in the Chapter 11 case, and (c) the significantly lower proceeds likely to be realized from a liquidation of the Debtor's non-exempt assets under a Chapter 7 liquidation, the Plan meet the "best interest" test of Section 1129(a)(7) of the Bankruptcy Code. The Debtor believes that the members each impaired class will receive at least as much under the Plan as they would in a liquidation in a hypothetical Chapter 7 case. Creditors will receive a better recovery through the distributions contemplated by the Plan because the Debtor has little or no property that is not exempt under Sections 41.001 and 42.001 of the Texas Property Code. The resulting increase in both general Unsecured and Priority claims will no doubt decrease percentage recoveries to Unsecured Creditors of the Debtor. All of these factors lead to the conclusion that recoveries under the Plan would be at least a much as, and in many cases, significantly greater than, the recoveries available in a Chapter 7 liquidation.

## XIX. FEDERAL INCOME TAX CONSEQUENCES OF THE PLAN

19.01 **General**. A summary description of certain material Federal income tax consequences of the Plan is provided below. This description is for informational purposes only and, due to a lack of definitive judicial or administrative authority or interpretation, substantial uncertainties exist with respect to various tax consequences of the Plan as discussed herein. Only the principal United States federal income tax consequences of the Plan to the Reorganized Debtor and to the Holders of Claims who are entitled to vote or to accept or reject the Plan are described below. No opinion of counsel has been sought or obtained with respect to any tax consequences of the Plan. No rulings or determinations of the Internal Revenue Service (the "IRS") or any other tax authorities have been sought or obtained with respect to any tax consequences of the Plan, and the discussion below is not binding upon the IRS or other such authorities. No representations are being made regarding the particular tax consequences of the confirmation and consummation of the Plan to the Reorganized Debtor or any Holder of a Claim. No assurance can be given that the IRS would not assert, or that a court would not sustain, a different position from any discussed herein.

The discussion of Federal income tax consequences below is based on the Internal Revenue Code of 2002, as amended (the "Code"), Treasury Regulations, judicial authorities, published positions of the IRS and other applicable authorities, all as in effect on the date of this document and all of which are subject to change or differing interpretations (possibly with retroactive effect).

-38-

In addition, a substantial amount of time may elapse between the Confirmation Date and the receipt of a final distribution under the Plan. Events subsequent to the date of this Disclosure Statement, such as additional tax legislation, court decisions, or administrative changes, could affect the federal income tax consequences of the Plan and the transactions contemplated thereunder.

19.02  **Form 1065.** The Reorganized Debtor will be subject to those tax laws affecting Limited Liability Companies. The Debtor will be required to file a Form 1065 tax return annually, and pay any taxes due thereunder in a timely manner after confirmation of the Plan or Reorganization.

**EACH HOLDER IS STRONGLY URGED TO SEEK ADVICE FROM HIS OR HER OWN TAX ADVISER WITH RESPECT TO THE FEDERAL, STATE AND LOCAL TAX CONSEQUENCES OF THE TRANSACTIONS DESCRIBED HEREIN AND IN THE PLAN.**

## XX. LITIGATION

20.01  **U.S. District Court Litigation.** On October 3, 2011, DHC Realty, LLC, Spira Sportswear, LLC, and Basic Sports Apparel, Inc. filed their Original Complaint against GECU, Arturo Moreno (a Senior Commercial Loan Officer at GECU), Armando C. Moreno, and Grupo Arte Capital Corp. in Case Number 3:11-CV-00410 in the United States District Court for the Western District of Texas, El Paso Division seeking damages for legal claims asserted against the Defendants as follows: (1) usury against Armando Moreno and Grupo Arte; (2) violation of the Racketeer Influenced and Corrupt Organizations act ("RICO") and conspiracy to do same (against all Defendants; (3) violation of Texas Administrative Code and Code of Federal Regulations (against GECU); (4) breach of fiduciary duty (against GECU); (4) Respondiate Superior (against GECU); and (5) conspiracy (against all Defendants).

20.02  **State Court Actions Involving the Debtor.** As of the Petition Date, the Debtor had the following state court action pending in which the Debtor was a Defendant and Counter-Plaintiff.

A.  KSimon Construction of Texas, Inc. vs. DHC Realty, LLC; in the County Court at Law Number Three for El Paso County, Texas; Case Number 2010-3271.

