IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| DHC REALTY, LLC | § | Case No. 11-30977-hcm |
| | § | |
| Debtor. | § | |

**REORGANIZED DEBTOR'S EXPEDITED MOTION FOR ENTRY OF (I) AN ORDER (A) ESTABLISHING BIDDING PROCEDURES RELATING TO THE SALE OF THE NORTH DESERT, GATEWAY EAST AND ZARAGOSA "FUDDRUCKERS" RESTAURANT PROPERTIES, (B) SCHEDULING A HEARING TO CONSIDER THE PROPOSED SALE AND APPROVING THE FORM AND MANNER OF NOTICE THEREOF, (C) APPROVING BID PROTECTIONS, AND (D) GRANTING CERTAIN RELATED RELIEF; AND (II) AN ORDER (A) APPROVING THE PROPOSED SALE AND (B) GRANTING CERTAIN RELATED RELIEF**

**Expedited Hearing Requested**

TO THE HONORABLE H. CHRISTOPHER MOTT, UNITED STATES BANKRUPTCY JUDGE:

Come now DHC REALTY, LLC ("DHC"), Reorganized Debtor in the above-referenced Chapter 11 case ("Reorganized Debtor") and files this their Reorganized Debtor's Expedited Motion for Entry of (I) an Order (A) Establishing Bidding Procedures Relating to the Sale of the North Desert, Gateway East and Zaragosa Fuddruckers Restaurants (the "Restaurant Properties"), (B) Scheduling a Hearing to Consider the Proposed Sale and Approving the Form and Manner of Notice Thereof, (C) Approving Bid Protections, and (D) Granting Certain related Relief; and (II) and Order (A) Approving the Proposed Sale, and (B) Granting Certain Related Relief (the "Motion"). The Motion is filed pursuant to Sections 105 and 363 of Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") and Rules 2002, 6004, 6006 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and seeks entry of an order (i) approving the proposed bid procedures (the "Bidding Procedures") a copy of which are attached hereto as **Exhibit A** to be used for the sale of certain Restaurant Properties located in El Paso County, Texas ; (ii) scheduling a hearing (the "Sale Hearing") to approve such sale (the "Sale"), and approving the form and manner of notice thereof; and (iii) approving overbid procedures (the "Bid Protections"). The Reorganized

1

Debtor also hereby moves the Court, pursuant to Section 105 and 363 of the Bankruptcy Code and Bankruptcy Rules 2002, 6004, 6006 and 9014, for entry of an order authorizing: (i) the sale of the Restaurant Properties free and clear of liens, claims, interests, and encumbrances; (ii) if the Proposed Purchaser (as herein defined) is the Prevailing Bidder (as herein defined), approval of the Commercial Contract - Improved Property (the "Real Estate Contract") between the Reorganized Debtor, as Seller and the respective Proposed Purchaser and the obligations incurred by the Reorganized Debtor and the Proposed Purchaser thereunder, (iii) such other agreement to be entered into by the Reorganized Debtor and other Prevailing Bidder; and (iv) granting related relief (the "Sale Relief"). In support of the Motion, the Reorganized Debtor states as follows:

### Jurisdiction And Venue

1. This Court has jurisdiction over this matter pursuant to 28 U.S.C. Section 1334. This is a core proceeding pursuant to 28 U.S.C. Section 157(b)(2). Venue is proper pursuant to 28 U.S.C. Sections 1408 and 1409.

### Background

2. The Reorganized Debtor hired Juan Uribe of KW Commercial to market three (3) Fuddruckers restaurants at its North Desert, Gateway East and Zaragosa locations in El Paso, Texas.

3. Mr. Uribe has been successful in not only obtaining Real Estate Contracts for the three (3) locations but also in promoting and advertising the sale of these locations.

4. The efforts of Mr. Uribe has generated interest (and bias) from several of El Paso's sophisticated real estate investors, including:

 (a) River Oaks Properties (Gerald Rubin);

 (b) MIMCO (Meyer Marcus);

 (c) AARK Investments, L.P.

 (d) Chris Malooly;

 (e) Paluti, Ltd.;

 (f) Kirk Robinson (Peter Piper Pizza);

 (g) Fuddrucker's Corporate (Pappadeaux, Luby's); and

 (h) Buffalo Wild Wings.

5. Mr. Uribe's promotional activities have generated marked interest among commercial real

2

estate brokers/agents in El Paso, Texas as well as from wealthy Mexican nationals.

6. At present, the highest offer made via the Real Estate Contracts are as follows:

    (a) Gateway     $1,600,000.00;

    (b) Westside     $1,200,000.00; and

    (c) Zaragosa     $1,000,000.00.