20.03  **Other Cases Involving the Debtor.** The Debtor is not involved in any other litigation cases as a Plaintiff or Defendant.

-39-

## XXI. MISCELLANEOUS

21.01 **Parties Bound.** Upon Confirmation of this Plan, the Debtor, Reorganized Debtor and all Creditors and other parties in interest shall be bound by the provisions of this Plan.

21.02. **Remedies to Cure Defects.** After Confirmation, the Reorganized Debtor may, with the approval of the Court, and so long as it does not materially or adversely affect the interest of Creditors, remedy any defect or omission, or reconcile any inconsistencies in the Plan, or in the Confirmation of the Plan, in such a manner as may be necessary to carry out the purposes and the intent of the Plan.

21.03. **Headings.** Paragraph headings have been inserted in this Plan for the convenience of the reader. Such headings shall not serve in any way to limit or modify the provisions of the paragraph.

21.04. **Monthly Operating Reports.** Upon Confirmation of the Plan, the Debtor shall be relieved of any further obligation of filing monthly operating reports beyond the month in which the Order Confirming the Plan of Reorganization is signed. **The Reorganized Debtor will, however, be required to file its Application for Final Decree within the times limits prescribed by the Court in its Order Confirming Plan of Reorganization**.

21.05. **Governing Law.** Except to the extent the Bankruptcy Code or Bankruptcy Rules are applicable, the rights and obligations arising under this Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of Texas, without giving effect to the principles of conflicts of law thereof. Notwithstanding the preceding sentence and anything to the contrary contained in the Plan, the rights and obligations arising under the Plan with respect to Tax Claims, shall be governed by, and construed and enforced in accordance with, the non-bankruptcy laws and rules which would otherwise have applied if the Reorganization Case had not been commenced.

21.06. **Amendment and Modification.** This Plan may be altered, amended or modified on or after the Confirmation Date as provided in the Plan or Bankruptcy Code Section 1127. The Reorganized Debtor may, after notice and hearing, with the approval of the Court, and so long as there is no materially adverse effect upon the interests of the Creditors, modify the Plan or remedy any defects in or omissions from, or reconcile any inconsistencies in the Plan or in the Order Confirming the Plan, as may be necessary to carry out its purposes and effects.

21.07. **Revocation.** The Debtor reserves the right to revoke and withdraw the Plan prior to the Confirmation Date. If the Debtor revokes or withdraws this Plan, then the Plan shall be deemed null and void and, in such event, nothing contained herein shall be deemed to constitute a waiver or release of any Claims by or against the Debtor or any other Person,

or to prejudice, in any manner, the rights of any person in any further proceedings involving the Debtor.

21.08. **The Failure to Satisfy a Confirmation Condition or an Effective Date Condition.** If one or more of the conditions to Confirmation or the Effective Date that has not been waived in writing by the Debtor is not satisfied, and the time within which such condition must be satisfied has expired, the Plan shall be deemed null and void, and, in such event, nothing contained herein shall be deemed to constitute a waiver or release of any Claims by or against the Debtor or any other Person or to prejudice in any manner the rights of the Debtor or any Person in any further proceedings involving the Debtor.

21.09. **Time.** In computing any period of time prescribed or allowed by this Plan, the day of the act, event, or default from which the designated period of time begins to run shall not be included. The last day of the period so computed shall be included, unless it is a Saturday, a Sunday, or a legal holiday, or, when the act to be done is the filing of a paper in court, a day on which weather or other conditions have made the Clerk's office inaccessible, in which event the period runs until the end of the next day which is not one of the aforementioned days. When the period of time prescribed or allowed is less than 8 days, intermediate Saturdays, Sundays and legal holidays shall be excluded in the computation.

As used in this Plan, "legal holiday" includes New Year's Day, the Birthday of Martin Luther King, Jr., Washington's Birthday, Memorial Day, Independence Day, Labor Day, Columbus Day, Veterans Day, Thanksgiving Day, Christmas Day, and any other day appointed as a holiday by the President or the Congress of the United States, or by the state in which the Court is held.

21.10. **Rules of Construction.** As required to make sense, the singular shall include the plural and the plural shall include the singular.

21.11. **Post-Confirmation Operation.** On or after the Effective Date, the Reorganized Debtor shall have full authority to collect and sell assets, retain professionals, and take any action as is appropriate to carry out the provisions of the Plan. Prior Bankruptcy Court approval shall not be required except as otherwise expressly provided for in the Plan.