7. GECU is a secured creditor and party-in-interest in the proceeding.

8. Specifically, GECU is the owner and holder of the following instruments:

    (a) A Promissory Note ("**Note 1**") dated June 25, 2008, in the original principal amount of $1,300,000.00 executed by DHC Realty, LP (the "Maker") payable to the order of GECU (the "Payee") secured by a Deed of Trust, Security Agreement and Financing Statement dated June 25, 2008;

    (b) A Promissory Note ("**Note 2**") dated June 25, 2008, in the original principal amount of $1,648,037.00 executed by DHC Realty, LP (the "Maker") payable to the order of GECU (the "Payee") secured by a Deed of Trust, Security Agreement and Financing Statement dated June 25, 2008;

    (c) A Promissory Note ("**Note 3**") dated June 25, 2008, in the original principal amount of $1,402,635.00 executed by DHC Realty, LP (the "Maker") payable to the order of GECU (the "Payee") secured by a Deed of Trust, Security Agreement and Financing Statement dated June 25, 2008;

    (d) A Promissory Note ("**Note 4**") dated June 25, 2008, in the original principal amount of $170,572.00 executed by DHC Realty, LP (the "Maker") payable to the order of GECU (the "Payee") secured by a Commercial Security Agreement dated June 25, 2008, granting a security interest in all inventory, equipment, and general intangibles located at 7942 Gateway East, 5030 N. Desert Blvd. and 1887 N. Zaragosa, El Paso, Texas;

    (e) A Promissory Note ("**Note 5**") dated June 25, 2008, in the original principal amount of $207,520.00 executed by DHC Realty, LP (the "Maker") payable to the order of GECU (the "Payee") secured by a Commercial Security Agreement dated June 25, 2008, granting a security interest in all inventory, equipment, and general intangibles located at 7942 Gateway East, 5030 N. Desert Blvd. and 1887 N. Zaragosa, El Paso, Texas;

    (f) A Promissory Note ("**Note 6**") dated June 25, 2008, in the original principal amount of $138,402.00 executed by DHC Realty, LP (the "Maker") payable to the order of GECU (the "Payee") secured by a Commercial Security Agreement dated June 25, 2008, granting a security interest in all inventory, equipment, and general intangibles

located at 7942 Gateway East, 5030 N. Desert Blvd. and 1887 N. Zaragosa, El Paso, Texas;

all of which are "Loan Documents".

The Loan Documents grant GECU a security interest in all of the Debtor's inventory, equipment and general intangibles as well as the real property and improvements described as:

(a) A portion of Lot 25, Block 3, SAGELAND ADDITION REPLAT, an Addition to the City of El Paso, EL Paso County, Texas according to the plat thereof in Volume 26, Page 18, Plat Records of El Paso County, Texas, commonly known as 7942 Gateway East, El Paso, Texas 79915 (the "Gateway East Property");

(b) Parcel 1: A portion of Lot 1, Block 115, VISTA HILLS UNIT 38, and Addition to the City of El Paso, El Paso County, Texas, according to the plat thereof in Volume 68, Page 32, Plat Records of El Paso County, Texas (0.8394 acre parcel)

Parcel 2: A portion of Lot 1, Block 115, VISTA HILLS UNIT 38, an Addition to the City of El Paso, El Paso County, Texas, according to the plat thereof in Volume 68, Page 32, Plat Records of El Paso County, Texas (0.0567 acre parcel), commonly known as 1887 N. Zaragosa, El Paso, Texas 79936 (the "Zaragosa Property");

(c) A portion of Lot 1, Block 1, SUNNY SANDS REPLAT "B", an Addition to the City of El Paso, El Paso County, Texas, according to the plat thereof in Volume 70, Page 7, Plat Records of El Paso County, Texas, commonly known as 5030 N. Desert Blvd., El Paso, Texas 79912 (the "N. Desert Property").

9. During the process of preparing the foreclosure reports for the subject real property, GECU discovered that the Debtor granted a third deed of trust lien on each parcel of real property to First Community Financial, a division of Pacific Western Bank, on or about July 9, 2013 in the amounts of $1,648,037.00 (Zaragosa property), $1,402,635.00 (N. Desert property) and $1,300,000.00 (Gateway East property).

10. GECU has filed a Motion for Relief from Automatic Stay to proceed with a foreclosure of the N. Desert, Gateway East and Zaragosa properties on January 7, 2014.

11. In accordance with the Third Amended Plan of Reorganization and the Order Confirming the Third Amended Plan of Reorganization, the Reorganized Debtor is contractually bound not to oppose a Relief From Stay motion filed by GECU in "a subsequent bankruptcy proceeding." However, the instant case is NOT "a subsequent bankruptcy proceeding" and therefore the

Reorganized Debtor has standing to make its position known to this Court.

12. The Reorganized Debtor does not oppose the GECU Relief From Stay Motion so long as it is subject to the Court's orderly liquidation process (*i.e.* Section 363 Sale Order).

13. The Reorganized Debtor's counsel (James & Haugland, P.C.) will be responsible for providing notice to all parties in interest, creditors and (known) potential bidders including those listed in Paragraph 4 above.