21.12. **Further Authorization.** The Reorganized Debtor shall be entitled to seek such orders, injunctions, and rulings as it deems necessary to carry out the intentions of the Plan, including but not limited to an order specifying which recorded liens are discharged and released upon the sale, transfer or other disposition of the property.

21.13. **Litigation of Estate Claims**. Except as otherwise expressly provided in the Plan, pursuant to Section 1123(b)(3)(B), the Reorganized Debtor shall retain the right to enforce, litigate, and liquidate all claims, causes of action and interest belonging to the Debtor and/or the Estate. Any and all causes of action which the Debtor may have or which may arise under any provisions of the Code or which may be enforceable under any provision

-41-

of the Code or any other law or statute, including claims against the Estate, shall be preserved and this Court shall retain jurisdiction to dispose of such causes of action, including common or statutory law causes and of action unrelated to bankruptcy. All such causes of action shall belong to the Estate as part of the assets of the Reorganized Debtor. Any recovery shall be distributed in accordance with the distribution scheme set forth in the Plan to various Classes of Creditors.

21.14. **Less Favorable Treatment.** The Holder of any Allowed Claim may agree to payment of such Allowed Claim on a basis less favorable to the Holder than provided for in the Plan.

21.15. **Plan Not an Admission of Liability**. Until the Effective Date, (i) the compromises, settlements, releases and abandonments set forth in the Plan shall be of no force or effect; (ii) nothing in the Plan shall be deemed to be an admission that any Claim that could be asserted by any Person is valid in any respect; and (iii) nothing in the Plan or Disclosure Statement may be admitted into evidence or otherwise used in opposition to any suit, action, motion, contested matter or adversary proceeding brought on any such Claim.

21.16. **Successors and Assigns; Transferability**. The rights and obligations of any Person named or referred to in this Plan shall inure to the benefit of, and shall be binding upon, as the case may be, the successors and assigns of such Person.

21.17. **Compliance with Tax Requirements**. In connection with the Plan, the Debtor and Reorganized Debtor shall comply with all withholding and reporting requirements imposed by federal, state, local and foreign taxing authorities and all distributions hereunder shall be subject to such withholding and reporting requirements.

21.18. **Compliance with Applicable Laws**. If notified by any governmental authority that it is in violation of any applicable law, rule, regulation or order of such governmental authority relating to its business, Reorganized Debtor shall comply with such law, rule, regulation or order; provided however, that nothing contained herein shall require such compliance by Reorganized Debtor where the legality or applicability of such law, rule, regulation or order is being contested in good faith in appropriate proceedings by Reorganized Debtor and, if appropriate, for which an adequate reserve has been set aside on the books of Reorganized Debtor.

21.19. **Conflict**. In the event that there is any conflict or inconsistency between this Plan and/or the Disclosure Statement, the terms and provisions of the Plan shall govern.

21.20. **Business Days**. In the event that any payment or distribution to be made hereunder would otherwise be required to be made on a day that is not a Business Day, such payment or distribution shall instead be made on the next succeeding Business Day.

21.21. **Provisions Severable.** If any term or provision of the Plan is held be invalid, void or unenforceable, the Bankruptcy Court shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extend practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions hereof shall remain in full force and effect and shall in no way be affected, impaired or invalidated by such holding, alteration or interpretation. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision hereof, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable in accordance with its terms.

Severability. Should the Bankruptcy Court determine, prior to the Confirmation Date, that any provision in the Plan is either illegal on its face or illegal as applied to any Claim or interest, such provision shall be unenforceable either as to all holders of Claims or interests or as to the holder of such Claim or interest to which the provision is illegal, respectively. Such a determination of unenforceability shall in no way limit or affect the enforceability and operative effect of any other provision of the Plan

21.22. **Payment.** Whether any payment or distribution to be made under the Plan shall be due on a day other than a Business Day, such payment or distribution shall instead be made on the immediately following Business Day. Whenever payment of a fraction of a cent would otherwise be called for, the actual payment shall reflect a rounding of such fraction to the nearest whole cent.

21.23. **Confirmation Order.** The Confirmation Order shall continue such injunctions and other orders necessary to implement the Plan. To the extent necessary, the Confirmation Order shall contain any provisions necessary to provide for Substantial Consummation of the Plan on the Effective Date.