### Relief Requested

14. The Reorganized Debtor seeks entry of an order: (i) approving the Bidding Procedures to be used to solicit the highest and best offer for the Restaurant Properties, (ii) approving certain notice procedures with respect to the Sale, (iii) approving overbid provisions, and (iv) scheduling the Sale Hearing (a copy of which proposed order is attached hereto as **Exhibit B**). In addition, the Reorganized Debtor also seeks, upon conclusion of the Sale hearing, entry of an order (i) authorizing the sale of the Restaurant Properties to LIG Real Estate Holdings, LLC (N. Desert Property and Gateway East Property) and Chris Malooly (Zaragosa Property)(the "Proposed Purchaser"), pursuant to the Commercial Real Estate Contracts (copies of which are available from the undersigned counsel upon receipt of a written request), or such other asset purchase agreement as the Reorganized Debtor may enter into with another Prevailing Bidder (as defined below) prior to the Sale Hearing (such a transaction, the "Competing Transaction"); and (ii) if the Proposed Purchaser is the Prevailing Bidder, approving the Commercial Real Estate Contract (such order, the "Sale Order") and if the Proposed Purchaser is not the Prevailing Bidder, approving a purchase and sale agreement for such Prevailing Bidder.

### The Bidding Procedures

15. After extensive arm's length negotiations, the Reorganized Debtor and the Proposed Purchasers have agreed upon the Commercial Real Estate Contracts, and shall file fully executed version of the Commercial Real Estate Contracts prior to a hearing on the Motion. The hearing to seek approval of the order approving the Bidding Procedures Relief is intended to, among other things, approve the Proposed Purchasers as the "stalking horse" bidders in connection with the Reorganized Debtor's solicitation of higher and better offers for its Restaurant Properties, establish the form and manner of notice of the Sale and establish the Bidding Procedures by which other

parties may participate in the Auction (as herein defined).

16. The Bidding Procedures are designed to maximize value for the Reorganized Debtor's assets, while ensuring an orderly sale process consistent with the timeline available to the Reorganized Debtor. The Bidding Procedures describe, among other things, the manner in which bidders and bids become "qualified," the coordination of diligence efforts among bidders, the receipt and negotiation of bids received, the conduct of any auction (the "Auction"), and the selection and approval of any ultimately successful bidder(s) (the "Bidding Process").

17. Pursuant to the Bidding Procedures, the Reorganized Debtor requests that the Auction for the Restaurant Properties occur no later than January 6, 2014.

18. The Reorganized Debtor believes that an immediate going concern sale of the Restaurant Properties is essential to maximize asset value and creditor recoveries. The Reorganized Debtor further believes that the proposed timeline affords the Reorganized Debtor a sufficient opportunity to pursue a sale process that will maximize creditor recoveries.

### Terms of the Commercial Real Estate Contract

19. The Reorganized Debtor will enter into the Commercial Real Estate Contracts, subject to court approval and the selection of higher or better offers.

20. The Commercial Real Estate Contracts have the following key provisions:

| **Restaurant Properties:** | Real estate described as: |
|---|---|
| NORTH DESERT<br><br>GATEWAY EAST | • A portion of Lot 1, Block 1, SUNNY SANDS REPLAT "B", an Addition to the City of El Paso, El Paso County, Texas, according to the plat thereof in Volume 70, Page 7, Plat Records of El Paso County, Texas, commonly known as 5030 N. Desert Blvd., El Paso, Texas 79912; furniture, fixtures and equipment (NOT to include any item with the name "Fuddruckers" painted, attached or otherwise affixed thereto).<br><br>• A portion of Lot 25, Block 3, SAGELAND ADDITION REPLAT, an Addition to the City of El Paso, EL Paso County, Texas according to the plat thereof in Volume 26, Page 18, Plat |

| | |
|---|---|
| ZARAGOSA | Records of El Paso County, Texas, commonly known as 7942 Gateway East, El Paso, Texas 79915; furniture, fixtures and equipment (<u>NOT</u> to include any item with the name "Fuddruckers" painted, attached or otherwise affixed thereto).<br><br>• <u>Parcel 1</u>: A portion of Lot 1, Block 115, VISTA HILLS UNIT 38, and Addition to the City of El Paso, El Paso County, Texas, according to the plat thereof in Volume 68, Page 32, Plat Records of El Paso County, Texas (0.8394 acre parcel) AND <u>Parcel 2</u>: A portion of Lot 1, Block 115, VISTA HILLS UNIT 38, an Addition to the City of El Paso, El Paso County, Texas, according to the plat thereof in Volume 68, Page 32, Plat Records of El Paso County, Texas (0.0567 acre parcel), commonly known as 1887 N. Zaragosa, El Paso, Texas 79936; furniture, fixtures and equipment (<u>NOT</u> to include any item with the name "Fuddruckers" painted, attached or otherwise affixed thereto). |
| **Purchase Price:**<br>NORTH DESERT<br><br>GATEWAY EAST<br><br>ZARAGOSA | • $1,200,000.00<br><br>• $1,600,000.00<br><br>• $1,000,000.00 |
| **Closing Dates:** | The purchase and sale of the Restaurant Properties pursuant to the Commercial Real Estate Contract shall be consummated in El Paso, Texas at the offices of James & Haugland, P.C. on the fourteenth (14th) day (or, if such day is not a business day, on the next business day) following the entry of the final Sale Order. |
| **Overbid Amount:** | $100,000.00 |