21.24. **Effectuating Documents and Further Action.** The Debtor and the Reorganized Debtor are each authorized to execute, deliver, file or record such contracts, instruments or other agreements or documents and take such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan and any notes or securities issued pursuant to the Plan. Nothing contained herein shall prevent the Reorganized Debtor from taking such actions as may be necessary to consummate the Plan, although such actions may not expressly be provided for in the Plan.

21.25. **Post-Confirmation Administrative Expenses.** Administrative Expenses incurred by the Reorganized Debtor after the Confirmation Date, including, but not limited to, Claims for professionals' fees and expenses, shall not be subject to the requirement of a Court approved application and may be paid by the Reorganized Debtor in the ordinary course of business and without further Bankruptcy Court approval.

21.26.  **Closing of Case**. The Reorganized Debtor shall endeavor to move for a final decree and closing of the Case as quickly as possible following the Confirmation Order becoming a Final Order; provided, however, the Case will not be closed until all Disputed Claims have been resolved by Final Order.

21.27.  **Tax Withholding**. The Reorganized Debtor may withhold from any property to be distributed under the Plan any property that the Reorganized Debtor determines must be withheld for taxes payable by the person or entity entitled to such property to the extent required by applicable law. The Reorganized Debtor is authorized to require any Creditor or Interest Holder receiving any payment or distribution under the Plan to provide her, her or its tax identification number or social security number prior to any payment or distribution to such Creditor or Interest Holder.

21.28. **Conversion to Chapter 7.**  If the Debtor's Case is converted to a case under Chapter 7 of the Bankruptcy Code, all assets of the Debtor will become property of the Chapter 7 Estate.

21.29.  **Notices.** All notices, requests and demands, in order to be effective, shall be in writing (including by facsimile transmission) and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed, addressed as follows:

> DHC Realty, LLC
> 301 Williams
> El Paso, Texas 79901
>
> Corey  W.  Haugland
> James & Haugland, P.C.
> P.O. Box 1770
> El Paso, Texas 79949-1770
> Telephone:     915-532-3911
> Facsimile:     915-541-6440

## XXII. SOLICITATION IN CONNECTION WITH THE PLAN

Although this Disclosure Statement has attempted to provide information regarding the estate of the Debtor and the potential benefit that might accrue to its creditors, this Disclosure Statement cannot accurately project the percentages of each allowed claim to be realized upon immediate liquidation or that will be received from the Plan if implemented because of the various factors described herein.  Despite these uncertainties and risks described herein, the Debtor believes that the Plan is feasible and can provide each holder of a claim against the Debtor with an opportunity to receive at least the benefits that would be received from liquidation of the Debtor.

## XXIII. CONCLUSION AND RECOMMENDATION

THE PLAN PROVIDES FOR AN EQUITABLE AND EARLY DISTRIBUTION TO CREDITORS OF THE DEBTOR, PRESERVE THE VALUE OF THE BUSINESS AS A GOING CONCERN, AND PRESERVES THE JOBS OF THE DEBTOR'S EMPLOYEES. THE DEBTOR BELIEVES THAT ANY ALTERNATIVE TO CONFIRMATION OF THE PLAN, SUCH AS A TOTAL LIQUIDATION OF THE DEBTOR OR ATTEMPTS BY ANOTHER PARTY IN INTEREST TO FILE A PLAN COULD RESULT IN SIGNIFICANT DELAYS AND LITIGATION AND COSTS. MOREOVER, THE DEBTOR BELIEVES THAT ITS CREDITORS WILL RECEIVE GREATER AND EARLIER RECOVERIES UNDER THE PLAN THAN THOSE THAT WOULD BE ACHIEVED IN LIQUIDATION OR UNDER AN ALTERNATIVE PLAN. FOR THESE REASONS, THE DEBTOR URGES YOU TO RETURN YOUR BALLOT ACCEPTED THE PLAN.

Dated December 13, 2011

Respectfully submitted,

**JAMES & HAUGLAND, P.C.**
P.O. Box 1770
El Paso, Texas 79949-1770
Telephone: 915-532-3911
Facsimile: 915-541-6440

By: _____

Corey W. Haugland
State Bar No. 09234200
Attorney for the Debtors

DHC REALTY, LLC , Debtor-in-Possession

By: _____
David Chowaiki, President