| | |
|---|---|
| **Governing Law:** | Except to the extent the laws of the United States of America mandatorily apply, the Commercial Real Estate Contract shall be governed by, construed and enforced in accordance with the laws of the State of Texas, without giving effect to principles of conflicts of laws. |
| **"AS-IS" Sale:** | Buyer agrees to the following sale provision: <br><br> "The Buyer agrees (a) the Buyer has had a full and complete opportunity to investigate and inspect the Property and the title to the Property; (b) the Buyer has received complete and adequate Property Condition Disclosures in writing; (c) to purchase the Property "as is", with all faults; (d) in purchasing the Property, the Buyer is relying upon his own inspection of the Property and of the title to the Property and is not relying upon any representations of the Seller or information provided by the Seller or not provided by the Seller; (e) in the event that the Seller fails to close and/or consummate the sale and purchase contemplated by this Contract, the Buyer's remedy is limited to specific performance; (f) these provisions are material to this Contract and form a substantial basis of the bargain between the Seller and the Buyer; (g) these provisions shall survive the closing of the sale and purchase contemplated by this Contract; and (h) in the event of a conflict or inconsistency between these provisions and any other provisions of this Contract, these provisions shall control." |

### The Proposed Bidding and Auction Procedures

21. Certain of the key terms of the Bidding Procedures are highlighted as follows:

- <u>Participation Requirements.</u> To ensure that only bidders with a serious interest in purchasing the Restaurant Properties participate in the Bidding Process, the Bidding Procedures provide for certain minimal requirements for a potential bidder to become a "Qualified Bidder." These requirements include, among other things, delivery to the

Reorganized Debtor of financial assurances as to such bidder's ability to close a transaction.

- Due Diligence. The Bidding Procedures permit all Qualified Bidders an opportunity to participate in the diligence process. The Reorganized Debtor requests that due diligence be completed no later than December 20, 2013, or such other time as established by the Court.

- Competing Proposal Deadline. The Reorganized Debtor is requesting a deadline for submission of Competing Proposals of 5:00 p.m. (Mountain Time) on December 20, 2013. Prior to the commencement of the Auction, the Reorganized Debtor shall share the Competing Proposals with all Qualified Bidders that properly submitted a Competing Proposal and counsel (or contact information) for the Proposed Purchaser.

- Form of Competing Proposals. The Bidding Procedures require that Competing Proposals, among other things: (i) are accompanied by a clean executed version of a sale agreement together with a blackline showing differences between the Commercial Real Estate Contract and the proposed agreement; (ii) propose acquisition of the specific Restaurant to be acquired; (iii) contain evidence of financial ability to consummate the transaction; (iv) be accompanied by a cash deposit equal to three percent (3%) of the proposed consideration to be paid under such Competing Proposal and a written undertaking to provide an additional cash deposit (the "Additional Deposit") equal to seven percent (7%) of the proposed consideration to be paid under such Competing Proposal under Bankruptcy Court approval of such bidders' Competing Proposal if such Competing Proposal is determined to be the Prevailing Bid; and (v) result in increased value to the Reorganized Debtor's estate that, in the Reorganized Debtor's reasonable judgment after consultation with their financial and legal advisors is at least $100,000.00 more than the Purchase Price, less Adjustments.

- <u>Time and Location of Auction.</u> The Auction will take place prior to January 7, 2014 at a time set by the Bankruptcy Court.

- <u>Conduct of Auction.</u> Prior to the commencement of the Auction, the Reorganized Debtor shall advise the Qualified Bidders participating in the Auction which Competing Proposal has been determined to be the highest or otherwise best Competing Proposal. Minimum overbid increments at the Auction shall be in the amount of $100,000.

- <u>Selection of Prevailing Bid and Bidder.</u> The selection of the Prevailing Bid shall be based on, among other things: the amount of consideration, the ability of the Qualified Bidder to close the transaction on or before the Closing Date as set forth in the Commercial Real Estate Contract or as otherwise ordered by this Court, and other contractual terms.

- <u>Back-Up Bidder.</u> In addition to identifying the Prevailing Bidder, the Reorganized Debtor shall identify the next highest or otherwise best Competing Proposal and the Qualified Bidder who submitted that Competing Proposal.

**Deadline to File Sale Objections**

22. The Reorganized Debtor requests that any objections to the Sale of the Restaurant Properties to the Proposed Purchaser or other Prevailing Bidder or to the Commercial Real Estate Contracts must (i) be in writing, (ii) conform to the Bankruptcy Rules and the Local Rules of the Bankruptcy Court for the Western District of Texas, El Paso Division, (iii) set forth the name of the objecting party, the nature and amount of any claims or interest held or asserted against the Reorganized Debtor's properties, the basis for the objection and the specific grounds therefore, and (iv) be served so as to be actually received by December 20, 2013 at 12:00 p.m. by (A) Reorganized Debtor's counsel, James & Haugland, P.C., Attn: Corey W. Haugland, 609 Montana Ave., El Paso, Texas, 79902, Email: chaugland@jghpc.com; (B) United States Trustee, Attn: Kevin Epstein, Asst. US Trustee, 615 E. Houston, Suite 533, San Antonio, TX 78205, Email: Kevin.M.Epstein@usdoj.gov.

23. The Reorganized Debtor requests that any party failing to timely file and serve its objection on the Objection Notice Parties shall be barred from asserting an objection to the Motion and the Sale to the Prevailing Bidder (including, but not limited to, the objection of the Reorganized Debtor's ability to transfer the Restaurant Properties free and clear of all liens, claims and encumbrances).

### The Bid Protections

24. The Reorganized Debtor and Proposed Purchaser have negotiated a minimum overbid amount of $100,000 (the "Minimum Overbid Requirement").

25. The Reorganized Debtor submits that due to the value of this transaction, the Minimum Overbid Requirement of $100,000 is reasonable and appropriate. Thereafter, each successive bid by each Qualified Bidder must be in minimum overbid increments of not less than $100,000 of the pending highest bid. The Reorganized Debtor reserves the right to conduct the Auction in any manner that it anticipates will result in the highest or otherwise best value for its estate that is not inconsistent with any order of this Court, provided that any changed or additional rules for the Auction are communicated to all participants at the Auction.

### Applicable Authority

A. **The Bidding Procedures**

26. Pursuant to Bankruptcy Rule 6004(f)(1), sales of property outside the ordinary course of business may be by private sale or by public auction. The Reorganized Debtor believes that the proposed Bidding Procedures are most likely to maximize the realizable value of the Restaurant Properties for the benefit of the Reorganized Debtor, creditors, and other parties-in-interest. Accordingly, the Reorganized Debtor believes the Court should approve the Bidding Procedures.

27. The approval of bidding protections in connection with the sale of assets pursuant to Section 363 of the Bankruptcy Code has become an established practice in Chapter 11 cases. Bankruptcy courts have approved bidding incentives similar to the bidding protections requested by the Reorganized Debtor under the "business judgment rule," pursuant to which courts typically grant deference to the actions of a corporation's board of directors taken in good faith and in the exercise of honest judgment. Similar procedures have been previously approved by other bankruptcy courts.

Historically, bankruptcy courts have approved bidding incentives similar to the Bid Protections under the "business judgment rule," which prescribes against judicial second-guessing of the actions of a corporation's board of directors taken in good faith and in the exercise of honest judgment. *See, e.g., In re 995 Fifth Ave. Assocs., L.P.*, 96 B.R. 24, 28 (Bankr. S.D.N.Y. 1992) (bidding incentives may "be legitimately necessary to convince a white knight to enter the bidding by providing some form of compensation for the risks it is undertaking") (citation omitted); *In re Integrated Res.*, 147 B.R. 650, 657-58 (Bankr. S.D.N.Y. 1992), *appeal dismissed*, 3 F.3d 49 (2d Cir. 1993) (establishing three (3) basic factors for determining whether to permit such fees in bankruptcy: "(1) if the relationship of parties who negotiated break-up fee is tainted by self-dealing or manipulation; (2) does the fee hamper, rather than encourage, bidding; and (3) is the amount of the fee unreasonable relative to the proposed purchase price?"); *Calpine Corp. v. O'Brien Envtl. Energy, Inc. (In re O'Brien Envtl. Energy, Inc.)*, 181 F.3d 527 (3d Cir. 1999) (holding that even though bidding incentives are measured against a business judgment standard in non-bankruptcy transactions, the administrative expense provisions of Section 503(b) govern in the bankruptcy context and, accordingly, to be approved, bidding incentives must provide some benefit to the debtor's estate).

28. The amount of the Minimum Overbid Requirement is reasonable and appropriate in light of the size and nature of the transaction and the efforts that have been and will be expended by the Proposed Purchaser.

29. The Reorganized Debtor requests that the Court impose the Minimum Overbid Requirement as set forth herein.

**B.    The Sale Relief**

30. The Reorganized Debtor also requests that the Court approve the sale of the Restaurant Properties to the Proposed Purchasers or another Prevailing Bidder pursuant to Sections 105 and 363 of the Bankruptcy Code. This portion of the relief is requested to be entered after the Sale Hearing. In an exercise of the Reorganized Debtor's sound business judgment, the Reorganized Debtor submits that the sale of the Restaurant Properties to the Proposed Purchaser pursuant to the Commercial Real Estate Agreement, or such agreement as the Reorganized Debtor may reach with another Prevailing Bidder, is in the Reorganized Debtor's best interests and should be approved.

31. Section 363(b)(1) of the Bankruptcy Code provides that "[t]he trustee, after notice and a

hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1); *Cajun Elec. Power Coop., Inc. v. Official Comm. of Unsecured Creditors (In re Cajun Elec. Power Coop., Inc.)*, 119 F.3d 349, 354 (5th Cir. 1997). Courts look to various factors to determine whether to approve a motion under Section 363(b) of the Bankruptcy Code, such as: (a) whether a sound business reason exists for the proposed transaction; (b) whether fair and reasonable consideration is provided; (c) whether the transaction has been proposed in good faith; and (d) whether adequate and reasonable notice is provided. *See, e.g., In re Condere Corp.*, 228 B.R. 615, 626 (Bankr. S.D. Miss. 1998); *Comm. of Equity Security Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063, 1071; *In re Abbotts Dairies of Pennsylvania, Inc.*, 788 F.2d 143, 147-49 (3d Cir. 1986).

32. A debtor must demonstrate sound business judgment for a sale of assets outside of the ordinary course of business. *Institutional Creditors of Continental Air Lines, Inc. v. Cont'l Air Lines, Inc. (In re Cont'l Air Lines, Inc.)*, 780 F.2d 1223, 1226 (5th Cir. 1986). The Reorganized Debtor has sound business reasons for selling its Restaurant Properties at this time. The Reorganized Debtor has determined that the Sale of the Restaurant Properties is the best way to maximize the value of the Reorganized Debtor's estate for the benefit of all constituencies.

33. The Commercial Real Estate Contract is a standardized form used in commercial transactions state-wide. The Commercial Real Estate Contract is advantageous to the Reorganized Debtor's estate in that it provides a floor bid that the Reorganized Debtor will use to solicit higher and better offers. Furthermore, the administrative and economic costs of maintaining the Restaurant Properties for an uncertain period of time would not be in the best interest of the estates. Under these circumstances, sound business reasons exist that justify the sale of the assets outside of the ordinary course of business.

34. Based on its marketing efforts, the Reorganized Debtor submits the consideration to be paid under the Commercial Real Estate Contract is fair and reasonable. The Reorganized Debtor is subjecting the Sale to the Proposed Purchaser to Competing Proposals at the Auction, thereby ensuring that the Reorganized Debtor will receive the highest and/or otherwise best value for the Restaurant Properties. Any issue as to the reasonableness of the consideration to be received by the Reorganized Debtor ultimately will be tested and confirmed because the Sale is subject to an auction

process. An auction is the best means of ensuring that a fair and reasonable price is being paid. If the price of the stalking horse bid is too low, a competing bidder will pay more. If the stalking horse bid represents the most anyone will pay in an arms' length transaction, its reasonableness will be established. Consequently, the fairness and reasonableness of the consideration to be received by the Reorganized Debtor will ultimately be demonstrated by a "market check" through an auction process, which the Reorganized Debtor believes is the best means for establishing whether a fair and reasonable price is being paid for the assets.

C. **Good Faith Requirement**

35. Section 363(m) of the Bankruptcy Code provides that "[t]he reversal or modification on appeal of an authorization under subsection (b) or (c) of this Section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith . . . ." 11 U.S.C. § 363(m) (emphasis added). While the Bankruptcy Code does not define "good faith," the court in *Sullivan Central Plaza I, Ltd. v. BancBoston Real Estate Capital Corp.*, 106 B.R. 934 (N.D. Tex. 1989), stated: "[t]he type of conduct of a purchaser which would destroy its good faith status in § 363(m) involves fraud, collusion between the purchaser and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders." *Id.* at 938 (citing *Matter of Bleaufontaine, Inc.*, 634 F.2d 1383, 1388 (5th Cir. 1981)).

36. The Reorganized Debtor requests that the Court determine the Proposed Purchaser or any other Prevailing Bidder to be acting in good faith and entitled to the protections of a good faith purchaser under Section 363(m) of the Bankruptcy Code. The Commercial Real Estate Contract between the Reorganized Debtor and the Proposed Purchaser is the result of good-faith, arm's length negotiations conducted among the parties. In the event a purchaser other than the Proposed Purchaser is a Prevailing Bidder, the terms and conditions of the alternate agreement will be negotiated by the Reorganized Debtor and the purchaser at arm's length and in good faith. In the event such an alternate purchaser is the winning bidder at the Auction, the Reorganized Debtor will present testimony at the Sale Hearing demonstrating that such purchaser has acted in good faith and should be entitled to the protections of a good faith purchaser.

D. **Sale of the Restaurant Properties Should be Granted Free and Clear of Certain Liens, Claims, Interests and Encumbrances**

37. Section 363(f) of the Bankruptcy Code provides:

> (f) The trustee may sell property under subsection (b) or (c) of this Section free and clear of any interest in such property of an entity other than the estate, only if--
>
> (1) applicable non-bankruptcy law permits sale of such property free and clear of such interest;
>
> (2) such entity consents;
>
> (3) such interest is a lien and the price at which such property is to be
>
> (4) such interest is in bona fide dispute; or
>
> (5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363 (f).

38. Section 363(f) is written in the disjunctive. *See In re Collins*, 180 B.R. 447, 450 (Bankr. E.D. Va. 1995) ("Section 363(f) is phrased in the disjunctive, such that only one of the enumerated conditions must be met in order for the Court to approve the proposed sale."); *In re P.K.R. Convalescent Ctrs., Inc.*, 189 B.R. 90, 94 (Bankr. E.D. Va. 1995) ("[Section] 363 covers more situations than just sales involving liens . . . Section 363(f) addresses sales free and clear of any interest . . . ."); *In re Gen. Bearing Corp.*, 136 B.R. 361, 366 (Bankr. S.D.N.Y. 1992) (listing requirements). Accordingly, to approve a sale free and clear of all liens, claims, encumbrances, and other interests, the Reorganized Debtor is required only to meet one of the five (5) conditions listed in Section 363(f).

39. Other than a lien in favor of GECU and the alleged claims, the Reorganized Debtor is unaware of any (i) liens, encumbrances or interests or (ii) "claims" as defined in Section 101(5) of the Bankruptcy Code that have been asserted against the Restaurant Properties. The proposed sale

price of the Restaurant Properties to be realized at auction will be greater than the value of any <u>valid</u> liens, claims or encumbrances of which the Reorganized Debtor is aware. Furthermore, the Sale Order will provide that any liens, claims, encumbrances or interests attach to the net cash proceeds derived from the Sale of the Restaurant Assets in the same validity, force and effect that such liens, claims, encumbrances or interests now have against the Restaurant Properties, subject to the rights and defenses, if any, of the Reorganized Debtor with respect thereto. Accordingly, the Reorganized Debtor satisfies Section 363(f)(3).

40. In addition, GECU (the First Lien holder) does not object to the Sale of the Restaurant Properties, subject to its rights to credit bid at the Sale. Accordingly, the Reorganized Debtor also satisfies Section 363(f)(2).

41. The Sale of the Restaurant Properties free and clear of any liens, claims, encumbrances or interests on the assets satisfies the statutory prerequisites of Section 363(f) of the Bankruptcy Code. Accordingly, the Reorganized Debtor requests that the Restaurant Properties be transferred to the Proposed Purchaser or other Prevailing Bidder free and clear of all liens, claims, encumbrances, and interests, with any such liens, claims, encumbrances, and interests to attach to the net sale proceeds of the Restaurant Properties.

## Notice of Sale Hearing

42. In accordance with Bankruptcy Rule 6004(f)(1), sales of property outside of the ordinary course of business may be by private or by public auction. *See* FED. R. BANKR. P. 6004(f)(1). Further, pursuant to Bankruptcy Rule 2002(a)(2), this Court may, for cause shown, shorten or direct another method of giving notice regarding the general twenty (20) day by mail period for the proposed use, sale, or lease of property of the estate other than in the ordinary course of business. *See* FED. R. BANKR. P. 2002(a)(2). Subject to Bankruptcy Rule 6004, the notice of a proposed use, sale, or lease of property required under Bankruptcy Rule 2002(a)(2) must include the time and place of any public sale, the terms and conditions of any private sale, and the time fixed for filing objections. *See* FED. R. BANKR. P. 2002(c)(1). Moreover, the notice of a proposed use, sale, or lease of property is sufficient if it generally describes the property. *Id.*

43. Within twenty-four (24) hours following the entry of the Bidding Procedures Order, or as soon thereafter as is practicable, the Reorganized Debtor will serve a notice of the Sale, Auction, and

Hearing (the "Auction and Sale Hearing Notice") by electronic mail, to: (a) all potential purchasers previously identified or solicited by the Reorganized Debtor and any additional parties who have previously expressed an interest in acquiring the Reorganized Debtor's assets since the Petition Date, (b) all other potentially interested parties identified by the Reorganized Debtor or its advisors; (c) the Office of the United States Trustee, (d) counsel for GECU, (e) counsel for the Proposed Purchasers, (f) all parties who are known to possess or assert a lien, claim, encumbrance or interest in or upon any of the Restaurant Properties, (g) and all applicable federal, state and local regulatory or taxing authorities or recording offices which have a reasonably known interest in the relief requested in the Motion. Such Auction and Sale Hearing Notice shall satisfy the notice requirements of Bankruptcy Rules 2002 and 6004 and Section 363(b) of the Bankruptcy Code, and constitute good and sufficient notice and no other or further notice is required

## Waiver or Reduction of the Ten (10) Day Stay Period of Bankruptcy Rules 6004(h) and 6006(d)

44.     Pursuant to Bankruptcy Rules 6004(h) and 6006(d), unless the court orders otherwise, (i) all orders authorizing the sale of property pursuant to Section 363 of the Bankruptcy Code and (ii) all orders authorizing the assignment of executory contracts or unexpired leases under Section 365 of the Bankruptcy Code are automatically stayed for ten (10) days after entry of the order. The purpose of Bankruptcy Rules 6004(h) and 6006(d) is to provide sufficient time for an objecting party to appeal before the order can be implemented. See Advisory Committee Notes to FED. R. BANKR. P. 6004(g) and 6006(d).

45.     Although Bankruptcy Rules 6004(h) and 6006(d) and the Advisory Notes are silent as to when a court should "order otherwise" and eliminate or reduce the ten (10) day stay period, Collier on Bankruptcy suggests that the ten (10) day stay period should be eliminated to allow a sale or other transaction to close immediately "when there has been no objection to the procedures." 10 COLLIER ON BANKRUPTCY, ¶ 6004.10 (A. Resnick, 15th ed. rev. 2007). Furthermore, *Collier* provides that if an objection is filed and overruled, and the objecting party informs the court of its intent to appeal, the stay may be reduced to the amount of time actually necessary to file such appeal. *Id.*

46.     The Reorganized Debtor hereby requests that the Court waive the ten (10) day stay periods under Bankruptcy Rules 6004(h) and 6006(d).

## Conclusion

WHEREFORE the Reorganized Debtor respectfully requests entry of an order (i) approving the proposed bid procedures that are attached as **Exhibit A** to this Motion to be used for the Restaurant Properties; (ii) scheduling a Sale Hearing to approve the Sale, and approving the form and manner of notice thereof; (iii) approving the Minimum Overbid Requirements; (iv) approving the sale of the Reorganized Debtor's Restaurant Properties free and clear of liens, claims, interests and encumbrances; (v) if the Proposed Purchaser is the Prevailing Bidder, approving the Commercial Real Estate Contract and the obligations incurred by the Reorganized Debtor and the Proposed Purchaser thereunder; and (vi) any other relief this Court deems just and proper.

Respectfully submitted,

JAMES & HAUGLAND, P.C.
609 Montana Avenue
El Paso, Texas 79902
Telephone: 915-532-3911
Facsimile: 915-541-6440

By: _____
WILEY F. JAMES, III
State Bar No. 10554300

## CERTIFICATE OF SERVICE

I, Wiley F. James, III, hereby certify that on the 3rd day of December, 2013, a true and correct copy of the foregoing was served upon the parties listed on the Court's ECF Noticing System via electronic means, and served by regular, first class mail to all of the parties listed on the attached matrix pursuant to L.R. 9013(c)(1)(B).

_____
WILEY F. JAMES, III

18

Abraham Chowaiki
1037 Singing Hills
El Paso, TX 79912

Basic Sports Apparel, Inc.
301 Williams
El Paso, TX 79901

Chowaiki Holdings, LLC
301 Williams
El Paso, TX 79901

City of El Paso
P.O. Box 2992
El Paso, TX 79999-2992

Comptroller Public Accounts
P.O. Box 149348
Austin, TX 78714-9348

David & Hilel Chowaiki
301 Williams
El Paso, Texas 79901

David Aelvoet
Linbarger, Goggan, Blair
711 Navarro, Suite 300
San Antonio, TX 78205

David Chowaiki
301 Williams
El Paso, TX 79901

El Paso DHC Enterprises, LLC
301 Williams
El Paso, TX 79901

El Paso Central Appraisal District
5801 Trowbridge
El Paso, TX 79925

El Paso DHC Ent. Far East
301 Williams
El Paso, TX 79901

El Paso DHC Ent. West
301 Williams
El Paso, TX 79901

El Paso DHC Ent., LLC
301 Williams
El Paso, TX 79901

El Paso DHC Enterprises
301 Williams
El Paso, TX 79901

GECU
Attn: Martin Sena
P.O. Box 20998
El Paso, TX 79998-0998

Harrel L. Davis
Gordon, Davis, Johnson & Shane
P.O. Box 1322
El Paso, Texas 79947-1322

Hilel Chowaiki
301 Williams
El Paso, TX 79901

Internal Revenue Service
P. O. Box 7346
Philadelphia, PA 19101-7346

K Simon Construction of Texas
c/o Robert M. Lovein
109 River Oaks Drive, Ste. 100
Southlake, TX 76092

Nadia Nahmed
1037 Singing Hills
El Paso, TX 79912

Spira Sportswear, LLC
301 Williams
El Paso, TX 79901

Texas Workforce Commission
TEC Building - Bankruptcy
101 East 15th Street
Austin, TX 78778

United States Attorney
601 N.W. Loop 410, Suite 600
San Antonio, Texas 78216

United States Attorney General
Department of Justice
950 Pennsylvania Ave. N.W.
Washington, D.C. 20530

United States Trustee
P.O. Box 1539
San Antonio, TX 78295

Michael R. Nevarez
P.O. Box 12247
El Paso, Texas 79913